# Piper Rudnick

6225 Smith Avenue
Baltimore, Maryland 21209-3600
www.piperrudnick.com

PHONE   (410) 580-3000
FAX       (410) 580-3001

WRITER'S INFORMATION

robert.gaumont@piperrudnick.com
PHONE   (410) 580-4240

March 10, 2002

VIA ELECTRONIC FILING

Honorable Benson Everett Legg
United States District Judge
United States District Court for the District of Maryland
U.S. Court House, Chambers 3D
101 West Lombard Street
Baltimore, Maryland  21201

Re:   Xerox Corp. v. Phoenix Color Corp., et. al
       Civil Action No. L 02 CV 1734

Dear Judge Legg:

Per your October 31, 2002 Scheduling Order, defendants Phoenix Color Corp.
("Phoenix Color") and Technigraphix, Inc. ("Technigraphix") submit the following
Status Report.  This Status Report is being filed concurrent with Phoenix Color's Motion
for Leave to File Counterclaim and Phoenix Color's Motion to Designate Handwriting
Expert and Extend the Discovery Deadline.

## I.      INTRODUCTION

When Xerox Corp. ("Xerox") first sued Phoenix Color for $3.2 million, Phoenix
Color moved to dismiss or, in the alternative, for a more definite statement, because
Phoenix Color had no record of contracting with Xerox and Xerox's bare-bones
complaint alleging only "accounts due and owing" provided no detail as to the basis for
Xerox's claims.  Since that time, discovery has shown that all of Xerox's claims against
Phoenix Color are based on (1) purchase orders or leases that Xerox entered into with
another corporation, Technigraphix; or (2) modifications of contracts, orders or leases
with Technigraphix that Xerox has alleged to have been rewritten in the name of Phoenix
Color, but that were actually obtained through fraud and intentional misrepresentation.

# Piper Rudnick

## II.    FACTUAL BACKGROUND

Technigraphix was a "short run" printing company that leased Xerox equipment as part of its operations. Since at least 1997, Xerox assigned one sales representative -- Bruce Nussbaum -- to service its account with Technigraphix. The evidence will show that Technigraphix was the largest of Mr. Nussbaum's accounts, resulting in tens of thousands of dollars to him annually in commissions.

While Technigraphix leased a substantial amount of Xerox equipment, Technigraphix also had a history of late and compromised payments. On October 8, 1999, James Burkey, the head of Xerox's credit department, sent an e-mail message to the Xerox business unit that serviced the Technigraphix account informing it that all future contracts with Technigraphix were rejected. The only condition upon which Mr. Burkey would accept future contracts with Technigraphix was if Xerox obtained a corporate guaranty from Technigraphix's parent corporation: Phoenix Color. There is no record that Xerox ever attempted to obtain this corporate guaranty.

Instead, on the same day that Mr. Burkey sent his rejection e-mail, Mr. Nussbaum committed fraud. Specifically, Mr. Nussbaum drew a line through the customer legal name which had stated "Technigraphix: A Wholly Owned Subsidiary of Phoenix Color Corp." and hand wrote the name "Phoenix Color Corp." *See* Exhibit A, pages 3-4, to Phoenix Color's Memorandum in Support, filed herewith. Mr. Nussbaum then forged (or asked someone else to forge) the initials "DT" to signify that the change was approved by Donald Tyler who, at the time, was the Technigraphix Division Director and Chief Operating Officer. *Id.* Mr. Tyler testified in deposition that he was certain that he did not initial this change. Further, the initials "DT" are clearly different from the "DCT" that Mr. Tyler employed to signify changes in other Xerox contracts and that another Xerox employee, Armando Garcia, has testified as being Mr. Tyler's initials. *See* Exhibit B, page 2, to Phoenix Color's Memorandum in Support. The handwriting sample of Mr. Tyler's signature that Xerox's counsel requested during deposition confirms that Xerox forged Mr. Tyler's initials. *See* Exhibit C to Phoenix Color's Memorandum in Support.

After October 8, 1999, Mr. Nussbaum (or any other Xerox employee who presented a lease or contract) made sure -- either before or after they were presented for Mr. Tyler's signature -- that the customer legal name on each lease or contract was identified as Phoenix Color Corp. Xerox never informed Phoenix Color or Technigraphix that Xerox had changed the customer legal name or that it had rejected Technigraphix's credit. Mr. Tyler had no authority to bind Phoenix Color to a contract; he was an employee and officer of Technigraphix only.

# Piper Rudnick

Technigraphix ceased active operations in late September 2000 because it was failing to make a profit. Xerox's own records indicate that Technigraphix notified Xerox that it was no longer operating in October 2000. At the time that Technigraphix ceased active operations, less than one year had expired from the leases' five year terms. Technigraphix paid for this equipment for every month that it used it.

Technigraphix has requested numerous times that Xerox remove the equipment, but Xerox has refused. The equipment has been stored unused since Technigraphix ceased active operations.

## III.    STATUS REPORT

A.    <u>Status of Discovery</u>

Discovery is not complete in this case. Phoenix Color has used its 15 hours of allotted deposition time to depose six of the witnesses identified in Xerox's discovery responses. It has reviewed the thousands of documents that Xerox has produced in discovery, and it has designated an expert and produced an expert report. An additional 15 hours of fact deposition, leave to designate a handwriting expert and a two-month extension of the discovery deadline is warranted to develop and prepare for trial the following issues:

1.    *Factual Testimony for Fraud* – Phoenix Color learned less than two weeks ago that Xerox's claims against Phoenix Color were the result of fraud. Xerox did not volunteer that its credit department had previously rejected contracts with Technigraphix, it did not volunteer that Mr. Nussbaum's income was so dependent on Technigraphix commissions, and it did not volunteer that Mr. Nussbaum forged documents. Indeed, Xerox did not even produce the contracts at issue in this case until it responded to a document request and it is <u>still</u> looking for some of these purported contracts. Accordingly, Phoenix Color needs additional fact deposition time to depose Mr. Nussbaum's former co-worker who faxed the fraudulent document to Xerox's credit department on October 8, 1999 and the officers at Xerox credit who received and acted upon the forged document.

2.    *Factual Testimony Concerning Xerox's Claim of Apparent Authority* – While not evident from Xerox's bare-bones "account due and owing" complaint, all of Xerox's claims against Phoenix Color are based on the theory that Mr. Tyler had "apparent authority" to contract for Phoenix Color and that Xerox was reasonable in thinking that Mr. Tyler could contract for Phoenix Color. Phoenix Color has deposed <u>some</u> of the individuals identified in Xerox's discovery responses as having discoverable

**Piper Rudnick**

Honorable Benson Everett Legg
March 10, 2003
Page 4

information on this issue – Phoenix Color needs additional deposition time and an extension of the discovery deadline to depose all of these individuals.

3.    *Factual Testimony Concerning Xerox's Claims of Damages* – Again, Xerox's "account due and owing" complaint suggests that there is a single, integrated contract at issue in this case.  In reality, there are in excess of 20 leases and lease modifications concerning dozens of pieces of equipment that Technigraphix acquired over the course of several years.  Further, Xerox has refused to simply produce each contract and state how much is alleged due for each piece of equipment, although it was asked to do so through interrogatory.  *See* Exhibit D to Phoenix Color's Memorandum in Support.  Instead, Phoenix Color had to learn through deposition of Xerox's 30(b)(6) corporate designee the account history and contractual basis for the equipment at issue in this litigation.  This deposition is a time consuming process made difficult by the fact that Xerox cannot find many of the contracts at issue in this case (although Xerox is reluctant to admit that fact).  At deposition, the corporate designee agreed to produce more documents that evidence these accounts -- Phoenix Color has yet to receive these documents.  Phoenix Color was provided less than four hours to depose Xerox's 30(b)(6) witness; it left the deposition open, however, and needs additional time to complete it.

4.    *Expert Testimony* – Phoenix Color requests leave to designate a handwriting expert to opine about the handwriting on these leases and lease modifications.  This forgery issue was not discovered until recently, through depositions. It is expected that this handwriting expert will testify that Mr. Nussbaum inserted the customer legal name "Phoenix Color Corp." and initialed "DT" next to it.  It is also expected that this handwriting expert will opine that while Mr. Nussbaum often titled Mr. Tyler as "V.P. Phoenix Color" either before or after Mr. Tyler signed these leases, Mr. Tyler correctly titled himself as the Technigraphix Division Director when Xerox gave him the opportunity to write in his own title.

Additionally, Xerox and Technigraphix agreed to extend the discovery deadline for deposing the experts that they designated.  These experts have opined about the value of the equipment at issue in this case as well as the value of Xerox's mitigation efforts, had it chosen to mitigate its damages in 2000.  Because of Xerox's inability to identify the contracts, claims and equipment at issue in this case through written discovery, Technigraphix's expert will need to review the full deposition transcript of Xerox's 30(b)(6) deponent before this expert is deposed.  As a result, the parties cannot conduct their depositions of experts until after the 30(b)(6) deposition is completed.

# Piper Rudnick

Honorable Benson Everett Legg<br>
March 10, 2003<br>
Page 5

B.    <u>Pending Motions</u>

Concurrent with this Status Report, Phoenix Color is filing its Motion for Leave to File a Counterclaim of Fraud and Motion to Extend the Discovery Deadline and to Designate a Handwriting Expert. These are the only motions known that are pending before this Court.

C.    <u>Dispositive Pretrial Motions</u>

Phoenix Color will be filing a motion for summary judgment and can do so by the April 8, 2003 deadline set by this Court.

D.    <u>Trial Matters</u>

Neither party has demanded a jury trial and this case should be tried non-jury. The anticipated length of trial is two to three weeks.

E.    <u>Settlement</u>

Since discovering Xerox's fraud, Phoenix Color has not determined how much it will accept to settle its anticipated counterclaim or, if leave is not granted, to settle its lawsuit against Xerox. In Phoenix Color's opinion, Xerox does not appreciate the weakness of its claims or the strength of Phoenix Color's case and, until it does, unmediated settlement discussions are premature.

F.    <u>ADR</u>

Phoenix Color is open and willing to make its case before any judge in a settlement or ADR context and can do so before or after the resolution of dispositive motions.

G.    <u>Consent to Magistrate</u>

Phoenix Color will consent to appear before a magistrate for trial after the resolution of dispositive pretrial motions.

H.    <u>Other Matters</u>

In the interest of judicial efficiency, Phoenix Color respectfully requests that this Court give immediate consideration to and grant the motions that it is filing concurrent with this Status Report.

# Piper Rudnick

Honorable Benson Everett Legg
March 10, 2003
Page 6

Respectfully,

Robert A. Gaumont

RAG/rg

cc:   Sidney S. Friedman, Esquire