IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| XEROX CORPORATION | * |
| Plaintiff | * |
| v. | * CIVIL ACTION NO. L 02 CV 1734 |
| PHOENIX COLOR CORPORATION | * |
| and | * |
| TECHNIGRAPHIX, INCORPORATED | * |
| Defendants | |

\* \* \* \* \* \* \* \* \*

**PHOENIX COLOR CORP.'S MEMORANDUM IN SUPPORT OF ITS MOTIONS FOR: (i) LEAVE TO DESIGNATE HANDWRITING EXPERT AND EXTEND DISCOVERY DEADLINE, AND (ii) LEAVE TO FILE COUNTERCLAIM**

Phoenix Color Corp. ("Phoenix Color"), by its attorneys, submits this Memorandum in Support of its two accompanying motions: Phoenix Color Corp.'s Motion for Leave to Designate Handwriting Expert and Extend Discovery Deadline and Phoenix Color's Motion for Leave to File Counterclaim.

## I.   INTRODUCTION

This case involves dozens of lease, lease modifications and purchase orders concerning equipment that another defendant, Technigraphix, Inc. ("Technigraphix"), used from approximately 1997 to 2000. Phoenix Color acquired Technigraphix's stock in a purchase agreement dated February 1999. Until receiving Xerox's responses to discovery a few months ago, Phoenix Color had few records concerning most of the lease modifications and purchase orders at issue in this case.

Phoenix Color discovered through depositions taken over the last two weeks ago that the contracts which bear the name "Phoenix Color Corp." were the product of intentional misrepresentation

and fraud. In addition, Phoenix Color discovered that all of Xerox's claims against Phoenix Color are based upon the theory that a single Technigraphix officer - Donald Tyler - had "apparent authority" to bind Phoenix Color to a contract. The 15 hours of deposition time allotted to Phoenix Color have allowed it to depose only some of the witnesses that Xerox has identified as having discoverable information on these issues.

Further, Phoenix Color has had to calculate the damages that Xerox is claiming through a deposition of Xerox's Rule 30(b)(6) witness, in part, because Xerox failed in its written interrogatory responses to identify the date, subject matter and contracting parties of the contracts at issue in this litigation. This deposition lasted for less than four hours and, by mutual consent, was left open, in part, so that Xerox could continue looking for some more contracts.

For these reasons, Phoenix Color moves for leave to designate a handwriting expert, to take an additional 15 hours of factual deposition, to extend the discovery period for two months, and for leave to file a counterclaim.

## II.   ARGUMENT

### 1.   *Leave for Designating a Handwriting Expert Is Necessary.*

Leave for designating a handwriting expert is warranted because the depositions that the parties have just completed indicate that Xerox obtained Phoenix Color's name on these lease, lease modifications and other contracts through fraud. Leave for designating a handwriting expert is also appropriate because it would assist the trier of fact in determining whether Mr. Tyler had "apparent authority" to bind Phoenix Color to a contract.

As described fully in the Factual Background section of the Status Report, Phoenix Color has learned very recently through depositions that Xerox resorted to fraud to obtain contracts with the legal

2

name designated as "Phoenix Color Corp." On October 8, 1999, the day that Xerox's credit manager, James Burkey, informed the Xerox sales force that Xerox would no longer contract with Technigraphix unless it obtained a corporate guaranty from Phoenix Color, Xerox's sales representative Bruce Nussbaum crossed out the customer legal name "Technigraphix: A Wholly Owned Subsidiary of Phoenix Color Corp." and wrote in its place "Phoenix Color Corp." *See* Exhibit A, pages 3-4. Mr. Nussbaum then wrote in the initials "DT," representing that this change was approved by Donald Tyler, the Technigraphix officer who generally signed these orders. This "DT" is clearly different than the "DCT" that Mr. Tyler always used to approve orders and that another Xerox employee, Armando Garcia, identified as being Mr. Tyler's signature. *See* Exhibit B, page 2. It is also different from the initials that counsel for Xerox requested from Mr. Tyler when Xerox took his deposition last Wednesday. *See* Exhibit C. In deposition last Wednesday, Mr. Tyler denied ever approving of a change of legal name to these contracts, and he will testify that the "DT" initials are not in his handwriting.

The handwriting expert also will serve as rebuttal testimony to Xerox's claim that Phoenix Color should be bound because Mr. Tyler had "apparent authority" to contract for Phoenix Color. Whenever Mr. Nussbaum was given the opportunity to identify Mr. Tyler's title, Mr. Nussbaum inserted the words "V.P. Phoenix Color." *See* Exhibit A, pages 3-4. When Mr. Tyler was given the opportunity to hand write the title himself, however, he inserted the proper title of Technigraphix "Division Director." *See* Exhibit B, page 2.

A handwriting expert would assist the trier of fact in determining the liability of the parties in this case. Xerox respectfully requests leave to designate one.

## 2. *Leave For An Additional 15 Hours Of Deposition Time Is Necessary.*

Phoenix Color has used the entire 15 hours of deposition time for fact witnesses to depose six of the witnesses that Xerox has identified in its discovery responses. An additional 15 hours is necessary to depose the witnesses that are the relevant to the issues of (1) Phoenix Color's expected fraud counterclaim against Xerox; (2) Xerox's claim that Mr. Tyler had "apparent authority" to contract for Phoenix Color; and (3) Xerox's damages.

If this Court grants leave, Phoenix Color may depose the following fact witnesses on the following issues:

- Jonathan Frances -- Mr. Frances was Mr. Nussbaum's co-worker and he faxed the forged document to Xerox's credit department on the day that Mr. Nussbaum committed fraud. *See* Exhibit A, page 2. Mr. Frances also possesses discoverable information on whether Xerox was justified in any belief that Mr. Tyler had authority to bind Phoenix Color.

- Pattie Woliver -- Ms. Woliver received the forged contract sent by Mr. Frances and processed it with Xerox credit. Ms. Woliver also approved prior contracts between Technigraphix and Xerox and has knowledge of Xerox's decision to reject Technigraphix's credit. *See* Exhibit A, page 2.

- Eric Rosenstein  -- Mr. Rosenstein was a co-worker and is also described in Xerox's discovery responses as present at some of the meetings where Mr. Tyler allegedly acted with "apparent authority."

- Arnise Porter – On the day that Mr. Nussbaum forged the contracts, Ms. Porter had communicated the message to Mr. Nussbaum that Mr. Burkey rejected all contracts with Technigraphix unless they contained a corporate guaranty from Phoenix Color.

- Gwendolyn Guy -- Ms. Guy processed the fraudulent order for Mr. Nussbaum and was privy to the communication from Ms. Porter to Mr. Nussbaum that Mr. Burkey rejected contracts in the name of Technigraphix unless Xerox obtained a corporate guaranty. *See* Exhibit A, page 1.

- Xerox's 30(b)(6) Designee – A continued deposition of Xerox's corporate designee is necessary to explain Xerox's claims for damages. Xerox was simply unable to explain in its interrogatory responses (1) the identity of each contract at issue in this litigation; and (2) the amount due and owing based on each contract. *See* Xerox's Response to Technigraphix's First Set of Interrogatories, Nos. 4 - 8 (attached as Exhibit D). Further, the chart that Xerox produced is incoherent without testimony from Xerox's corporate designee. *See* Xerox's Response to Technigraphix's First Set of Interrogatories, Nos. 6 and 7. Xerox admits in this chart that it is continuing to search for contracts upon which it is suing Phoenix Color. *Id.* The parties agreed to leave this deposition open, in part, so that Xerox's corporate designee could continue to look for contracts that Xerox has been unable to produce.

Phoenix Color previously has noticed the depositions for Messrs. Frances, Rosenstein and Ms. Woliver; the reason why Phoenix Color has not taken these depositions is lack of deposition time. Thus far, Phoenix Color has been very efficient in its deposition taking, completing six depositions in 15 hours and starting a seventh (Xerox's 30(b)(6) deponent). Phoenix Color expects that it can complete its factual discovery in this case with an additional 15 hours of deposition time.

### 3. *A Two Month Extension for the Discovery Deadline Is Necessary.*

Considering this newly discovered fraud and need for additional fact depositions and a handwriting expert, a two-month extension of the discovery deadline is warranted. Counsel for both parties have agreed to extend the discovery deadline for the purpose of taking expert depositions. Technigraphix's expert, however, cannot present a final opinion as to damages until it reviews a complete copy of the deposition of Xerox's 30(b)(6) witness. Technigraphix's expert needs this 30(b)(6) deposition transcript because Xerox could not in its written discovery responses identify the contracts at issue by date, match it to the equipment, and state how much Xerox alleges is due for each piece of equipment even though it was asked to do so. *See* Exhibit D, Xerox's Response to Technigraphix's First Set of Interrogatories, Nos. 4-8.

### 4. *Leave to File a Counterclaim is Warranted*

In light of the facts that Phoenix Color has learned recently, it is apparent that Xerox committed fraud when it (i) forged Mr. Tyler's initials on at least one purported contract, and (ii) changed the name of the parties to the purported contracts despite its knowledge that Technigraphix considered itself the party responsible under the purported contract. At a minimum, such facts support a claim of negligent misrepresentation.

Federal courts liberally grant leave to assert a counterclaim based on new facts or facts unknown at the time of filing a party's Answer. 6 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure:* Civil § 1430, at 56 (Supp. 1989); *2001, Inc. v. Novaglass Corp.*, 60 F.R.D. 649 (E.D.N.Y. 1973).

Moreover, under F.R.C.P. 13, the proposed counterclaims at issue in this case are compulsory because they arise out of the same transaction and occurrence as the claims asserted by Xerox. "When

the omitted counterclaim is compulsory, the reasons for allowing its introduction by amendment become even more persuasive, since an omitted compulsory counterclaim cannot be asserted in subsequent cases (at least in the federal courts) and the pleader will lose the opportunity to have the claim adjudicated." 6 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure:* Civil § 1430, at 56 (Supp.1989). *See also Safeway Trails, Inc. v. Allentown & Reading Transit Co.*, 185 F.2d 918, 920 (4th Cir. 1950) (applying liberal amendment principles to motion to add counterclaim); *see also Spartan Grain & Mill Co. v. Ayers*, 517 F.2d 214, 220 (5th Cir. 1975) (argument in favor of allowing counterclaim is particularly strong where proposed counterclaim is compulsory).

### III. CONCLUSION

When this Court Ordered four months of discovery based upon the allegations in Xerox's bare-bones "accounts due and owing" complaint for $3.2 million, Phoenix Color did not possess the contracts at issue in this litigation. In fact, many of the contracts for which Xerox is suing Phoenix Color trace back to years before Phoenix Color purchased Technigraphix's stock and Xerox is still looking for some of these contracts. If Phoenix Color could have reasonably foreseen that Xerox's claims against Phoenix Color were entirely based on forged contracts and allegations of "apparent authority" on the part of a Technigraphix employee, Phoenix Color would have filed its Counterclaim at that time and requested more deposition hours and a longer period for discovery.

Now that Phoenix Color has discovered Xerox's fraud and learned that Xerox does not possess a single contract signed by a Phoenix Color employee, Phoenix Color respectfully requests (1) leave to designate a handwriting expert; (2) leave for 15 additional hours for fact discovery, (3) leave to extend the discovery deadline by two months, and (4) leave to file a Counterclaim for fraud and negligent misrepresentation.

7

_____
John R. Wellschlager (Fed. Bar No. 24752)
Robert A. Gaumont (Fed. Bar No. 26302)
Piper Rudnick LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000

*Attorneys for Phoenix Color Corporation and Technigraphix, Incorporated, Defendants*

~BALT1:3644592.v1  |3/10/03
29302-15