**EXHIBIT 4**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| XEROX CORPORATION | * |
| Plaintiff | * |
| v. | * |
| PHOENIX COLOR CORPORATION, *et al* | * |
| Defendants | * |
| | Civil Action No.: L 02 CV 1734 |

*******************************************************************

## AFFIDAVIT OF BRUCE MARK NUSSBAUM

I, Bruce Mark Nussbaum, being first duly sworn, deposes and says:

1. I am competent to be a witness and have personal knowledge of the facts and matters set forth herein.

2. During the times relevant to the above-captioned lawsuit, I was employed by the Plaintiff, Xerox Corporation.

3. Additionally, I was the Xerox employee who was the primary contact for transactions involving Technigraphix.

4. Jack Tiner was my primary contact at Technigraphix.

5. After Phoenix Color Corporation acquired Technigraphix, I was directed to deal with Donald Tyler, who became my primary contact, both in Virginia and Maryland.

6. From the beginning of our business relationship, Donald Tyler held himself out

1

to me as a Vice President of Phoenix Color Corporation, which was evidenced by the printed business card that he gave to me stating, "Vice President - Phoenix Color Corporation".

7. After Technigraphix relocated to Hagerstown, Maryland in September 1999, when I met with Donald Tyler in Hagerstown, Maryland, the meetings took place in a building which was identified by a sign that stated "Phoenix Color".

8. The Xerox contracts that I presented to Donald Tyler were presented to him, and executed in the Phoenix Color building after the relocation.

9. The equipment move installs were completed in the Phoenix Color building.

10. I attended two meetings with Ed Lieberman who was identified to me as the CFO of Phoenix Color Corporation, and he never complained about Xerox leases being in the name of Phoenix Color.

11. The subject of these meetings was to discuss possible ways to get the payments caught up for Xerox equipment that had been originally leased by Technigraphix.

12. In all instances in which I presented a Xerox contract, lease agreement, or lease modification agreement to a customer, the "Customer Legal Name" "Bill To" lines were always completely filled in prior to my presenting the contract to the customer for execution.

13. I did not receive any commissions from Xerox for lease modification agreements that replaced existing lease contracts between Xerox and its customers, including the lease modification agreements executed by Donald Tyler during December 1999; commissions are only paid for new equipment.

14. The series of lease modifications executed by Donald Tyler during December 1999 was part of a proposal designed to reduce the monthly payments for the existing

equipment, while also adding a new piece of equipment, a Docucolor 100.

15. In conjunction with these lease modifications, I informed Donald Tyler that in order to get the lease's through the credit approval process, he would "have to do this as Phoenix Color"; ie., in the name of Phoenix Color.

16. I have personal knowledge of the facts alleged in this affidavit.

17. I hereby certify under the penalties of perjury that the facts set forth in the above affidavit are true and correct according to my knowledge, information, and belief.

_____         _3/21/03_____
Bruce Mark Nussbaum                Date

3