**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

**XEROX CORPORATION** *
*
**Plaintiff** *
*
**v.** *
*
**PHOENIX COLOR CORPORATION** *
*
**Defendant** *
* **Civil Action No.:** L 02 CV 1734
*
**********************************************************************

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANT PHOENIX COLOR CORPORATION**

Xerox Corporation ("Xerox"), Plaintiff, by and through its attorneys, Sidney S. Friedman, Rosemary E. Allulis, and Weinstock, Friedman & Friedman, P.A., hereby moves pursuant to Fed. R. Civ. P. Rule 56, and Local Rule 105, for an order entering Partial Summary Judgment in its favor as to Defendant Phoenix Color, and for cause states as follows:

1. That Partial Summary Judgment is proper on the Amended Complaint as to Defendant Phoenix Color Corporation regarding the December 1999 lease modification agreements signed by Donald Tyler.

2. These contracts were executed by Donald Tyler, as Vice President Phoenix Color, and are in the name of Phoenix Color.

4. Pursuant to the terms of these agreements, the lease modifications superseded all prior contracts between the parties.

5. Because there is no genuine issue as to material fact regarding these contracts,

the Plaintiff is entitled to Partial Summary Judgment to the extent requested as a matter of law.

1. In support of its motion are the following attachments:

   A. Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial Summary Judgment.

   B. Plaintiff's Exhibits 1-8.

WHEREFORE, Xerox Corporation, Plaintiff, respectfully requests this Honorable Court to:

1. Enter an Order granting a Partial Summary Judgment in its favor with respect to the December 1999 contracts.

2. Enter an Order in favor of Xerox in the amount of $1,966,668.00.

Respectfully Submitted,

WEINSTOCK, FRIEDMAN
& FRIEDMAN, P.A.

Sidney S. Friedman

Rosemary E. Allulis
Attorneys for Plaintiff
Executive Centre
4 Reservoir Circle
Baltimore, Maryland 21208-7301
(410) 559-9000

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this _________ day of ______________, 2003, Plaintiff's Motion for Partial Summary Judgment, Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment, and a proposed Order, were filed electronically, and a copy of Plaintiff's Motion for Partial Summary Judgment, Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment, a proposed Order, and Exhibits 1-8, were delivered to the law office of Robert A. Gaumont, Esquire, Piper Rudnick, 6225 Smith Avenue, Baltimore, Maryland 21209.

WEINSTOCK, FRIEDMAN
& FRIEDMAN, P.A.

______________________________________

Rosemary E. Allulis
Attorneys for Plaintiff
Executive Centre
4 Reservoir Circle
Baltimore, Maryland 21208-7301
(410) 559-9000

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| **XEROX CORPORATION** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | |
| | * | |
| **PHOENIX COLOR CORPORATION** | * | |
| | * | |
| **Defendant** | * | |
| | * | **Civil Action No.:** L 02 CV 1734 |
| | * | |

*************************************************************************

**ORDER GRANTING PARTIAL SUMMARY JUDGMENT**

Upon Motion by Plaintiff herein for an Order entering Partial Summary Judgment and any response thereto, pursuant to Federal Rule of Civil Procedure 56, it is this _______ day of _______________, 2003, hereby

**ORDERED:** That the Plaintiff's Motion for Partial Summary Judgment with respect to the December 1999 lease modifications is hereby **GRANTED**; and it is further

**ORDERED:** That Judgment is entered against Defendant, and in favor of Plaintiff, in the amount of $1,966,668.00.

_____________________________
Date

_____________________________
Judge,
United States District Court
for the District of Maryland

cc:

Sidney S. Friedman
Weinstock, Friedman & Friedman, P.A.
Executive Centre
4 Reservoir Circle
Baltimore, Maryland 21208-7301

Robert A. Gaumont
Piper Rudnick
6225 Smith Avenue
Baltimore, Maryland 21209

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

**XEROX CORPORATION** *
*
**Plaintiff** *
*
**v.** *
*
**PHOENIX COLOR CORPORATION** *
*
**Defendant** *
* **Civil Action No.:** L 02 CV 1734
*
*************************************************************************

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

The instant litigation arises out of a series of Xerox equipment and service leases, and subsequent lease modifications, between Plaintiff Xerox Corporation, and Defendants Technigraphix, Inc., and Phoenix Color Corporation. The business relationship between the parties began when Technigraphix initially entered into lease agreements for a substantial amount of Xerox equipment. This business relationship precedes the transactions that are the subject of the instant lawsuit by about a decade. In February 1999, Phoenix Color acquired Technigraphix. *See,* Plaintiff's Exhibit 3: Deposition of Edward M. Lieberman at 20 (10-15). In conjunction, Xerox's contact with Technigraphix transitioned from Technigraphix's former President, Jack Tiner, to Donald Tyler, who was introduced to Xerox personnel as the new "decision-maker". *See,* Plaintiff's Exhibit 4: Affidavit of Bruce Mark Nussbaum at ¶¶ 5-6; Plaintiff's Exhibit 5: Deposition of Armando Garcia, III at 31 (1-21), 32 (1-21); Plaintiff's

Exhibit 6: Deposition of Patricia Elizondo at 36 (6-21), 39 (2-18), 40 (7-15); Plaintiff's Exhibit 3: Deposition of Edward M. Lieberman at 42 (3-20). Mr. Tyler held himself out to Xerox personnel as the "Vice President of Phoenix Color", which was printed on the business card that he distributed to them. *Id.* Subsequently, because Technigraphix was seriously delinquent in its payments to Xerox, Xerox made the decision to cease extending further credit to Technigraphix, unless Phoenix Color either signed a corporate guaranty, or entered into future agreements in the name of Phoenix Color. *See,* Plaintiff's Exhibit 7: Email from Jim T. Burkey, dated Friday, October 8, 1999 at 11:35am; Plaintiff's Exhibit 8: Deposition of James T. Burkey at 30 (14-21); 31 (1-6). In December 1999, to reduce monthly payments, and to lease additional, new equipment, Donald Tyler entered into a series of lease modifications with Xerox. These agreements were executed in the name of Phoenix Color, and superseded the original corresponding lease agreements, as is specified in paragraph 18 of the Terms and Conditions. It is these December 1999 lease modifications which are the subject of this Motion for Partial Summary Judgment. *See,* Plaintiff's Exhibit 1: December 1999, Lease Modifications at pages 38-41; 43-46; 48-50; 53-56; 90-94; 104-107; 114-117; 121-124; 127-129; 134-137; 142-145; 256-259; 261-264; 266-269; 271-274; 276-279; 281-284; 286-289; 311-314; 318-321; 332-335; 341-344; 367-370; 381-384; 392-395; 403-406; 414-417; 421-424; 435-438; 442-445; 449-452; 490-493; 511-514; 525-528; 533-536; 603-606.

## II. MATERIAL FACTS THAT ARE NOT IN DISPUTE

1. During September 1999, Edward Lieberman became aware that Technigraphix was a "sick" corporation, because it was losing money, and was in a very bad financial

condition. *See,* Plaintiff's Exhibit 3: Deposition of Edward M. Lieberman at 89 (5-19); 96 (17-21), 97 (1-5).

2. During September 1999, Edward Lieberman also became aware that lease payment obligations to Xerox had ballooned from approximately $35,000 per month, to over $100,000 per month, because Donald Tyler had ordered more equipment. *See,* Plaintiff's Exhibit 3: Deposition of Edward M. Lieberman at 86 (21), 87 (1-19).

3. Because it was behind in its payment obligations to Xerox, Xerox made the decision that Technigraphix orders could only be approved "...if we have them re-written in the name of Phoenix Color Corp OR we have a signed Corporate Guaranty...." *See,* Plaintiff's Exhibit7: Email from Jim T. Burkey, dated Friday, October 8, 1999 at 11:35am; Plaintiff's Exhibit 8: Deposition of James T. Burkey at 30 (14-21); 31 (1-6).

4. A proposal was implemented through the lease modifications, whereby credit could be extended, the monthly payments could be lowered, and an additional piece of equipment could be added. *See,* Plaintiff's Exhibit 2: Deposition of Donald C. Tyler at 78 (3-10), 146 (2-7); Plaintiff's Exhibit 4: Affidavit of Bruce M. Nussbaum at ¶ 14; Plaintiff's Exhibit 3: Deposition of Edward Lieberman at 58 (5-17), 86 (12-21), 87 (1-19).

5. During December 1999, Donald Tyler, as Vice President of Phoenix Color, executed a series of Xerox lease modifications that were in the name of Phoenix Color. *See,* Plaintiff's Exhibit 1: December 1999, Lease Modifications at pages 38-41; 43-46; 48-50; 53-56; 90-94; 104-107; 114-117; 121-124; 127-129; 134-137; 142-145; 256-259; 261-264; 266-269; 271-274; 276-279; 281-284; 286-289; 311-314; 318-321; 332-335; 341-344; 367-370; 381-384; 392-395; 403-406; 414-417; 421-424; 435-438; 442-445; 449-452; 490-493; 511-

514; 525-528; 533-536; 603-606; Plaintiff's Exhibit 2: Deposition of Donald C. Tyler at 98-114.

6. There is no contention that Xerox did not deliver the equipment, or that the equipment did not function or work properly. *See,* Plaintiff's Exhibit 3: Deposition of Edward M. Lieberman at 105 (16-19); 117 (1-5).

7. Pursuant to the terms of these contracts, the lease modifications superseded all prior oral and written agreements. *See,* Plaintiff's Exhibit 1: December 1999, Lease Modifications at pages 38-41; 43-46; 48-50; 53-56; 90-94; 104-107; 114-117; 121-124; 127-129; 134-137; 142-145; 256-259; 261-264; 266-269; 271-274; 276-279; 281-284; 286-289; 311-314; 318-321; 332-335; 341-344; 367-370; 381-384; 392-395; 403-406; 414-417; 421-424; 435-438; 442-445; 449-452; 490-493; 511-514; 525-528; 533-536; 603-606: Terms and Conditions at paragraph 18.

8. There is currently an outstanding balance due and owing from Phoenix Color, to Xerox, based upon the December 1999 lease modifications, in the amount of $1,966,668.00. *See,* Plaintiff's Exhibit 1: pages 2-25; 58; 87-89; 96-97; 99-103; 109-113; 119-120; 125-126; 132-133; 138-141; 214-247; 297-310; 315-317; 322-331; 337-340; 346-347; 349-351; 358-366; 372-380; 386-391; 397-402; 408-413; 419-420; 426-427; 433-434; 440-442; 447-448; 468-488; 518-524; 530-532; 597-602.

## III. STANDARD OF REVIEW

### 1. Summary Judgment

Pursuant to the Federal Rules of Civil Procedure, Rule 56, any party may, at any time, move for a summary judgment in that party's favor. Summary judgment is proper where "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(C). The purpose of a summary judgment is not to resolve factual issues, or to determine the credibility of the parties, but rather to decide whether a trial is actually necessary. *See generally, Celotex Corporation v. Catrett,* 477 U.S. 317, 327 (1986); *See also, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). By disposing of factually unsupported claims, a summary judgment prevents the unnecessary expenditure of time and expense in trial preparation, when the moving party is entitled to judgment as a matter of law. *Celotex* at 324-27. Summary judgment is an essential rule that ensures the "...just, speedy and inexpensive determination of every action." *Id.* at 327 (*citing,* FED. R. CIV. P. 1).

The applicable standard of review as set forth in *Ramsey v. Bernstein,* 197 B.R. 475 (D.Md.1996) provides that the court must review the record as a whole, and in the light most favorable to the nonmoving party. (*see also, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Following adequate discovery, the rule requires that the court grant a summary judgment against a party that "...fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See, Celotex,* 477 U.S. at 322-23. Additionally, when a motion for summary judgment is made, and is supported by affidavits or other evidence, the non-moving party may not rest upon mere allegations or denials. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250. While the substantive law that is applicable to each particular case will dictate which facts are actually "material," it is only those facts that "might affect the outcome of the suit under the

governing law [that] will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

**2. Contract Interpretation**

When considering questions of contract interpretation that are raised in conjunction with a motion for summary judgment, the federal district court must first determine whether the contract is ambiguous or unambiguous on its face. *See, World-Wide Rights Limited Partnership v. Combe Inc.,* 955 F.2d 242, 245 (4th Cir.1992). A contract is not unambiguous if it is "susceptible of two reasonable interpretations." *Id.* (*citing, American Fidelity & Casualty Co. v. London & Edinburgh Ins. Co.,* 354 F.2d 214 (4th Cir.1965). With respect to the dispositive issue, if the court finds that the contract is unambiguous as a matter of law, then it may properly grant summary judgment. *Id.* Likewise, if the court determines that the contract is ambiguous with respect to the dispositive issue, then the court may examine extrinsic evidence in making its decision. *Id.* If this evidence is dispositive of the issue, then the court may property grant summary judgment on that basis. *Id.* (*citing, Jaftex Corp. v. Aetna Casualty and Surety Co.,* 617 F.2d 1062, 1063 (4th Cir.1980). If the extrinsic evidence leaves genuine issues of fact regarding the interpretation of the contract, however, then the court must deny a summary judgment. *Id.*

**A. The Contract Must Be Interpreted Under An Objective Theory**

It is well-settled law that Maryland follows the objective theory of contract interpretation. *Federal Leasing Inc. v. Amperif Corp.,* 840 F.Supp. 1068, 1073 (D.Md.1993). When construing the terms of a disputed contract, and where its language is "clear and unambiguous on its face," a court will confine its examination to the contract itself. *See, Id.*

(*citing, General Motors Acceptance Corp. v. Daniels,* 303 Md. 254, 262, 492 A.2d 1306, 1310 (1985)). A court "must presume that the parties meant what they expressed." *Id.* As such, the terms contained within the four corners of the contract will not succumb to "...what the parties thought that the agreement meant or intended it to mean." *Id.* (*citing, Board of Trustees v. Sherman,* 280 Md. 373, 380, 373 A.2d 626, 629 (1977). In conducting its analysis, a court will first consider the "...character and purpose of the contract as well as the facts and circumstances of the parties at the time of execution...." *Id.* Next, the court will determine whether the contract is unambiguous. *Id.* If the contract language is susceptible of more than one meaning, then the contract will be considered to be ambiguous, and the court must consider extrinsic evidence to determine the intentions of the parties. *Id.*

## IV. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT SHOULD BE GRANTED AS A MATTER OF LAW

### 1. The Lease Modifications Superseded The Original Contracts

As already discussed above, Maryland follows the objective theory of contract interpretation, confining its examination to the contract itself where the language is clear and unambiguous. *Federal Leasing,* 840 F.Supp. at 1073. The December 1999 lease modifications all include a set of general terms and conditions, consisting of thirty-nine separate paragraphs. *See,* Plaintiff's Exhibit 1: December 1999, Lease Modifications at pages 38-41; 43-46; 48-50; 53-56; 90-94; 104-107; 114-117; 121-124; 127-129; 134-137; 142-145; 256-259; 261-264; 266-269; 271-274; 276-279; 281-284; 286-289; 311-314; 318-321; 332-335; 341-344; 367-370; 381-384; 392-395; 403-406; 414-417; 421-424; 435-438; 442-445; 449-452; 490-493; 511-514; 525-528; 533-536; 603-606. Each of these, contains Paragraph

18, "Miscellaneous". *See, e.g.,* Plaintiff's Exhibit 1: December 1999, Lease Modifications at page 40, ¶ 18. In pertinent part, Paragraph 18 states that, "...[t]his Agreement constitutes the entire agreement as to its subject matter, supersedes all prior and contemporaneous oral and written agreements...." *Id.*

Paragraph 18 is written in plain language, and in clear and unambiguous terms. *Id.* The term "supersede" means to "obliterate, set aside, annul, replace, make void, inefficacious or useless, repeal...." BLACKS LAW DICTIONARY 1437 (6th Ed.1990). There can be but one interpretation of this word. By the plain meaning of the language contained within the lease modifications, therefore, the prior contracts between Xerox and Technigraphix became null and void, and were replaced when the lease modifications were executed in December 1999. *See, e.g.,* Plaintiff's Exhibit 1: December 1999, Lease Modifications at pages 38-41; 43-46; 48-50; 53-56; 90-94; 104-107; 114-117; 121-124; 127-129; 134-137; 142-145; 256-259; 261-264; 266-269; 271-274; 276-279; 281-284; 286-289; 311-314; 318-321; 332-335; 341-344; 367-370; 381-384; 392-395; 403-406; 414-417; 421-424; 435-438; 442-445; 449-452; 490-493; 511-514; 525-528; 533-536; 603-606: Terms and Conditions, ¶ 18. In accordance with an objective theory of contract interpretation, therefore, it must be presumed that the parties intended to be bound by these modifications, and not the original contracts.

Mr. Tyler, held himself out to Xerox as the Vice President of Phoenix Color. When Xerox made the decision not to enter into future contracts in the name of Technigraphix, it reasonably relied upon Mr. Tyler's authority as Vice President, an officer of the corporation, when Mr. Tyler executed the contracts in the name of Phoenix Color. *See,* Plaintiff's Exhibit 1: December 1999, Lease Modifications at pages 38-41; 43-46; 48-50; 53-56; 90-94; 104-107;

114-117; 121-124; 127-129; 134-137; 142-145; 256-259; 261-264; 266-269; 271-274; 276-279; 281-284; 286-289; 311-314; 318-321; 332-335; 341-344; 367-370; 381-384; 392-395; 403-406; 414-417; 421-424; 435-438; 442-445; 449-452; 490-493; 511-514; 525-528; 533-536; 603-606; Plaintiff's Exhibit 2: Deposition of Donald C. Tyler at 98-114. Mr. Tyler does not deny executing these contracts, in fact, during his deposition, he admitted signing each of the December 1999 lease modifications. *See,* Plaintiff's Exhibit 2: Deposition of Donald C. Tyler at 98-114. The equipment was delivered by Xerox as agreed, and there is no contention that it did not function properly. *See,* Plaintiff's Exhibit 3: Deposition of Edward M. Lieberman at 105 (16-19); 117 (1-5). There currently remains a balance due and owing which corresponds to the December 1999 lease modifications in the amount of $1,966,668.00. Because there is no genuine issue as to material fact regarding these contracts or Xerox's performance, Plaintiff, Xerox Corporation is entitled to Partial Summary Judgment to the extent requested as a matter of law.

## V. CONCLUSION

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56. Given this, with respect to the December 1999 lease modifications, a partial summary judgment is proper. By the plain meaning of the language contained within the lease modifications, the prior contracts between Xerox and Technigraphix became null and void, and were replaced when the lease modifications were executed by Donald Tyler, in December 1999. Based upon the foregoing, therefore, Xerox is

entitled to a Partial Summary Judgment in the amount of $1,966,668.00.

**Points and Authorities**

1. Federal Rules of Civil Procedure, Rule 56.

2. *Celotex Corporation v. Catrett,* 477 U.S. 317 (1986).

3. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).

4. *Ramsey v. Bernstein,* 197 B.R. 475 (Bankr.D.Md.1996).

5. *World-Wide Rights Limited Partnership v. Combe Inc.,* 955 F.2d 242 (4th Cir.1992).

6. *Federal Leasing Inc. v. Amperif Corp.,* 840 F.Supp. 1068 (D.Md.1993).

7. BLACKS LAW DICTIONARY 1437 (6th Ed.1990).

Respectfully Submitted,

WEINSTOCK, FRIEDMAN
& FRIEDMAN, P.A.

Sidney S. Friedman

Rosemary E. Allulis
Attorneys for Plaintiff
Executive Centre
4 Reservoir Circle
Baltimore, Maryland 21208-7301
(410) 559-9000

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| **XEROX CORPORATION** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | |
| | * | |
| **PHOENIX COLOR CORPORATION** | * | |
| | * | |
| **Defendant** | * | |
| | * | **Civil Action No.:** L 02 CV 1734 |
| | * | |

*****************************************************************************

**PLAINTIFF'S NOTICE OF FILING LENGTHY EXHIBITS**
**IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Xerox Corporation ("Xerox"), Plaintiff, by and through its attorneys, Sidney S. Friedman, Rosemary E. Allulis, and Weinstock, Friedman & Friedman, P.A., hereby files this Notice of Filing Lengthy Exhibits. Exhibits 1-8, which are an attachment to Plaintiff's Motion for Partial Summary Judgment, exist only in paper format and if scanned will be larger than 1.5 MB. These exhibits will be filed in paper format.

I certify that within 24 hours of the filing of this Notice, I will file and serve paper copies of the document identified above.

April 7, 2003 /s/

Date

Rosemary E. Allulis
Fed. Bar No.: 26625
Weinstock, Friedman & Friedman P.A.
Executive Centre
4 Reservoir Circle
Baltimore, Maryland 21208-7301
(410) 559-9000 (410) 559-9009 fax