IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| XEROX CORPORATION | * |
| Plaintiff | * |
| v. | * CIVIL ACTION NO. WDQ 02 CV 1734 |
| PHOENIX COLOR CORPORATION | * |
| and | * |
| TECHNIGRAPHIX, INCORPORATED | * |
| Defendants | |

\* \* \* \* \* \* \* \* \*

**PHOENIX COLOR'S AMENDED ANSWER AND COUNTERCLAIM
TO XEROX'S AMENDED COMPLAINT**

Defendant Phoenix Color Corporation ("Phoenix Color"), by its attorneys, submits this Amended Answer and Counterclaim to the Amended Complaint served upon it by plaintiff, Xerox Corporation ("Xerox").

### JURISDICTION

1.  Phoenix Color is without knowledge or information sufficient to admit or deny that Xerox is a corporation that is incorporated under the laws of the State of New York, with its principal place of business located in Stamford, Connecticut and its Eastern Operations Division located in Saint Petersburg, Florida, and this allegation therefore is denied.

2.  Admitted.

3. Phoenix Color admits that Technigraphix, Inc. is a corporation that is incorporated under the laws of Maryland, but denies that its principal place of business is located in Potomac, Maryland. Phoenix Color denies the remaining allegations in paragraph 3.

4. Admitted.

## COUNT I

5. Denied.

6. This allegation refers to documents stricken by this Court's October 29, 2002 Order, and this allegation therefore is denied. Phoenix Color denies the remaining allegations in paragraph 6.

7. This allegation refers to documents stricken by this Court's October 29, 2002 Order, and this allegation therefore is denied. Phoenix Color denies the remaining allegations in paragraph 7.

8. Denied.

9. Phoenix Color admits that representatives of Xerox have requested payment from Phoenix Color for money allegedly owed by Technigraphix, Inc., but Phoenix Color is without information sufficient to admit or deny whether these requests have constituted "demand for payment," and this allegations is therefore denied. Phoenix Color denies the remaining allegations in paragraph 9.

10. This allegation is unclear and is therefore denied. Further answering, Phoenix Color has no knowledge of any leased goods or services for copying equipment provided by Xerox to Phoenix Color for which there is a past due account receivable. Phoenix Color denies the remaining allegations in paragraph 10.

## COUNT II

11. Phoenix Color incorporates by reference its responses to the allegations in the preceding paragraphs of this Answer.

12. The allegation that Phoenix Color "purchased" Technigraphix, Inc. is vague and unclear, and this allegation is therefore denied. Further answering, Phoenix Color entered into a contract to buy Technigraphix, Inc.'s stock on or about 1999. Phoenix Color denies the remaining allegations in paragraph 12.

13. The allegation that Technigraphix, Inc. "operated as a Wholly-Owned Subsidiary" of Phoenix Color is vague and unclear, and this allegation is therefore denied. Further answering, Phoenix Color entered into a contract to buy Technigraphix, Inc.'s stock on or about 1999. Phoenix Color denies the remaining allegations in paragraph 13.

14. Denied.

15. Phoenix Color admits that Technigraphix, Inc. has ceased operations. Phoenix Color denies the remaining allegations in paragraph 15.

16. Denied.

17. Phoenix Color admits that Xerox has claimed money from Technigraphix for leased copiers. Phoenix Color denies the remaining allegations in paragraph 17.

18. This allegation refers to documents stricken by this Court's October 29, 2002 Order, and this allegation therefore is denied. Phoenix Color denies the remaining allegations in paragraph 18.

19. This allegation refers to documents stricken by this Court's October 29, 2002 Order, and this allegation therefore is denied. Phoenix Color denies the remaining allegations in paragraph 19.

20. Denied.

21. This allegation refers to documents stricken by this Court's October 29, 2002 Order, and this allegation therefore is denied. Phoenix Color denies the remaining allegations in paragraph 21.

22. Denied.

23. Phoenix Color admits that representatives of Xerox have requested payment from Phoenix Color for money allegedly owed by Technigraphix, Inc., but Phoenix Color is without information sufficient to admit or deny whether these requests have constituted "demand for payment," and these allegations are therefore denied. Phoenix Color denies the remaining allegations in paragraph 23.

## COUNT III

24. Phoenix Color incorporates by reference its responses to the allegations in the preceding paragraphs of this Answer.

25. Phoenix Color admits that Xerox has alleged a past due account receivable from Technigraphix, Inc., but Phoenix Color is unaware of money owed by Technigraphix and this allegation is therefore denied. Phoenix Color denies the remaining allegations in paragraph 25.

26. This allegation refers to documents stricken by this Court's October 29, 2002 Order, and this allegation therefore is denied. Phoenix Color denies the remaining allegations in paragraph 26.

27. This allegation refers to documents stricken by this Court's October 29, 2002 Order, and this allegation therefore is denied. Phoenix Color denies the remaining allegations in paragraph 27.

28. Denied.

29. Phoenix Color admits that representatives of Xerox have requested payment from Technigraphix, but Phoenix Color is without information sufficient to admit or deny whether these requests have constituted "demand for payment," and this allegation is therefore denied. Phoenix Color denies the remaining allegations in paragraph 29.

## AFFIRMATIVE DEFENSES

### First Defense

The Amended Complaint fails to state a claim upon which relief can be granted.

### Second Defense

Phoenix Color generally denies liability.

### Third Defense

Xerox's claims are barred by the controlling terms of the contracts at issue.

### Fourth Defense

Xerox's claims are barred by its failure to mitigate damages.

**Fifth Defense**

Xerox's claims are barred by accord and satisfaction.

**Sixth Defense**

Xerox's claims are barred by duress.

**Seventh Defense**

Xerox's claims are barred by estoppel.

**Eighth Defense**

Xerox's claims are barred by failure of consideration.

**Ninth Defense**

Xerox's claims are barred by fraud.

**Tenth Defense**

Xerox's claims are barred by illegality.

**Eleventh Defense**

Xerox's claims are barred by laches.

**Twelfth Defense**

Xerox's claims are barred by payment.

### Thirteenth Defense

Xerox's claims are barred by release.

### Fourteenth Defense

Xerox's claims are barred by statute of frauds.

### Fifteenth Defense

Xerox's claims are barred by statute of limitations.

### Sixteenth Defense

Xerox's claims are barred by waiver.

### Seventeenth Defense

Xerox's claims are barred by negligent misrepresentation.

## COUNTERCLAIM

### INTRODUCTION

Phoenix Color has learned through discovery that Xerox resorted to fraud and negligent misrepresentation to acquire contracts with the legal name facially designated as "Phoenix Color Corp." As a result of this fraud and negligent misrepresentation, Phoenix Color has suffered damages. Further, punitive damages are warranted to deter Xerox from using this type of intentional and negligent misrepresentation in the future. Accordingly, Phoenix Color submits this Counterclaim.

## FACTUAL BACKGROUND

### *Xerox's History With Technigraphix*

1. Xerox has a history of doing business with Technigraphix, Inc. ("Technigraphix") that goes back to at least 1997. Technigraphix is a Maryland corporation whose principal place of business, at the time, was Sterling, Virginia. Technigraphix was primarily engaged in short-run copying that is known in the printing industry as "On Demand Printing."

2. Since at least 1997, Xerox assigned Bruce Nussbaum as the sales representative to service the Technigraphix account. From 1997 to 2000, Mr. Nussbaum was the principal sales representative whom Xerox assigned to the Technigraphix account.

3. Technigraphix was the largest of the accounts that Xerox assigned to Mr. Nussbaum. In accordance with Xerox policy, Xerox paid Mr. Nussbaum tens of thousands of dollars annually for commissions resulting from leases and sales to Technigraphix.

4. Although Technigraphix provided much revenue to Xerox, Technigraphix had a history of late and compromised payments. Due to size of the Technigraphix account as well as its payment history, all Technigraphix contracts had to be approved by Xerox's credit department before they were effective.

### *Xerox's Decision To No Longer Contract With Technigraphix*

5. In February 1999, Phoenix Color purchased the stock of Technigraphix. A true and accurate copy of this stock purchase agreement is attached as Exhibit 1 to this Counterclaim.

6. From February 1999 to early October 1999, Xerox continued to process contracts in the name of "Technigraphix" or, alternatively, "Technigraphix: A Wholly Owned Subsidiary of Phoenix Color Corp."

7. Most of these contracts with Technigraphix were signed by the Technigraphix Division Director and Chief Operating Officer, Donald Tyler. Mr. Tyler was an officer of Technigraphix only.

8. In October 1999, Xerox's credit manager, James Burkey, decided that Xerox would reject all contracts with Technigraphix unless the contracts included a corporate guaranty from Phoenix Color. Mr. Burkey communicated this decision by an October 8, 1999 e-mail to Denise Holmes, the comptroller of the business unit that serviced the Technigraphix account. Mr. Burkey titled his e-mail "Phoenix Color Corp and subsidiary Technographics Inc". A copy of this October 8, 1999 e-mail is attached as Exhibit 2.

9. Mr. Burkey based his refusal on Technigraphix's history of late and compromised payments. Mr. Burkey maintained a file on Technigraphix which included a thorough history of Technigraphix's credit history and the financial status of the company.

10. At all times, Xerox's credit department recognized that Phoenix Color and Technigraphix were two distinct and separate corporations.

11. Xerox never informed Technigraphix that Xerox had decided that Technigraphix was no longer creditworthy. Xerox never requested that Technigraphix obtain from Phoenix Color a corporate guaranty with respect to Technigraphix's contracts.

### *Xerox's Fraud*

12. At about 12:21 p.m. on October 8, 1999, Mr. Nussbaum was forwarded a copy of Mr. Burkey's e-mail. A copy of this forwarded e-mail is attached as Exhibit 3.

13. On the same day that Mr. Nussbaum was forwarded a copy of Mr. Burkey's October 8, 1999 e-mail, Mr. Nussbaum forged a contract between Xerox and Technigraphix. Specifically, Mr. Nussbaum crossed out the customer legal name which was designated as "Technigraphix: A Wholly Owned Subsidiary of Phoenix Color Corp." and he hand wrote the name "Phoenix Color Corp." A copy of the forged contract is attached as Exhibit 4 to this Counterclaim.

14. Mr. Nussbaum then wrote -- or asked someone else to write -- the initials "DT" next to the change in the customer legal name. Mr. Nussbaum inserted this "DT" to represent falsely that Donald Tyler, the Technigraphix Chief Operating Officer, had approved of Xerox's hand written change to the customer legal name.

15. Mr. Nussbaum then processed this forged contract with Xerox's credit department.

16. At all times relevant to this fraud, Mr. Nussbaum was acting on behalf of Xerox and within the scope of his duties as a Xerox sales representative.

17. Upon information and belief, other Xerox employees may have been involved with this fraud. For example, on the same day that Mr. Nussbaum committed this forgery, Mr. Nussbaum's co-worker, Jonathan Frances, faxed the forged contract to Patti Woliver, a Xerox manager who had authority to approve contracts. Mr. Frances faxed the fraudulent contract to Ms. Woliver with a note

inquiring as to whether Mr. Nussbaum's hand written changes were adequate to warrant acceptance of the contract by Xerox's credit department.

18. Xerox had contracts on file that included Mr. Tyler's hand written initials and that demonstrated that Mr. Nussbaum had fraudulently altered the contracts on October 8, 1999. Attached as Exhibit 5 is another Xerox contract that includes hand written changes made by another Xerox employee, Armando Garcia. This contract, however, includes the initials "DCT" – initials that Mr. Garcia has identified as being Mr. Tyler's. If Xerox had inspected this contract in processing the October 8, 1999 contracts, Xerox would have realized that these changes were initialed by two different individuals. *Compare* Exhibit 4 *with* Exhibit 5.

19. Mr. Nussbaum was induced and enabled to commit fraud on behalf of Xerox as a direct result of Xerox's policies and procedures. According to Xerox policy, Mr. Nussbaum would have lost past and future commissions totaling tens of thousands dollars unless Mr. Nussbaum obtained contracts with the legal name designated as "Phoenix Color Corp." Further, even though Mr. Nussbaum was highly motivated by Xerox's commissions policy to obtain contracts designated as "Phoenix Color Corp." by whatever means necessary, Xerox failed to supervise his activities with respect to the Technigraphix account or to verify the accuracy of the customer initials.

### *Xerox's Negligent Misrepresentation*

20. From October to December 1999, Xerox presented additional contracts to Mr. Tyler where the customer legal name was not filled in or where the customer legal name was designated as "Phoenix Color Corp."

21. These contracts generally involved lease agreements concerning Docutech equipment that Technigraphix had already leased for 60 month periods. The contracts presented from October to December 1999 generally involved renegotiations of the monthly payments and the duration of the contracts.

22. In signing these lease agreements, Mr. Tyler justifiably relied on Xerox to change only the terms of the contract that the parties had discussed, such as the monthly costs and duration.

23. Instead, Xerox changed other terms of the lease agreements that were not discussed, including the customer legal name. These changes were made either before or after Mr. Tyler was asked to sign these contracts.

24. Xerox never communicated to Technigraphix or to Phoenix Color that Xerox's credit department had rejected contracts with Technigraphix.

25. Xerox never communicated to Technigraphix or to Phoenix Color that Xerox would only contract with Technigraphix if Xerox obtained a corporate guaranty from Phoenix Color. Xerox never requested or in any way mentioned the option of obtaining a corporate guaranty.

26. Xerox never communicated to Technigraphix or to Phoenix Color that Xerox was changing the customer legal name from Technigraphix to Phoenix Color.

27. Had Xerox made any of these disclosures, Mr. Tyler would have informed Xerox that he was not an officer of Phoenix Color and that he was not authorized to contract on Phoenix Color's behalf.

## COUNT I – FRAUD

### (*AGAINST XEROX*)

28. Phoenix Color incorporates the preceding paragraphs as if fully stated herein.

29. Xerox falsely and intentionally misrepresented that Mr. Tyler had on October 8, 1999 initialed the modifications of the customer legal name.

30. Xerox falsely and intentionally misrepresented that Mr. Tyler was an officer of Phoenix Color.

31. Xerox had a duty to affirmatively disclose to Phoenix Color and Technigraphix that

a. Xerox rejected future contracts in the name of Technigraphix;

b. Xerox would only contract with Technigraphix if Xerox obtained a corporate guaranty from Phoenix Color; and

b. Xerox was or would be changing the customer legal name of the lease agreements from Technigraphix to Phoenix Color, either before or after they were signed.

32. Xerox made these false representations and non-disclosures for the purpose of defrauding Phoenix Color.

33. Phoenix Color justifiably relied on Xerox not falsely and intentionally misrepresenting the party with which it was contracting.

34. Phoenix Color justifiably relied on Xerox not intentionally failing to disclose that (a) Xerox rejected contracts in the name of Technigraphix; (b) that Xerox required that any contracts with Technigraphix include a corporate guaranty from Phoenix Color; and (c) that Xerox was changing the customer legal name on the lease agreements, either before or after they were signed.

35. Phoenix Color has suffered compensatory damages because of Xerox's fraudulent activity and non-disclosure, including the costs of defending itself in this lawsuit initiated by Xerox. Had Xerox properly investigated the fraudulent activity of its own sales representatives, it could not have filed this lawsuit in good faith.

36. Punitive damages are warranted in this case to punish Xerox and to deter future activity of this kind. Specifically, Mr. Nussbaum was permitted to engage in this fraud on behalf of Xerox because Xerox has adopted a policy of making its sales representatives' compensation highly dependant on commissions, while providing those sales representatives with minimal oversight as to whether they are actually obtaining accurate customer authorization.

## COUNT II – NEGLIGENT MISREPRESENTATION

*(AGAINST XEROX)*

37. Phoenix Color incorporates the preceding paragraphs as if fully stated herein.

38. Xerox owed a duty of care to Technigraphix and Phoenix Color.

39. Xerox made negligent non-disclosures to Technigraphix and Phoenix Color that:

a.  Xerox judged Technigraphix as creditworthy and that it would continue to contract with Technigraphix;

b.  Xerox accepted Technigraphix as a contracting party; and

c.  Xerox was only modifying the terms that were discussed in negotiations between Xerox and Technigraphix, not terms that were not discussed such as the customer's legal name.

40. Xerox also made affirmative negligent misrepresentations, including:

d.  describing Donald Tyler as an officer of Phoenix Color to obtain credit approval; and

e.  initialing modifications to lease agreements as if they have had been approved by Mr. Tyler.

41. Xerox made these negligent misrepresentations and non-disclosures with the intention that Technigraphix would act by signing modified lease agreements.

42. Xerox acted with knowledge that Technigraphix would probably rely on these negligent misrepresentations which, if erroneous, would cause Phoenix Color damage.

43. Technigraphix acted justifiably on Xerox's negligent misrepresentations and non-disclosures.

44. Phoenix Color has suffered damages caused by Xerox's negligence.

WHEREFORE, Phoenix Color requests compensatory damages in the amount of $500,000 and punitive damages in the amount of $5,000,000.

_____
John R. Wellschlager (Fed. Bar No. 24752)
Robert A. Gaumont (Fed. Bar No. 26302)
Piper Rudnick LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000

*Attorneys for Phoenix Color Corporation and Technigraphix, Incorporated, defendants*