IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| XEROX CORPORATION | * |
| Plaintiff | * |
| v. | * CIVIL ACTION NO. WDQ 02 CV 1734 |
| PHOENIX COLOR CORPORATION | * |
| and | * |
| TECHNIGRAPHIX, INCORPORATED | * |
| Defendants | |

\* \* \* \* \* \* \* \* \*

**PHOENIX COLOR'S REPLY TO XEROX'S OPPOSITIONS TO
MOTION FOR LEAVE TO FILE A COUNTERCLAIM AND
TO DISCOVERY-RELATED MOTIONS**

Phoenix Color Corporation ("Phoenix Color"), by its attorneys, replies to the oppositions filed by Xerox Corporation ("Xerox") to its motions for leave to file a fraud counterclaim, to designate a handwriting expert, to take an additional 15 hours of fact depositions, and to extend the discovery deadline.[1]

**I.   INTRODUCTION**

Phoenix Color has moved for leave to amend so that it may file a counterclaim against Xerox. This counterclaim is based on the fraudulent activities of a former Xerox sales

---

[1] Phoenix Color is filing concurrent with this reply a proposed amended answer and counterclaim (with exhibits) and a redlined copy of the proposed amendment, pursuant to Rule 103.6 of the United States District Court of Maryland Rules.

representative, Bruce Nussbaum, whom Phoenix Color deposed on February 25, 2003 pursuant to a subpoena. Phoenix Color has moved for leave to conduct some discovery relating to this fraud – discovery that would principally involve depositions of perhaps four factual witnesses and a continuation of a 30(b)(6) corporate designee deposition that was, contrary to Xerox's assertions, previously agreed to by the parties. Phoenix Color also has requested leave to designate a handwriting expert – a non-controversial point since both parties have agreed to take expert depositions at some time after the discovery deadline. *See* Status Reports filed by Xerox and Phoenix Color. Finally, Phoenix Color has requested that the discovery deadline be extended for two months so that both parties can take the factual and expert depositions necessary to discover the extent of Mr. Nussbaum's fraud, continue the other deposition that the parties agreed to leave open, take the other expert depositions to which the parties previously agreed, and resolve any discovery-related motions before this Court.

If Xerox was confident that its sales representative had <u>not</u> committed fraud, Xerox would simply acquiesce to the amendment of pleading and to the additional discovery and expert-designation requested by Phoenix Color. Instead, Xerox has filed two oppositions that are filled with allegations of bad faith pleading, misrepresentations of the record, and legal arguments that are unrelated to Phoenix Color's motions and that are simply wrong.

In reply, Phoenix Color will resist disputing most of Xerox's legal analysis because this is not the appropriate forum for priming dispositive motions. Instead, Phoenix Color will focus on the three relevant arguments made by Xerox: (1) that Phoenix Color is not alleging fraud in good faith; (2) that Xerox's fraud is "irrelevant and immaterial;" and (3) that Phoenix Color's discovery requests are unreasonable.

## II.   ARGUMENT

*A.   Phoenix Color Has a Good Faith Basis for Alleging Fraud.*

The gist of Xerox's opposition papers seems to be that Phoenix Color is alleging fraud in bad faith and that Phoenix Color has not pled fraud with sufficient particularity. For example, Xerox refers to Phoenix Color's fraud allegations as an "11th hour" attempt to extend the discovery deadline. In fact, as indicated in its status report, its motions and its proposed counterclaim, Phoenix Color has based its fraud counterclaim on some very specific facts. Phoenix Color will not repeat the facts that are set forth in its proposed counterclaim, motion papers and status report other than to note that Phoenix Color is very specific as to the time, place, manner and circumstances of the fraud, as well as the persons involved and the motivations underlying the fraudulent conduct. *See* Phoenix Color's Counterclaim ¶¶ 1-44; Memorandum in Support of Motions for Leave at 2-5; Status Report at 1-3. A well-pled fraud claim includes the "circumstances" of the fraud, including "the time, place, and contents of the alleged false representations, as well as the identity of the person making the misrepresentation." *Mylan Laboratories, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 (D. Md. 1991). Phoenix Color has satisfied these pleading requirements.

Further, Phoenix Color discovered this fraud very recently. Phoenix Color took Mr. Nussbaum's deposition on February 25, 2003, the first day that Xerox's counsel informed Phoenix Color that he was available. Xerox took the deposition of Donald Tyler -- the person whose initials Mr. Nussbaum forged -- on March 5, 2003. Both of these depositions concerned contracts that Xerox had difficulty producing in discovery. Indeed, Xerox's latest supplemental response to interrogatories show that as of the first week in March, Xerox was <u>still</u> looking for some of the contracts upon which Xerox was basing its

claims for damages. *See* Xerox's Supplemental Responses to Technigraphix's Interrogatories Nos. 6-7, attached as Exhibit D to Phoenix Color's Memorandum in Support of its Motions for Leave.

In sum, Phoenix Color has a good faith basis for alleging this compulsory counterclaim of fraud; it should not be prejudiced by Xerox's delay in producing these contracts.

   B.   *Xerox's Fraud Is Not "Irrelevant and Immaterial."*

Xerox repeatedly argues that Phoenix Color should not be permitted to designate a handwriting expert because its allegations of fraud are "irrelevant and immaterial." *See* Xerox's Opposition to Phoenix Color's Motion for Leave to Designate a Handwriting Expert at 3, 8. Xerox argues that this fraud is "irrelevant and immaterial" because it purportedly involves contracts that preceded the December 1999 lease modifications -- these lease modifications, according to Xerox, "supersede" rather than modify all previous contracts. Even assuming that issues of "relevance" are dispositive to a party's request to designate an expert, this argument is wrong because (1) discovery shows that Xerox is actually suing Phoenix Color on contracts with Technigraphix that go back to at least 1997 (although Xerox has still failed to produce all of the contracts at issue in this case); and (2) evidence of Mr. Nussbaum's fraudulent activities and motives bear upon his testimony with respect to every contract he executed, including the December 1999 modifications.

The deposition of Xerox's corporate designee show that Xerox is suing Phoenix Color for contracts other than the December 1999 lease modifications. During the deposition, counsel for Phoenix Color asked the designee to identify the applicable contracts for each of its claims. Xerox's corporate designee confirmed that she could not find many of them, but of the ones she could find, many went back to 1997. *See* Deposition of Rosalia Gianola, dated March 4, 2003, pp. 16-17; 34-35; 119-23; 136-39, attached as Exhibit A.

Even if Xerox were suing only on the December 1999 modifications, evidence of Mr. Nussbaum's prior fraud would be very relevant in determining whether the later modifications were or were not the product of fraud. For example, Mr. Nussbaum now alleges that he informed Mr. Tyler that the customer legal name on these contracts was changed to Phoenix Color. *See* Affidavit of Bruce M. Nussbaum ¶ 15, attached as Exhibit 4 to Xerox's Opposition to Phoenix Color's Motion for Leave to File Counterclaim. In deposition taken one month ago, however, Mr. Nussbaum was adamant that he <u>never</u> informed anyone at Technigraphix or Phoenix Color that he had changed the customer legal name.

Q: And do you remember any discussions with anyone at TechniGraphix or Phoenix Color about changing the name of the contracting party with respect to these contracts?

A: You mean to Phoenix Color?

Q: Changing the name from TechniGraphix to Phoenix Color.

A: No.

Q: You recall no discussions with anyone from TechniGraphix or Phoenix Color about that?

A: No.

*See* Deposition of Bruce M. Nussbaum, dated February 25, 2003, p. 106, lines 9-19, attached as Exhibit B.

For his part, Donald Tyler is equally adamant that no one ever disclosed to him that Xerox was changing the customer legal name from Technigraphix to Phoenix Color either before or after these contracts were presented to him. *See* Deposition of Donald Tyler, dated March 5, 2003, pp. 88-91; 141-42, attached as Exhibit C. Mr. Tyler testified that his focus was attracted to the "meat" of the modification -- i.e. the terms and conditions that the parties had actually discussed. Mr. Tyler reasonably relied on Xerox not to change terms that were not discussed.

Thus, Mr. Nussbaum's fraud bears on his credibility with respect to the manner that he executed every contract at issue in this case. If a trier of fact concludes that Mr. Nussbaum crossed out the name "Technigraphix" and replaced it with "Phoenix Color" and then forged Mr. Tyler's initials when Mr. Nussbaum learned that his commissions were at risk on October 8, 1999, then it also may conclude that Mr. Nussbaum added the customer legal name to the subsequent modifications after they were signed by Mr. Tyler or that Mr. Nussbaum took some other steps to hide from Mr. Tyler the fact that he was purporting to contract for Phoenix Color. Mr. Nussbaum was the sales representative for every one of the contracts at issue in this case, regardless of when they were executed. His fraud is not just relevant and material; it is the heart of this case.

C.   *Phoenix Color's Discovery Requests And Expert Designation Are Reasonable and Appropriate.*

Phoenix Color has requested additional discovery, an expert designation, and an extension of the discovery period that is reasonable and appropriate. With respect to the depositions, Phoenix Color has identified the additional witnesses that it needs to depose to prosecute its fraud case. Phoenix Color also identified its basis for believing that these witnesses have discoverable information pertaining to fraud, as well as their expected testimony.

The 15 hours of additional fact witness deposition time is a good faith estimate of how long it will take for Phoenix to depose the four witnesses to fraud as well as to complete the deposition of Xerox's corporate designee. Xerox misrepresents the record when it claims that Phoenix Color did not inform Xerox that it would seek an extension of the discovery deadline until the day the period closed or, more important, that Xerox did not consent to one. As noted from the transcript, Phoenix Color concluded the deposition of Xerox's corporate designee early <u>at Xerox's request</u> because the designee had a prescheduled flight. *See* Exhibit A, Gianola Deposition, p. 140, lines 10-12. Phoenix Color made

clear at that time that it was leaving the deposition open and the two sides discussed the logistics of continuing it. *Id.* p. 140, l. 13- to p. 141 l. 14. Then, the following exchange occurred between the parties:

> THE WITNESS:     When would we have to have this done by?
>
> MR. GAUMONT:     **We would request an extension of the discovery deadline and do so within the next couple of weeks.**
>
> THE WITNESS:     As long as you are flexible I have other accounts and other cases I am involved with. Other discovery deadlines I am working with. I would make myself available as long as you were flexible with the schedule.
>
> MR. FRIEDMAN:     She also has a small child at home, 14 months old, which is why she needs to get back.
>
> MR. GAUMONT:     I am sympathetic to that. I have a six month old myself. Why don't you go catch your plane.
>
> [Deposition concluded]

*See* Exhibit A, Gianola Deposition, pp. 141/ l. 15- 142/l. 6 (emphasis added).

Phoenix Color needs to continue this agreed-upon deposition so that Phoenix Color can obtain testimony relating to the numerous documents (including contracts) that Phoenix Color had requested in discovery months before, but that Xerox was still unable to produce. *See* Exhibit A, Gianola Deposition, pp. 16-17; 34-35; 119-23; 136-39. Phoenix Color also needs to review with this corporate designee the "binder" that Xerox is now saying that it is compiling which will include "each contract at issue, its terms, the invoices, and the amounts currently due and owing under each one." *See* Xerox's Opposition to Motion for Leave to File a Counterclaim at 16. This "binder" and, more important, all of the documents contained in it should have been assembled and produced months ago – the fact that Xerox has failed to produce it earlier has delayed discovery in the case.

With respect to the handwriting expert, Phoenix Color has explained the need for this expert in its motion papers. This is a simple dispute as to who initialed the change in the customer legal name from "Technigraphix: A Wholly Owned Subsidiary of Phoenix Color Corp." to "Phoenix Color Corp." Mr. Nussbaum identified the initials as Mr. Tyler's. *See* Exhibit B, Nussbaum Deposition at pp. 138-39. Mr. Tyler testified that he did not initial this change and that he was not informed by Xerox of any change in customer legal name. *See* Exhibit C, Tyler Deposition at pp. 119-20. Among other things, a handwriting expert will support the strong circumstantial evidence that Mr. Nussbaum forged Mr. Tyler's initials to signify a change in the customer legal name – something Mr. Nussbaum denied doing in deposition.

Further, Xerox cannot claim any prejudice by designating handwriting experts at this time. As of this date, the only expert discovery that has been taken in this case is the production of expert reports. Both parties agreed to postpone expert depositions. *See* Status Reports of Xerox and Phoenix Color.

Finally, the two month extension of the discovery period is a reasonable, good faith estimate based on the discovery that has yet to be completed. Additional fact witnesses need to be deposed, and Technigraphix's previously designated expert cannot present a final opinion as to damages until Xerox has produced all of the documents that it intends to produce concerning the amounts that Xerox contend is due and owing.

For these reasons and the reasons stated in its motions, Phoenix Color renews its request that this Court GRANT its motions for leave to file a counterclaim, to designate a handwriting expert, to allot an additional 15 hours of deposition time and to extend the discovery deadline by two months.

/s/ John R. Wellschlager
John R. Wellschlager (Fed. Bar No. 24752)
Robert A. Gaumont (Fed. Bar No. 26302)
Piper Rudnick LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000

*Attorneys for Phoenix Color Corporation and Technigraphix, Incorporated, defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of April, 2003 a copy of Phoenix Color's Reply to Xerox's Oppositions to Phoenix Color's Motions for Leave to File Counterclaim Based on Fraud, Designate Handwriting Expert, Conduct Additional Factual Depositions and Extend the Discovery Deadline Dismiss was mailed, postage prepaid, to: Sidney S. Friedman, Esquire and Rosemary E. Allulis, Weinstock, Friedman & Friedman, P.A., Executive Centre, 4 Reservoir Circle, Baltimore, Maryland 21208-7301, attorneys for plaintiff.

John R. Wellschlager