**EXHIBIT A**

# ORIGINAL

1

1        IN THE UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF MARYLAND

3

4    XEROX CORPORATION                    :

5            Plaintiff                    :

6    Vs.                                  :  CIVIL ACTION NO.

7    PHOENIX COLOR CORPORATION            :    L 02CV 1734

8    and                                  :

9    TECHNIGRAPHIX, INCORPORATED          :

10           Defendants                   :

11

12

13

14        Deposition of **ROSALIA T. GIANOLA**, taken

15   on Tuesday, March 4, 2003, at 12:40 p.m., at the

16   law offices of Piper Rudnick, LLP, 6225 Smith

17   Avenue, Baltimore, Maryland, before Bonnie L.

18   Russo, Notary Public.

19        - - - - - - - - - - - - - - - - - - - - - - - - -

20   Reported by:

21   Bonnie L. Russo

CRC-SALOMON
Baltimore, Maryland
Phone (410) 821-4888    Fax (410) 821-4889

16

1      Q.   Let's go through the first customer

2   number, the folder that you gave me, 304744204.

3           I will show you this folder and ask you

4   to identify for the record what is the contract

5   that is at issue in this litigation?

6      A.   For customer 304744204?

7      Q.   That's right.

8      A.   It's the description of the charge. It's

9   a pooling agreement for several pieces of Xerox

10  equipment.

11     Q.   Can you tell based upon the numbers what

12  the equipment was that was involved?

13     A.   I provided the serial number of

14  equipment involved that we show an outstanding

15  balance for.

16     Q.   My question though is whether you can

17  tell exactly or not even exactly, just tell me

18  what the equipment was that this contract relates

19  to?

20     A.   I don't have a copy of the pooling

21  agreement as I indicated when I responded to this

17

1    interrogatory so I don't have a listing.  I have

2    a listing of the serial numbers from the invoices

3    that it generated, but I don't have a copy of the

4    pooling agreement.

5        Q.   What is a pooling agreement?

6        A.   A pooling agreement typically is two

7    machines or more that are possibly under lease

8    and you are pooling the meter allowance.

9        Q.   Okay.

10       A.   So the underlying term lease agreement

11   is still in effect but the pooling agreement --

12   it saves the customer money by pooling their

13   meter allowance.  I was not able to retrieve the

14   pooling agreement.

15            Whatever underlying term lease

16   agreements I was able to provide I provided.

17       Q.   So what is the contract?

18       A.   One of the contracts which I provided

19   under finance customer number 959392705 is a

20   lease agreement for a 6180.  I can't make out the

21   serial number.  I believe it's 8VE050996.  The

34

1    the original was entered into.  Not for sure

2    without the agreement to look at.  I don't know.

3        Q.   Let me show you a rental contract

4    here.  And for purposes of identification we are

5    still on customer number 098665581.

6             I am showing a rental contract

7    concerning the equipment E3N061638 and

8    H3T010421.

9             Can you identify the rental agreement

10   at issue in this?

11       A.   Rental agreement dated 11-7-97 between

12   Technigraphix and Xerox Corporation signed by

13   Jack Tiner monthly base $1,960.  No pick charges.

14       Q.   What is the date on this agreement?

15       A.   11-7-97.

16       Q.   Am I correct that you were suing Phoenix

17   Color based upon this rental agreement?

18       A.   Yes.

19       Q.   Why?

20       A.   Probably because there is outstanding

21   invoices that relate to this rental agreement.

35

1      Q.   But why are you suing Phoenix Color for

2    this agreement when Technigraphix is clearly

3    identified as the contracting party?

4      A.   They bought the assets of Technigraphix.

5      Q.   What makes you think they bought the

6    assets of Technigraphix?

7      A.   There is a stock purchase.

8      Q.   Is that your sole basis for why you are

9    suing Phoenix Color based upon this 1997

10   agreement with Technigraphix?

11          MR. FRIEDMAN:  Objection.  Sole basis

12   will be made known once we have had a chance to

13   review the documents which you turned over today

14   which we asked for a month ago.

15          MR. GAUMONT:  Fair enough.  She can

16   testify as far as she knows in terms of factual

17   basis.  I am not asking for legal conclusions.

18   If her basis is based upon what she thinks may be

19   in the documents that we produced I would like

20   her to say so.

21          THE WITNESS:  Repeat your question

1      A.   I'm sorry.  Again.

2      Q.   Are there any other lease agreements

3 that Xerox is using in support of its claims on

4 behalf of customer number 098905946?

5      A.   No.

6      Q.   But there are two term leases identified

7 in your interrogatory responses; isn't that

8 right?

9      A.   Yes.  As I previously stated, I could

10 not retrieve a copy of a contract for the 6180

11 8VE01928.  We discussed that before.

12     Q.   With the XEEP number as it appeared in

13 the pooling agreement with 666742630?

14     A.   Right.  I stated I could not find the

15 contract or the pooling agreement nor the

16 underlying term lease agreement.

17     Q.   Without having the contract how do you

18 know the terms and conditions?

19     A.    Don't.

20     Q.   Without having the contract how do you

21 know who signed the agreement on behalf of either

120

1    Technigraphix or Phoenix Color?

2        A.   Without having a copy of the

3    agreement?

4        Q.   Yes.

5        A.   If the agreement was never modified the

6    information would be in our XEEP system.  If that

7    agreement had never been modified then I would

8    have all the original information because it was

9    never modified.

10       Q.   In your XEEP system?

11       A.   Yes.

12       Q.   Can you generally print out from the

13   XEEP system?

14       A.   Yes.

15       Q.   Have you done so?

16       A.   No.

17       Q.   Are you willing to do so and supplement

18   your discovery?

19       A.   Yes.

20       Q.   And just to be clear, you will be

21   producing printouts of the XEEP system?

121

1          A.    Right.   It would have bill to, install,

2     term of the contract, pretty much what you find

3     on an EOA.   If an order agreement has never been

4     modified none of the data has been changed.   So

5     if I didn't have a contract copy I could see the

6     date the order was signed.   Who signed the

7     order.   All that information would still be in

8     the system.   I would produce that if I didn't

9     have a contract copy.

10          Q.    Sitting here today do you know who

11    signed it?

12          A.    Who signed the original agreement?

13          Q.    Who signed --

14          A.    For '95?

15          Q.    Let me state the question clearly.

16          Sitting here today can you tell me who

17    signed the term lease agreement identified with

18    the XEEP number 953243706 for which Xerox is

19    claiming $192,970.85 in Count II and as part of

20    the pooling to which Xerox is claiming $94,583.35

21    in Count I?

122

1      A.   In regard to the term lease agreement

2  sitting here today, no.

3      Q.   Do you know what date the term lease

4  agreement was entered into?

5      A.   I might be able to retrieve that

6  information from our XEEP system.

7      Q.   Just to be clear --

8      A.   As of right now, no.

9      Q.   Just to be clear you are going to

10  produce all the printouts through the XEEP system

11  for all the lease agreements upon which you are

12  claiming against either Technigraphix or Phoenix

13  Color; isn't that right?

14      A.   When you say all the printouts there is

15  quite a number of screens that have duplicitous

16  information.

17      Q.   Okay.

18      A.   I will provide -- if there are two

19  screens with the same information I will provide

20   -- as long as I provide you with the information

21  is that sufficient?

123

1      Q.   Yes.

2      A.   Okay.

3      Q.   So long as it's the information you are

4   using in basing any position or any testimony

5   that you may have at trial.

6      A.   Okay.   I will print the XEEP screens for

7   that customer number.

8      Q.   Let me refer you to the interrogatory

9   you supplied in response to number 14 of

10  Technigraphix's first set of interrogatories.

11         If we could have -- I would like to

12  have that set entered as an exhibit.   It has

13  previously been marked as Exhibit 2.

14         In the interrogatory it asks, "Explain

15  why Xerox did not reclaim the copiers at issue in

16  this case after Technigraphix asked that you do

17  so."

18         And the answer, "Xerox had no

19  obligation to take back the equipment.   There was

20  no cancellation provision in the lease."

21         As Xerox's corporate designee on the

136

1      A.   It depends.   Do you mean service like a

2  service technician or sales representative?

3      Q.   I am talking about what we referred to

4  as sales representatives.   I think Mr. Buckson

5  referred to them as account representatives.   The

6  type of people that Mr. Nussbaum was.

7      A.   I assume they go through some type of

8  training.   All employees go through some type of

9  training.

10      Q.   Has Xerox made any efforts to obtain the

11  materials that service representatives receive

12  when they go through this type of training?

13      A.   Yes.

14      Q.   Have you been successful in obtaining

15  the materials that service representatives

16  reference when they go through this type of

17  training?

18      A.   Not yet, no.   From what I found out

19  there were changes as to who conducted training.

20  It changed from year to year within years.

21          Also, this particular CBU there are a

137

1    lot of changes.  I think it went from Metro -- I

2    don't remember the exact names, but it went

3    through a lot of changes.  Asking certain

4    contract managers -- I asked who would perform

5    the training for an account representative or

6    sales rep and they said at some time it was the

7    contract manager.  At other times it would be the

8    sales manager.  At some times it would be

9    Leesburg but the responsibility changed back and

10   forth over the year depending on which year you

11   were discussing.

12          I am still trying to find out for the

13   time period are there any training materials

14   available that I can produce.  I haven't finished

15   working on this.  I haven't gotten yes, here it

16   is, and this is what we have.  The only thing

17   that I -- there was nothing regarding negotiating

18   agreements that I could find.  I found procedures

19   as to how to fill out an order agreement which I

20   produced, but not how to negotiate an agreement.

21   I haven't found anything that speaks to

138

1      negotiating an agreement.

2          Q.   You have produced documents in response

3      to the request for Xerox's procedures as to how

4      to fill out these agreements during the time

5      period?

6          A.   Yes.   I think the ones I found it

7      doesn't go back to '93.   I think the time frame

8      was going back to '93.   I produced what I could

9      find which I think was '97 if I remember

10     correctly.

11         Q.   Could you look through the documents

12     that you produced and find those?

13         A.   I believe it would have been -- it

14     wasn't in the supplemental.   It was probably two

15     pages and there was a cover sheet that said XOA

16     process, but it was produced.   It was probably

17     only two pages.

18         Q.   Ms. Gianola, we have an administrative

19     problem because we don't have Bate's numbers so

20     it's hard to talk with clarity.

21              With that in mind, are you willing to

139

1    reproduce to Mr. Friedman this two-page document

2    which can be brought to my attention about

3    Xerox's policies?

4        A.   Yes.

5        Q.   Does Xerox have a policy as to when a

6    lease becomes effective within the Xerox

7    organization?

8        A.   When a lease becomes effective?  What do

9    you mean effective?

10       Q.   I am talking about who has authority to

11   bind Xerox into a lease agreement.

12       A.   It would be our credit department.  The

13   sales would take the order and submit it for

14   credit approval and once the credit department

15   approves the order it is then a contract.  Once

16   the machine is shipped out.

17       Q.   And is this essentially located in a

18   credit department or multiple credit departments?

19       A.   There are multiple.

20       Q.   Do you know which one handled the

21   Maryland, Washington CBU in 1999?

140

1      A.   I believe it was our Louisville

2   office.   It has changed over the years.   It used

3   to be geographic and then they did it by market

4   segment.   If I had to guess it would be our

5   Louisville office in '99.

6      Q.   Is that the only way a lease agreement

7   becomes effective is if it's approved by the

8   credit department?

9      A.   Yes.

10      MR. FRIEDMAN:   Would this be a

11   convenient time to stop?   I don't want to have

12   her miss her plane.

13      MR. GAUMONT:   I don't want to have her

14   miss her plane either.

15         I will state for the record that this

16   deposition shall remain open.   You are a 30(b)(6)

17   deponent on about ten different areas and I have

18   considerable more testimony to ask from you.

19         I ask you whether you are available to

20   continue this deposition in the near future?

21      THE WITNESS:   Can we do it via telephone

CRC-SALOMON
Baltimore, Maryland
Phone (410) 821-4888    Fax (410) 821-4889

141

1    or would I have to fly down again?

2          MR. GAUMONT:  My preference is for you

3    to fly up considering the number of documents

4    that are at issue in this case, yes.

5          MR. FRIEDMAN:  How much more time do you

6    have in your estimation?

7          MR. GAUMONT:  I am not sure if I could

8    estimate an exact time but it would go into the

9    time when you have a flight to catch.

10          MR. FRIEDMAN:  Can you give us hours. An

11    hour?

12          THE WITNESS:  An additional two hours?

13          MR. GAUMONT:  Somewhere in the two hour

14    range at most.

15          THE WITNESS:  When would we have to have

16    this done by?

17          MR. GAUMONT:  We would request an

18    extension of the discovery deadline and do so

19    within the next couple of weeks.

20          THE WITNESS:  As long as you are

21    flexible I have other accounts and other cases I

142

1    am involved with.  Other discovery deadlines I am

2    working with.  I would make myself available as

3    long as you were flexible with the schedule.

4              MR. FRIEDMAN:  She also has a small

5    child at home, 14 month old, which is why she

6    needs to get back.

7              MR. GAUMONT:  I am sympathetic to

8    that.  I have a six month old myself.

9              Why don't you go catch your plane.

10             (Whereupon, the proceeding was

11   suspended at 4:00 p.m.)

12

13

14

15

16

17

18

19

20

21

144

1    STATE OF MARYLAND

2            SS:

3        I, BONNIE RUSSO, a Notary Public of the

4    State of Maryland, do hereby certify that the

5    within named, ROSALIA GIANOLA, personally

6    appeared before me at the time and place herein

7    set out, and after having been duly sworn by me,

8    was interrogated by counsel. I further certify

9    that the examination was recorded

10   stenographically by me and this transcript is a

11   true record of the proceedings.

12       I further certify that I am not of counsel

13   to any of the parties, nor an employee or

14   counsel, nor related to any of the parties, nor

15   in any way interested in the outcome of this

16   action.

17       As witness my hand and notarial seal this

18   17th day of March, 2003.

19

20   My commission expires:_____

21   August 25, 2004           Notary Public


CRC-SALOMON
Baltimore, Maryland
Phone (410) 821-4888    Fax (410) 821-4889