IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| XEROX CORPORATION,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>PHOENIX COLOR CORPORATION<br><br>and<br><br>TECHNIGRAPHIX, INC.,<br><br>　　　　　Defendants. | CIVIL ACTION NO. WDQ  02 CV 1734 |

**PHOENIX COLOR CORPORATION'S
MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO
XEROX'S MOTION FOR PARTIAL SUMMARY**

John R. Wellschlager (Fed. Bar No. 24752)
Robert A. Gaumont (Fed. Bar No. 26302)
Piper Rudnick LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000

*Attorneys for Phoenix Color Corporation and
Technigraphix, Inc., Defendants*

## TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................................................1

II.  STATEMENT OF UNDISPUTED FACTS ........................................................2

    A.  It Is Undisputed That Phoenix Color and Technigraphix Are Separate Corporations......3
    B.  It Is Undisputed That Xerox Knew That Phoenix Color And Technigraphix Were
        Separate Corporations. .................................................................................4
    C.  It is Undisputed That Xerox Changed The Customer Name On The Lease
        Modifications Without The Approval of Technigraphix Or Phoenix Color...7
    D.  It Is Undisputed That None of The Individuals Who Signed The Contracts Upon
        Which  Xerox Is Suing Were Agents of Phoenix Color. ...............................8

        1.  Jack Tiner Was Not An Agent of Phoenix Color .....................................8
        2.  Walt Marple Was Not An Agent of Phoenix Color..................................9
        3.  Don Tyler Was Not An Agent of Phoenix Color....................................10

III. STANDARD OF REVIEW .................................................................................11

IV.  ARGUMENT ......................................................................................................11

    A.  No Agent of Phoenix Color Ever Entered Into A Contract With Xerox. .......12
    B.  There Is No Reason For This Court to "Pierce the Corporate Veil."...............14
    C.  The December 1999 Lease Modifications Did Not Novate The Parties To The
        Existing Leases. ..........................................................................................16
    D.  Xerox's Claims Against Phoenix Color Are Barred By The Statute of Frauds.............19
    E.  Xerox's Claims Are Based On Inadmissible Evidence. ..................................20
    F.  Xerox Breached Its Duty To Mitigate Damages. ...........................................22

V.   CONCLUSION....................................................................................................23

# TABLE OF AUTHORITIES

**Federal Cases**

*Algave v. Mayor and City Counsel of Ocean City*, 5 F. Supp. 2d 354, 356 (D. Md. 1998) .................... 20

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ........................................................ 11

*Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (1984) .......................................................... 18, 19

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ............................................................. 11

*DeWitt Truck Brokers v. W. Ray Flemming Fruit Co.*, 540 F.2d 681 (4th Cir. 1976) ........................... 14

*In re Hildebrand*, 230 B.R. 72, 77 (Bankr. D. Md. 1999) ........................................................... 12

*King v. Virginia Employment Comm'n*, 1994 WL 416439 ........................................................... 19

*Larbrecque v. Sunbird Boat Co., Inc.*, 873 F. Supp. 946, 951 (D. Md. 1994) ................................... 20

*Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 973 n.8 ( 4th Cir.1990) .................................. 21

*Sanders v. Bethlehem Steel Corp.*, 1996 WL 359467 ............................................................... 19


**State Cases**

*Ace Development Co. v. Harrison*, 196 Md. 357 (1950) .............................................................. 14

*Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 275 Md. 295, 312 (1975) ..................................... 14, 15

*Bob Holding Corp. v. Normal Realty Corp.*, 223 Md. 260, 266 (1960) ............................................ 12

*Dahl v. Brunswick Corp.*, 277 Md. 471, 481 (1976) ................................................................. 17

*Damazo v. Wahby*, 259 Md. 627, 633 (1970) ........................................................................ 14

*Dixon v. Process Corp.*, 38 Md. App. 644, 646 (1978) ............................................................. 14

*I. W. Berman Prop. v. Porter Bros.*, 276 Md. 1, 7-8 (1975) ....................................................... 17

*Mercantile Club, Inc. v. Scherr*, 102 Md. App. 757, 772 (1995) ................................................... 17

*Pine Street Trading Corp. v. Farrell Lines, Inc.*, 278 Md. 363 (1976) ............................................ 22

*Rosenbloom v. Feiler*, 290 Md. 598, 613 (1981) .................................................................... 22

*Sergeant v. Pickett*, 285 Md. 186 (1979) ............................................................................ 22

*Starfish Condominium Ass'n v. Yorkridge Service Corp., Inc.*, 295 Md. 693 (1983) ............................. 15

*Travel Committee, Inc. v. Pan American World Airways, Inc.*, 91 Md. App. 123, *cert. denied*, 327 Md. 525 (1992) ................................................................................................... 14


**Federal Statutes**

Fed. R. Evid. 602 ................................................................................................. 21, 22

Fed. R. Evid. 901 ..................................................................................................... 21


**State Statutes**

Md. Code Ann, Court & Jud. Proc., § 5-901 .......................................................................... 19

## I.    INTRODUCTION

Phoenix Color Corporation ("Phoenix Color") moves for summary judgment because the undisputed facts show that Xerox has no claims against it, legal or equitable. Xerox Corporation ("Xerox") is attempting to enforce against Phoenix Color lease obligations and other contracts that Xerox entered into with a separate and distinct subsidiary of Phoenix Color -- Technigraphix, Inc. ("Technigraphix"). These lease agreements were between Technigraphix and Xerox only and concern printing equipment that was used only by Technigraphix. There are no facts by which this Court should "pierce the corporate veil" and hold Phoenix Color liable for the debts or obligations of Technigraphix.

In its motion for partial summary judgment, Xerox does not even attempt to argue that this Court should pierce the corporate veil. Instead, Xerox has sliced off just under $2 million of its $3.2 million claim and has argued that Phoenix Color is directly responsible for this amount because these claims involve "lease modifications" that Xerox put in Phoenix Color's name either before or after Technigraphix signed them. Xerox's arguments fail as a matter of law for three independent, but related, reasons. First, it is a well-settled principle of corporate law that corporations can only be bound by acts of their agents. All of the individuals who signed the contracts in this case -- Jack Tiner, Walt Marple and Donald Tyler -- were employees and officers of Technigraphix only and, in the case of Mr. Marple, not even an officer of Technigraphix. As a matter of law, these individuals cannot bind Phoenix Color because they are not Phoenix Color agents. Second, it is an equally well-settled principle of corporate law that a parent cannot be held liable for the debts and obligations of its wholly-owned subsidiary. As a matter of law, Xerox cannot recover against Phoenix Color for acts done by Technigraphix's agents unless it "pierces the corporate veil." Third, for Xerox to change the contracting

party from Technigraphix to Phoenix Color through a "lease modification," the existing contracts between Xerox and Technigraphix would have had to have been novated. There is no novation, however, because neither Phoenix Color nor Technigraphix agreed to (or, for that matter, were even aware of) Xerox's changing of the customer legal name from Technigraphix to Phoenix Color.

In short, the undisputed facts demonstrate that as a matter of law, Phoenix Color is not liable for these debts and liabilities.

## II.    STATEMENT OF UNDISPUTED FACTS

This case is about the unfortunate business failure of Technigraphix – a Maryland corporation that operated as a wholly-owned subsidiary of Phoenix Color since February 1999. At the time that Technigraphix ceased active operations on September 30, 2000, Technigraphix had more debts than liabilities. Phoenix Color had paid $6.8 million for Technigraphix, and Phoenix Color lost its entire investment.

This case is also about how Xerox is suing Phoenix Color for equipment used by Technigraphix and contracted for by Technigraphix, despite an undisputed record showing that every lease or contract at issue in this case (of the ones that Xerox can find) was entered into with an *agent of Technigraphix only* -- not an agent of Phoenix Color. It is undisputed that Xerox knew that Phoenix Color and Technigraphix were separate corporations, and that Xerox decided on October 8, 1999 to no longer contract with Technigraphix unless it received a corporate guaranty from Phoenix Color. It is also undisputed that Xerox did not inform either Technigraphix or Phoenix Color that Xerox had rejected Technigraphix's credit, and that Xerox never requested from Phoenix Color this corporate guaranty. The fact that Xerox did not inform Technigraphix or Phoenix Color that it was changing the customer name on lease modifications made after October 8, 1999 to Phoenix Color is not in dispute, although it

does explain why all of these contracts are signed by Technigraphix agents – not agents of Phoenix Color.

As explained below, the undisputed facts show that Xerox's claims against Phoenix Color are entirely without merit.

**A.    It Is Undisputed That Phoenix Color and Technigraphix Are Separate Corporations.**

Technigraphix is a Maryland corporation that is in good standing.  *See* Affidavit of Edward M. Lieberman ¶ 4 ("Lieberman Affidavit"), attached as Exhibit A.    It operated as a wholly-owned subsidiary of Phoenix Color from February 1999 until September 2000, when it ceased active operations.  *Id.* ¶ 5.  When operating, Technigraphix engaged in the "Short Run" or "Print On Demand" printing industry.  *Id.*  Principally, it made pamphlets and booklets for government agencies and non-profit organizations.  *Id.*  To that end, Technigraphix leased certain copying equipment, such as the Xerox "Docutech" equipment that is the subject of this litigation.

Phoenix Color, a Delaware corporation, came into existence in 1979.  *Id.* ¶ 6.  For most of its existence, Phoenix Color has been exclusively devoted to printing book components for the book publishing industry.  *Id.*  Within the last five years, Phoenix Color has expanded its operations into manufacturing complete books, including illustrated multicolor books and one and two color hard and soft cover books.  *Id.*  Edward M. Lieberman has served as the Chief Financial Officer of Phoenix Color since 1988. *Id.* ¶ 3.

In February 1999, Phoenix Color contracted to buy all of Technigraphix's stock.  *Id.* ¶ 7; "Phoenix Color Corp. – Acquisition of Shares of Technigraphix," attached as Exhibit B.  Phoenix Color bought Technigraphix's shares with an intent to operate it as a wholly-owned subsidiary of Phoenix Color.  Exhibit A, Lieberman Affidavit ¶ 8.

The terms of the Acquisition Agreement between Phoenix Color and Technigraphix are straightforward and have not been contested by Xerox in this case. Under the Acquisition Agreement, Phoenix Color agreed to pay $6.8 million for all of Technigraphix's shares. *See* Exhibit B, TGI-002510, TGI-002513-14.    Debra A. Barry, the sole Technigraphix shareholder, and Jack L. Tiner, the Technigraphix President, provided personal warranties as to the disclosures made by Technigraphix in the Acquisition Agreement. TGI-002500, TGI-002510, TGI-002513.

Phoenix Color paid $6.8 million for Technigraphix's stock in February 1999.    Exhibit A, Lieberman Affidavit ¶ 9. It has been its sole shareholder ever since. *Id.*

## B.    It Is Undisputed That Xerox Knew That Phoenix Color And Technigraphix Were Separate Corporations.

Xerox leased equipment to Technigraphix for years before Phoenix Color bought Technigraphix's shares. Since at least 1997, Xerox had assigned one sales representative -- Bruce M. Nussbaum -- to service the Technigraphix account. *See* Deposition of Bruce M. Nussbaum, dated February 25, 2003, p. 17, attached as Exhibit C.

Before Phoenix Color purchased Technigraphix's stock, all of the contracts or lease modifications at issue in this case indicated that the customer name was "Technigraphix" and that the person signing the agreement was Mr. Tiner, who was then Technigraphix's President.    Exhibit A, Lieberman Affidavit ¶ 10.    Mr. Nussbaum dealt principally with Mr. Tiner in negotiating lease modifications and contracts on behalf of Technigraphix before Phoenix Color purchased Technigraphix's stock. Exhibit C, Nussbaum Deposition, pp. 29-30.

Following the Acquisition Agreement in February 1999 -- but before October 8, 1999 -- all of the modifications purport to designate "Technigraphix" or, alternatively, "Technigraphix: A Wholly

Owned Subsidiary of Phoenix Color Corp." as the customer name. Exhibit A, Lieberman Affidavit ¶ 11. Indeed, Xerox has actually produced one of these modifications as part of its claim *against Phoenix Color*. *See* Exhibit 1 to Xerox's Motion for Partial Summary Judgment, Lease Agreement included behind tab 959503574/ 8VE051005. (Phoenix Color has resubmitted this lease modification for this Court's convenience as Exhibit D.) In deposition, Donald Tyler (an employee and officer of Technigraphix who inherited some of Mr. Tiner's responsibilities) testified that he initialed the handwritten addition "A Wholly Owned Subsidiary of Phoenix Color" to the customer legal name "Technigraphix" and that he also identified himself as the "VP Division Director" for Technigraphix. *See* Deposition of Donald Tyler, dated March 5, 2003, pp. 130-33, attached as Exhibit E.

Mr. Tyler was the Chief Operating Officer of Technigraphix. *See* Exhibit A, Lieberman Affidavit ¶ 18. Mr. Tyler was not employed by Phoenix Color at the time when he worked for Technigraphix. *Id.* Mr. Tyler was not an officer of Phoenix Color and was not authorized to enter into contracts on Phoenix Color's behalf. *Id.* As the Chief Operating Officer of Technigraphix, Mr. Tyler was authorized to enter into contracts or lease modifications only on Technigraphix's behalf. *Id.* ¶ 16.

On October 8, 1999, Xerox decided that it would no longer extend credit to Technigraphix. This decision was made by James T. Burkey, the credit manager of Xerox, and he sent an e-mail which was forwarded to Mr. Nussbaum as the sales representative of Xerox. *See* Deposition of James T. Burkey, dated March 3, 2003, pp. 28-29, attached as Exhibit F, authenticating October 8, 1999 e-mail. The e-mail states in relevant part that, "The pending orders can only be approved if we have them re-written in the name of Phoenix Color Corp. OR we have a signed Corporate Guaranty, where Phoenix Color Corp. guarantees the debts of Technigraphics [sic] Inc." *See* Exhibit G. Mr. Burkey testified that this decision

was based on Technigraphix's history of late payments and Xerox write-offs that went back to the time before Phoenix Color owned its stock. Exhibit F, Burkey Deposition, pp. 55-61.

In deposition, Mr. Burkey (testifying as Xerox's corporate designee on the issue of Xerox's credit approval process) explained that the reason why he issued this instruction in October 1999 was because he knew "that it was Technigraphix that was the customer and that their credit was not sufficient. Only Phoenix Color Corp was." *See* Exhibit F, Burkey Deposition p. 32, lines 6-8. Mr. Burkey provided the following testimony concerning Xerox's knowledge of the corporate relationship between Technigraphix and Phoenix Color and its impact on Xerox's credit policies:

> Q.     Do you have an opinion as to whether in accordance with Xerox's credit policies, as they existed at the time of this [October 8, 1999] e-mail, whether Xerox could hold Phoenix Color Corp. liable for contracts executed in the name of Technigraphix when there was no corporate guaranty for Phoenix Color?
>
> MR. FRIEDMAN:     Objection.
>
> BY MR. GAUMONT:
>
> Q:     You can answer.
>
> THE WITNESS:     It is my opinion Xerox could not hold Phoenix Color liable if there was no Phoenix Color involvement.
>
> BY MR. GAUMONT:
>
> Q:     And by involvement what do you mean by involvement?
>
> A:     No guarantee.
>
> Q:     Why is that?
>
> A:     It's a contract.
>
> Q:     What do you mean by it's a contract?
>
> BY MR. FRIEDMAN:     Objection.
>
> THE WITNESS:     It's a contract between Technigraphix and Xerox corporation.
>
> Q:     And do you understand Phoenix Color Corp. and Technigraphix as being two distinct corporations?
>
> A:     I understand –

MR. FRIEDMAN:     I object.

THE WITNESS:     I understand they are two separate corporations.

Exhibit F, Burkey Deposition pp. 37-38.

## C.     It is Undisputed That Xerox Changed The Customer Name On The Lease Modifications Without The Approval of Technigraphix Or Phoenix Color.

Xerox never told Technigraphix or Phoenix Color about Mr. Burkey's decision.  Specifically, Xerox did not tell Technigraphix that it viewed Technigraphix as not being credit worthy.  *See* Exhibit A, Lieberman Affidavit ¶ 12; Affidavit of Donald C. Tyler ¶ 8, attached as Exhibit H.  Xerox also did not tell Technigraphix that it would only contract with Technigraphix if Xerox obtained a corporate guaranty from Phoenix Color.  *Id.*; *Id.*

Xerox did not inform Technigraphix or Phoenix Color that it was changing the customer name on the lease modifications that it was presenting to Mr. Tyler from "Technigraphix" or "Technigraphix: A Wholly Owned Subsidiary of Phoenix Color Corp." to "Phoenix Color Corp."  Exhibit A, Lieberman Affidavit ¶ 14; Exhibit H, Tyler Affidavit ¶ 9.  In fact, considering Mr. Nussbaum's activities, it is possible that Xerox made this change in the customer legal name on the post-October 1999 lease modifications after they were signed by Mr. Tyler.[1]

---

[1]     Phoenix Color has moved for leave to file a counterclaim of fraud against Xerox based primarily on the activities of Mr. Nussbaum.  Specifically, on the day that Mr. Burkey rejected Technigraphix's credit, Mr. Nussbaum crossed out the name of the orders designated as "Technigraphix: A Wholly Owned Subsidiary of Phoenix Color Corp." and hand wrote in the name "Phoenix Color Corp." with the initials "DT" falsely suggesting that the change was made by Mr. Tyler.  *See* Exhibit I.  *Compare* Mr. Tyler's true initials, "DCT," attached as Exhibit D, *with* the initials forged by Xerox as "DT," attached as Exhibit I.

Phoenix Color and Technigraphix are certain that they had no knowledge that any lease modifications or other contracts existed in the name of Phoenix Color until after Technigraphix ceased active operations in September 2000. Exhibit A, Lieberman Affidavit ¶ 15; Exhibit H, Tyler Affidavit ¶ 13. Neither Phoenix Color nor Technigraphix had copies of most of the contracts and lease modifications in this case until after Xerox provided them with copies after Technigraphix ceased active operations. *Id.*; *Id.* ¶ 14.

Mr. Nussbaum has provided a good explanation for why Phoenix Color and Technigraphix did not know Xerox had changed the customer legal name: he never told them. In deposition, Mr. Nussbaum was questioned about the lease modifications upon which Xerox is now moving for summary judgment; he recalled only that these modifications changed the duration, the monthly payments and added some components. Exhibit C, Nussbaum Deposition pp. 101-10. Mr. Nussbaum was adamant, however, that he <u>never</u> informed anyone at Technigraphix or Phoenix Color that he had changed the customer legal name. *Id.* p. 106, lines 9-19.

**D.     It Is Undisputed That None of The Individuals Who Signed The Contracts Upon Which Xerox Is Suing Were Agents of Phoenix Color.**

All of the contracts and lease modifications that Xerox has produced in discovery are signed by one of three individuals (1) Jack Tiner; (2) Walt Marple; or (3) Don Tyler. Exhibit A, Lieberman Affidavit ¶ 10, 11. It is an undisputed fact that none of these individuals were agents of Phoenix Color.

**1.     Jack Tiner Was Not An Agent of Phoenix Color**

Jack Tiner was the President of Technigraphix until several months after Phoenix Color purchased Technigraphix's stock. Exhibit A, Lieberman Affidavit ¶ 10. Mr. Tiner only entered

contracts where the customer legal name was designated as "Technigraphix." *Id.* Mr. Tiner did not contract with Xerox after February 1999, when Phoenix Color acquired Technigraphix's stock. *Id.* ¶ 11.

Xerox has produced several contracts *signed by Mr. Tiner* in support of its motion for partial summary judgment. *See* Exhibit 1 to Xerox's Motion for Partial Summary Judgment, contents behind tabs Rental DOD800161; Rental XDOD Base; Rental XDMS Database; Rental PC Platform; 955949466/ K8V100225; 955949045/ 8VE050843. Further, Xerox's corporate designee confirmed that Xerox was suing Phoenix Color for contracts that Mr. Tiner had entered into with Xerox on behalf of Technigraphix. *See* Deposition of Rosalia Gianola dated March 4, 2003, pp. 34-37, attached as Exhibit J. Xerox is suing Phoenix Color on these contracts even though all of them clearly indicate that Technigraphix is the customer. *Id.*

Mr. Tiner was not an employee of Phoenix Color when he signed these contracts. Exhibit A, Lieberman Affidavit ¶ 19. Phoenix Color never made Mr. Tiner an officer of the company. *Id.* Phoenix Color never authorized Mr. Tiner to contract on its behalf. *Id.* Mr. Tiner was not an agent of Phoenix Color. *Id.*

### 2.    Walt Marple Was Not An Agent of Phoenix Color

Xerox has also sued Phoenix Color based on a contract that was signed by Walt Marple. *See* Exhibit J, Gianola Deposition, pp. 114-16; Exhibit K. According to Xerox's corporate designee, this contract supports Xerox's claim #955288964 -- one of the accounts upon which Xerox has moved for summary judgment. Gianola Deposition p. 114. This contract states that it is on behalf of "Technigraphix: A Wholly Owned Subsidiary of Phoenix Color" and was entered into in September 1999. *Id.*, p. 115-16; Exhibit K.

In September 1999, Walt Marple worked as an employee of Technigraphix. Exhibit A, Lieberman Affidavit ¶ 20. Mr. Marple was not an employee of Phoenix Color when he signed these contracts. *Id.* Phoenix Color never made Mr. Marple an officer of the company. *Id.* Phoenix Color never authorized Mr. Marple to contract on its behalf. *Id.* Mr. Marple was not an agent of Phoenix Color. *Id.*

 3.    **Don Tyler Was Not An Agent of Phoenix Color**

Xerox has also produced lease modifications signed by Donald Tyler. Unlike the contracts signed by Mr. Tiner and Mr. Marple, some of these modifications purport to name "Phoenix Color" as the customer. Other modifications -- which predate Mr. Burkey's October 8, 1999 decision to no longer contract with Technigraphix -- indicate that the customer legal name is "Technigraphix: A Wholly Owned Subsidiary of Phoenix Color." *See* Exhibit D; Exhibit 1 to Xerox's Motion for Partial Summary Judgment, Lease Agreement included behind tab 959503574/ 8VE051005.

As stated above, it is undisputed that Xerox changed the customer legal name in these lease modifications without the approval (or even the knowledge) of Technigraphix or Phoenix Color. *See* Part II(C), *supra*.

It is also undisputed that Donald Tyler did not act as an agent of Phoenix Color when he signed these modifications. Exhibit A, Lieberman Affidavit ¶ 18. In December 1999, Mr. Tyler was an employee of Technigraphix only. *Id.* Mr. Tyler was not an employee of Phoenix Color when he signed these lease modifications. *Id.* Phoenix Color never authorized Mr. Tiner to contract on its behalf. *Id.* Mr. Tiner was not an agent of Phoenix Color. *Id.*

### III.    STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). While the determination of what facts are "material" varies with the substantive law to be applied in each case, only those facts that "might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Rule 56(c) requires that this Court grant summary judgment against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### IV.    ARGUMENT

Xerox's claims against Phoenix Color should be dismissed because (1) no agent of Phoenix Color ever contracted with Xerox; (2) Xerox cannot pierce the corporate veil between Phoenix Color and Technigraphix; (3) the December 1999 "lease modifications" did not novate the existing contracts between Technigraphix and Xerox; and (4) Xerox's claims are barred by the statute of frauds both because Xerox is suing on contracts that it cannot produce (and that preexisted Phoenix Color's purchase of Technigraphix's stock) and because no contract possessed by Xerox is signed "by the party to be charged," i.e., Phoenix Color.

Further, in accordance with Local Rule 105(c), Phoenix Color will present additional arguments in opposition to Xerox's motion for summary judgment that are independent of the reasons for why

summary judgment must be granted as to Phoenix Color.[2]   First, the entirety of Xerox's evidence -- Exhibit 1 and the Affidavit of Rosalia Gianola -- consists of hearsay documents that have been authenticated only by a paralegal in Xerox's legal department, not by an individual with personal knowledge of these claims.  Xerox's work product and conclusory statements by its attorneys are not admissible as to establishing liability or damages.  Second, the undisputed facts show that Xerox breached its common law duty to mitigate its damages when it was informed that Technigraphix had ceased operating and would no longer be able to perform.  Xerox has allowed the leased equipment to remain stored and unused for the last two years.

Phoenix Color will address each of these arguments in turn.

**A.    No Agent of Phoenix Color Ever Entered Into A Contract With Xerox.**

Xerox's claims against Phoenix Color should be dismissed because Xerox never contracted with an agent of Phoenix Color.  It is a "basic rule of corporate law that a corporate body can act only by agents." *Bob Holding Corp. v. Normal Realty Corp.*, 223 Md. 260, 266 (1960).  "Corporations act only through its officers and employees." *In re Hildebrand*, 230 B.R. 72, 77 (Bankr. D. Md. 1999).  No Phoenix Color officer, agent or employee ever agreed to contract with Xerox -- for this reason alone, Xerox's claims against Phoenix Color must be dismissed.

_____

[2]     It goes without saying that Phoenix Color's arguments in favor of granting its motion for summary judgment also demonstrate why Xerox's motion should be denied.

As explained in Part II(D) *supra*, it is undisputed that all of the individuals who signed contracts in this case -- Mr. Tiner, Mr. Marple and Mr. Tyler -- were employees of Technigraphix only; they were not employees of Phoenix Color at the time of contracting, were not agents of Phoenix Color, and did not have authority from Phoenix Color to enter into contracts. Exhibit A, Lieberman Affidavit ¶¶ 18-22. This testimony is provided by Edward M. Lieberman, the Chief Financial Officer of Phoenix Color since 1988 and a person with personal knowledge of Phoenix Color's officers, agents, and persons to whom Phoenix Color gives authority to contract. *Id.* ¶ 3, 22.

With respect to the contracts signed by Mr. Tiner and Mr. Marple, the contracts upon which Xerox bases its claims state clearly that the customer's legal name is "Technigraphix" and "Technigraphix: A Wholly Owned Subsidiary of Phoenix Color." *See* Exhibit K; Exhibit 1 to Xerox's Motion for Partial Summary Judgment, contents behind tabs Rental DOD800161; Rental XDOD Base; Rental XDMS Database; Rental PC Platform; 955949466/ K8V100225; 955949045/ 8VE050843. Xerox cannot hold Phoenix Color liable for these contracts simply because Mr. Tiner and Mr. Marple were not agents of Phoenix Color.

With respect to the contracts signed by Mr. Tyler, the contracts upon which Xerox bases its claims designate the customer name as "Technigraphix," "Technigraphix: A Wholly Owned Subsidiary of Phoenix Color," and, in the case of the December 1999 lease modifications, "Phoenix Color." Exhibit A, Lieberman Affidavit ¶ 11, 15. Phoenix Color never represented, however, to Xerox or to any other vendor that Mr. Tyler was an officer of Phoenix Color. *Id.* ¶ 22. Xerox is the only vendor that has ever claimed that it believed that Mr. Tyler had authority to contract for Phoenix Color. *Id.*

Xerox is trying to bind Phoenix Color to contracts entered into by Technigraphix agents -- its claims must be dismissed.

**B.    There Is No Reason For This Court to "Pierce the Corporate Veil."**

A parent corporation is not liable for its subsidiary's liabilities simply because it is a parent of a wholly-owned subsidiary. The "mere fact that all or almost all of the corporate stock is owned by one individual or a few individuals, will not afford sufficient grounds for disregarding corporateness." *See Travel Committee, Inc. v. Pan American World Airways, Inc.*, 91 Md. App. 123, 158, *cert. denied*, 327 Md. 525 (1992), *citing DeWitt Truck Brokers v. W. Ray Flemming Fruit Co.*, 540 F.2d 681 (4th Cir. 1976).

Maryland law is clear that in order to hold a parent liable for the acts of its subsidiary, a plaintiff must "pierce the corporate veil" of the subsidiary. *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 275 Md. 295, 312 (1975). Piercing the corporate veil of a subsidiary to sue its parent "is a herculean task." *Dixon v. Process Corp.*, 38 Md. App. 644, 646 (1978). In order to pierce the corporate veil, there **must** be a showing of **fraudulent incorporation**. As the Maryland Court of Appeals has explained, "[t]he common thread running through the Maryland cases - as stated earlier - is that the corporate entity will be disregarded *only* when necessary to prevent fraud or to enforce a paramount equity." *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 275 Md. 295, 312 (1975) (emphasis added). Moreover, the "burden of proof is on the one charging fraud to establish by clear, specific acts, facts that in law constitute fraud." *Damazo v. Wahby*, 259 Md. 627, 633 (1970) (quoting *Ace Development Co. v. Harrison*, 196 Md. 357, 367 (1950)).

The *Arconti* case involved an attempt by a contractor, Ames-Ennis, to pierce the corporate veil of a subcontractor corporation to recover against that corporation's principal stockholders and two other corporations owned by those stockholders. There, the plaintiff showed that:

construction equipment owned by the three corporations had been commingled; that the three corporations had operated out of one place of business belonging to Arconti; that Arconti had been permitted to become dormant while the affairs of the other two corporations [with the same owner] improved simultaneously. . . .

*Id.* at 309.

The plaintiff further proved that certain loans had been made to the principal stockholders of the defendant corporations by the defendant corporations and that certain life insurance policies had been transferred to those stockholders gratuitously. *Id.* Even on these facts, the Court held that the corporate veil could not be pierced. *Id.*

Similarly, *Starfish Condominium Ass'n v. Yorkridge Service Corp., Inc.*, 295 Md. 693 (1983) involved Yorkridge Service Corp., Inc. ("Service Co.") -- a wholly-owned subsidiary of Yorkridge Federal Savings & Loan Ass'n ("S&L"). Service Co. shared office space and employees with its parent, although it paid an annual fee for these services to its parent. *Id.* at 715. Service Co.'s directors were also directors of S&L. *Id.* Based on these facts, the court refused to pierce the corporate veil to hold S&L responsible for Service Co.'s obligations. *Id.* at 719.

In this case, it is an undisputed fact that Phoenix Color and Technigraphix are separate corporations. Technigraphix is a Maryland corporation that Phoenix Color acquired through a stock purchase in February 1999. Exhibit A, Lieberman Affidavit ¶ 4, 7. The fact that Technigraphix operated as a wholly-owned subsidiary does not make Phoenix Color liable for the lease agreements that Technigraphix entered into before the stock acquisition or after it. *See Starfish Condominium Ass'n*, 295 Md. at 719.

Xerox has failed to provide this Court with any facts as to why Phoenix Color should be liable for contracts that Xerox entered into with Technigraphix. Instead, Xerox's claims appear to be based on a misunderstanding of the law of corporations. *See* Exhibit J, Gianola Deposition, pp. 34-37.

**C.    The December 1999 Lease Modifications Did Not Novate The Parties To The Existing Leases.**

Seemingly conceding that Phoenix Color is not liable for all of Technigraphix's debts solely by virtue of its status as shareholder, Xerox has now tried to present only a portion its claims based on lease modifications that Technigraphix and Xerox entered into in December 1999, and for which Xerox argues Phoenix Color somehow took on responsibility. (Actually, Xerox presented in Exhibit 1 to its Motion for Partial Summary Judgment contracts executed before December 1999, many of which do not even purport to involve Phoenix Color. *See* Exhibit 1 to Xerox's Motion for Partial Summary Judgment, contents behind tabs 959503574/ 8VE051005; Rental DOD800161; Rental XDOD Base; Rental XDMS Database; Rental PC Platform; 955949466/ K8V100225; 955949045/ 8VE050843.)

The December 1999 lease modifications concerned equipment that Technigraphix already possessed and that Technigraphix was already liable for under existing contracts. Exhibit A, Lieberman Affidavit ¶ 17. With the December 1999 modifications, Xerox and Technigraphix renegotiated a lower monthly payment for Technigraphix on these existing lease obligations. *Id.* Xerox and Technigraphix negotiated for these lower payments so Technigraphix would have the monthly revenue to lease an additional copier on a trial basis. *Id.*

Unknown to Phoenix Color and Technigraphix, Mr. Burkey had informed the Xerox sales force two months before that Xerox was no longer permitted to contract with Technigraphix. *See* Part II(C), *supra*. As explained more fully above, it is undisputed that Xerox did not inform either Technigraphix or Phoenix Color that Xerox desired a corporate guaranty from Phoenix Color. Exhibit A, Lieberman

Affidavit ¶ 12; Exhibit H, Tyler Affidavit ¶ 8.  It is also undisputed that Xerox did not inform either

Technigraphix or Phoenix Color that it was changing the customer legal name on these modifications.

*Id.*; *Id.* ¶ 9.

     Xerox is claiming, however, that these lease modifications bind Phoenix Color because Mr.

Nussbaum changed the customer legal name on these modifications from Technigraphix to Phoenix

Color, either before or after Mr. Tyler signed them.  As a matter of law, the only way Xerox could have

changed the party to these modifications is through a novation.  Xerox's attempt to establish a novation

fails because the undisputed facts show that neither Phoenix Color nor Technigraphix consented to, or

were even aware of, the change in the customer legal name.

     "In Maryland, the rules of law regarding a novation are well settled." *Mercantile Club, Inc. v.*

*Scherr*, 102 Md. App. 757, 772 (1995).  "A novation is a new contractual relation that extinguishes the

contract that was previously in existence between the parties." *Id.*, *citing Dahl v. Brunswick Corp.*, 277

Md. 471, 481 (1976).  "A novation consists of four essential requirements: '(1) a previous valid

obligation; (2) the agreement of all the parties to the new contract; (3) the validity of such new contract,

and (4) the extinguishment of the old contract, by substitution of the new one.'" *Id.* (emphasis added),

*quoting I. W. Berman Prop. v. Porter Bros.*, 276 Md. 1, 7-8 (1975).  Here, the second element of a

novation is lacking because neither Phoenix Color nor Technigraphix agreed to change the customer

legal name on the modifications.

     Mr. Tyler testified in deposition that he believed that the December 1999 modifications

addressed only the terms and conditions that he had discussed with Xerox -- like the duration,

components and monthly payments.  *See* Exhibit E, Tyler Deposition pp. 88-91.  Mr. Nussbaum

likewise testified that the only changes he recalled discussing with respect to the December 1999

modifications were that they changed the duration, the monthly payments and that they added some components. *See* Exhibit C, Nussbaum Deposition pp. 101-10. Mr. Nussbaum was questioned specifically as to whether he recalled disclosing that he had changed or would be changing the customer legal name. His answer was an unqualified "no":

> Q:    And do you remember any discussions with anyone at TechniGraphix or Phoenix Color about changing the name of the contracting party with respect to these contracts?
>
> A:    You mean to Phoenix Color?
>
> Q:    Changing the name from TechniGraphix to Phoenix Color.
>
> A:    No.
>
> Q:    You recall no discussions with anyone from TechniGraphix or Phoenix Color about that?
>
> A:    No.

*See* Exhibit C, Nussbaum Deposition p. 106, lines 9-19.

In direct contradiction to that sworn testimony, Mr. Nussbaum, in his affidavit, now swears that "In conjunction with these lease modifications, I informed Donald Tyler that in order to get the lease's [sic] through the credit approval process, he would 'have to do this as Phoenix Color'; ie., in the name of Phoenix Color." *See* Affidavit of Bruce Nussbaum ¶15, dated March 21, 2003, attached as Exhibit 4 to Xerox's Motion for Partial Summary Judgment.

This statement directly contradicts Mr. Nussbaum's sworn deposition testimony – under the Federal Rules it should be stricken and given no weight by this Court in deciding these cross motions. *See Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (1984) ("If a party who has been examined at length on deposition could raise an issue of material fact simply by submitting an affidavit contradicting his own testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues ... A genuine issue of material fact is not created where the only issue of fact is to

determine which of the two conflicting versions of the plaintiff's testimony is correct."); *Sanders v. Bethlehem Steel Corp.*, 1996 WL 359467 * 4 (4th Cir.) (When plaintiff sought to avoid summary judgment by submitting an affidavit in which she purported to remember a material fact, plaintiff's "failure to remember [the fact] when repeatedly asked for the basis of her claim is tantamount to testimony that it did not occur.  We apply the *Barwick* rule here, and we disregard the conflicting portion of [plaintiff's] belated affidavit."); *King v. Virginia Employment Comm'n*, 1994 WL 416439 **3 (4th Cir.) (affidavit with contradictory testimony that plaintiff filed with opposition to summary judgment motion failed to raise genuine issue of material fact).

Even if this Court were to consider Mr. Nussbaum's contradictory affidavit as to his discussions with a Technigraphix employee (like Mr. Tyler), that statement does not support a novation.  A novation requires an agreement by ***all parties*** to the new contract.  The undisputed fact is that Phoenix Color did not agree to assume the lease obligations from Technigraphix.  Exhibit A, Lieberman Affidavit ¶ 14-16. No agent of Phoenix Color even knew that Xerox possessed lease modifications in Phoenix Color's name until after Technigraphix ceased active operations and Xerox tried to collect from Phoenix Color. *Id.* ¶ 15.  Technigraphix continued to pay Xerox the monthly lease payments for which it contracted and Xerox accepted these payments from Technigraphix. *Id.* ¶ 23.

**D.     Xerox's Claims Against Phoenix Color Are Barred By The Statute of Frauds.**

Alternatively, Xerox's claims against Phoenix Color are barred by the statute of frauds. The Maryland Statute of Frauds requires that all agreements that cannot be performed within one year must be evidenced by a writing "by the party to be charged or another person lawfully authorized by that party." *See* Md. Code Ann, Court & Jud. Proc., § 5-901.

Xerox has sued based on purported contracts that it cannot find.  For some claims, Xerox has compiled invoices and documents generated solely for this litigation as evidence of its claims.  *See* Exhibit 1 to Xerox's Motion for Partial Summary Judgment, contents behind tabs 098665581; 304744204; 666691662; 98665581; 666027669; 941201337; 098663859; 666742630; 953243706/ 8VE051238 ("Contract Not Available"); 666555271; 953243441/ R9H300255 ("Contract Not Available"); 953243706/8VE051238 ("Contract Not Available").

Xerox has also failed to produce any contracts signed by a "person lawfully authorized by" Phoenix Color as would be required by the statute of frauds.  Of the contracts that Xerox can find, all of them are signed and/or initialed by Mr. Tiner, Mr. Marple and Mr. Tyler, who, undisputedly, were not employees of Phoenix Color at the time of the execution of the contracts and, accordingly, were not "lawfully authorized" by Phoenix Color to sign the contracts on behalf of Phoenix Color.  Exhibit A, Lieberman Affidavit ¶ 21.

Xerox's failure to produce documents that comply with the statute of frauds justifies the granting of summary judgment in Phoenix Color's favor.  *See Algave v. Mayor and City Counsel of Ocean City*, 5 F. Supp. 2d 354, 356 (D. Md. 1998) (granting summary judgment where "contract as envisioned by the plaintiffs would have to be in writing in order to satisfy the statute of frauds"); *Larbrecque v. Sunbird Boat Co., Inc.*, 873 F. Supp. 946, 951 (D. Md. 1994) ("Because the contract was not capable of being performed within one year and no present agent of Sunbird has attested to the existence of such a contract, the enforcement of the contract is barred by the Statute of Frauds.").

**E.    Xerox's Claims Are Based On Inadmissible Evidence.**

As Exhibit 1 to its Motion, Xerox attached a three-inch thick stack of hearsay documents.  Xerox then filed the Affidavit of Rosalia T. Gianola -- a paralegal at Xerox's legal department who purports to

have knowledge of how these documents were created and maintained. Federal Rule 56(e) provides, in relevant part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof shall be attached thereto or served therewith.

Fed. R. Civ. P. 56(e).

Exhibit 1 to Xerox's motion and Ms. Gianola's affidavit fail on all counts. Exhibit 1 is a collection of unauthenticated and unsworn documents being offered for the truth of what they purportedly assert. *See* Fed. R. Evid. 901. Accordingly, the documents are inadmissible, are not properly before the Court, and cannot support a motion for summary judgment. *See Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 973 n.8 ( 4th Cir.1990) ("most of the proffered documents . . . are unsworn hearsay that could not properly be considered on a summary judgment motion . . . under Fed. R. Civ. P. 56(e)"). Moreover, Ms. Gianola's affidavit fails to "show affirmatively that the affiant is competent to testify to the matters stated therein." For example, there is no indication that Ms. Gianola created the documents that constitute Exhibit 1 or knows who created these documents or when they were created. There is no explanation given of how, in her role as a paralegal, Ms. Gianola would have had any personal knowledge of the facts that give rise to the underlying dispute or allegedly are reflected in Exhibit 1. Most important, there is no indication as to how Ms. Gianola arrived at her damages calculation based on the documents produced.

In summary, Xerox has failed to lay the necessary foundation that would be required for Exhibit 1 to be admitted into evidence. *See* Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that that the witness has personal knowledge of the

matter"). Exhibit 1 and Ms. Gianola's affidavit are conclusory attorney work product that lack foundation -- it should not be considered by this Court in resolving these motions.

**F.    Xerox Breached Its Duty To Mitigate Damages.**

It is undisputed that Xerox was informed within days after Technigraphix ceased active operations on September 30, 2000 that Technigraphix was no longer in business and not using the equipment at issue in this case. Exhibit A, Lieberman Affidavit ¶ 24. Technigraphix asked Xerox at this time to reclaim the equipment and told Xerox that it would be making no more lease payments. *Id.* It is also undisputed that Technigraphix paid Xerox for every month that it actually used the equipment. *Id.* ¶ 23.

Xerox had a common law duty to mitigate its damages once it was told that Technigraphix would be unable to perform. *See Rosenbloom v. Feiler*, 290 Md. 598, 613 (1981); *Sergeant v. Pickett*, 285 Md. 186 (1979); *Pine Street Trading Corp. v. Farrell Lines, Inc.*, 278 Md. 363 (1976). It is undisputed, however, that Xerox has refused to remove the leased equipment and that this equipment has remained unused since Technigraphix stopped operating in October 2000. Exhibit A, Lieberman Affidavit ¶ 24. As a result, Xerox has breached its duty to mitigate its damages.

## V.     CONCLUSION

For these reasons, Phoenix Color requests that this Court GRANT Phoenix Color's motion for summary judgment and DENY Xerox's motion for partial summary judgment.

John R. Wellschlager (Fed. Bar No. 24752)
Robert A. Gaumont (Fed. Bar No. 26302)
Piper Rudnick LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000

*Attorneys for Phoenix Color Corporation and Technigraphix, Inc., Defendants*