**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| XEROX CORPORATION, | * |
| Plaintiff, | * |
| v. | * CIVIL ACTION NO. WDQ 02 CV 1734 |
| PHOENIX COLOR CORPORATION | * |
| and | * |
| TECHNIGRAPHIX, INC., | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \*

**AFFIDAVIT OF EDWARD M. LIEBERMAN**

I, Edward M. Lieberman, swear as follows:

1. I am over the age of 18, competent to be a witness, and swear and affirm under penalty of perjury that this Affidavit is true and correct.

2. I have personal knowledge of all of the facts averred to in this Affidavit.

3. I am Chief Financial Officer of Phoenix Color Corp. ("Phoenix Color") and have served in that position since 1988. As CFO of Phoenix Color, I have personal knowledge of the identity of all of Phoenix Color's officers and agents. Phoenix Color is a Delaware corporation that is in good standing.

4. I am Chief Financial Officer of Technigraphix, Inc. ("Technigraphix") and have served in that position since 1999. As CFO of Technigraphix, I have personal knowledge of the identity of all of Technigraphix's officers and agents. Technigraphix is a Maryland corporation that is in good standing.

5.      Technigraphix operated as a wholly-owned subsidiary of Phoenix Color from February 1999 until it ceased active operations on September 30, 2000. When operating, Technigraphix engaged in the "Short Run" or "Print on Demand" printing industry. Principally, Technigraphix made books and booklets for government agencies and non-profit organizations.

6.      Phoenix Color first incorporated as a New York corporation in 1979. In 1996, Phoenix Color reincorporated as a Delaware corporation. For most of its existence, Phoenix Color has been exclusively devoted to printing book components for the book publishing industry. Within the last five years, Phoenix Color has expanded its operations into manufacturing complete books, including illustrated multicolor books and one and two color hard and soft cover books.

7.      In February 1999, Phoenix Color contracted to buy all of Technigraphix's stock. Exhibit B is a true and accurate copy of the stock acquisition agreement between Phoenix Color and Technigraphix.

8.      Phoenix Color bought Technigraphix's stock with the intention to operate Technigraphix as a wholly-owned subsidiary of Phoenix Color.

9.      Phoenix Color paid $6.8 million for Technigraphix's stock in February 1999. Phoenix Color made this payment to Debra A. Barry, who was the sole shareholder of Technigraphix. Phoenix Color has been the sole shareholder of Technigraphix ever since it purchased its stock in February 1999.

10.     I have reviewed every contract and lease modification produced by Xerox in this case in support of its claims against Phoenix Color. Every one of these agreements that are dated prior to February 1999 designate "Technigraphix" as the customer. These agreements include the signature of Jack Tiner. Mr. Tiner was the president of Technigraphix before the stock acquisition and he remained president until the Fall of 1999.

11. Following Phoenix Color's stock purchase of Technigraphix until late September 1999, all of the agreements presented by Xerox in support of its claims against Phoenix Color designate "Technigraphix" or "Technigraphix: A Wholly Owned Subsidiary of Phoenix Color Corp." as the customer. These agreements include the signatures of Walt Marple and Don Tyler, both employees of Technigraphix at the times when these contracts were purported to have been signed.

12. Xerox never informed me or anyone associated with Technigraphix or Phoenix Color of Xerox's decision in October 1999 to no longer lease or contract with Technigraphix, unless Xerox obtained a corporate guaranty from Phoenix Color. Xerox never told me or anyone associated with Technigraphix or Phoenix Color that Xerox viewed Technigraphix as being insufficiently credit worthy to permit future contracts or lease modifications. Xerox never told anyone at Phoenix Color or Technigraphix that Xerox wanted a corporate guaranty from Phoenix Color concerning any Technigraphix obligations.

13. As the CFO of Phoenix Color, I am the individual with whom Xerox would have had to negotiate if Xerox sought a corporate guaranty from Phoenix Color or if Xerox wanted to renegotiate the leases in the name of Phoenix Color.

14. Xerox never informed me or anyone associated with Technigraphix or Phoenix Color that Xerox would be changing the customer name on the lease modifications from "Technigraphix" or, alternatively, "Technigraphix: A Wholly Owned Subsidiary of Phoenix Color Corp." to "Phoenix Color Corp." either before or after they were signed by Technigraphix.

15. I have reviewed the lease modifications and other agreements dated December 1999 that purport to designate Phoenix Color as the customer. These modifications and lease agreements were presented to me by Xerox for the first time in October 2000, shortly after I informed Xerox that

Technigraphix was ceasing active operations and that Xerox should remove its equipment. Before October 2000, no one at Xerox ever showed anyone employed by Phoenix Color these December 1999 lease modifications and agreements or suggested to any Phoenix Color employee that Phoenix Color could be liable for the equipment that Technigraphix was using.

16. Neither I nor anyone employed by Phoenix Color ever authorized anyone to enter into these agreements or modifications on behalf of Phoenix Color. I was aware that Don Tyler had renegotiated existing leases with Xerox for a monthly lower payment in his capacity as a Technigraphix officer, but Xerox did not tell me that Xerox would change the customer name on these lease modifications, either before or after Mr. Tyler signed them. I did not learn that Xerox changed the customer legal name on these leases modifications until October 2000.

17. The December 1999 lease modifications concerned equipment that Technigraphix already possessed and were already liable for under existing contracts -- there were years remaining on these existing leases. Xerox and Technigraphix agreed to a lower monthly payment so that Technigraphix could lease an additional printer on a trial basis. The additional piece of equipment, a Docucolor 100, was returned to Xerox and is not equipment upon which Xerox is suing.

18. In December 1999, Don Tyler served as the Chief Operating Officer of Technigraphix. Mr. Tyler was not employed by Phoenix Color from the time that Phoenix Color acquired Technigraphix's stock in February 1999 to when Technigraphix ceased active operations on September 30, 2000. Mr. Tyler was not an officer of Phoenix Color and was not authorized by Phoenix Color to enter into contracts on its behalf. Mr. Tyler was not an agent of Phoenix Color.

19. Jack Tiner was not an employee of Phoenix Color when he signed the contracts and agreements between Technigraphix and Xerox. Phoenix Color never made Mr. Tiner an officer of

Phoenix Color. Phoenix Color never authorized Mr. Tiner to contract on Phoenix Color's behalf. Mr. Tiner was not an agent of Phoenix Color.

20. Walt Marple worked as an employee of Technigraphix in 1999. Mr. Marple was not an employee of Phoenix Color in 1999. Mr. Marple has never been an officer of Phoenix Color and Phoenix Color has never authorized him to enter into contracts on its behalf.

21. From the time when Phoenix Color purchased Technigraphix's stock in February 1999 to when Technigraphix ceased active operations on September 30, 2000, neither I nor anyone associated with Phoenix Color has ever represented to anyone or done anything to leave anyone with the misunderstanding that Don Tyler, Jack Tiner or Walt Marple were employees or officers of Phoenix Color or that they were authorized in anyway to enter into contracts on behalf of Phoenix Color. As the Phoenix Color CFO, I have personal knowledge of the persons that Phoenix Color holds out and represents to vendors as having contracting authority.

22. Phoenix Color has never represented to any vendors that Don Tyler, Jack Tiner or Walt Marple had authority to contract on behalf of Phoenix Color. Xerox is the only person or entity that has ever claimed that Mr. Tyler had authority to contract for Phoenix Color. No person or entity has ever claimed that Mr. Tiner or Mr. Marple had authority to contract on behalf of Phoenix Color.

23. Phoenix Color and Technigraphix have always treated these debts and obligations as belonging to Technigraphix. Until Technigraphix ceased active operations on September 30, 2000, Technigraphix paid Xerox its monthly lease payments. Xerox accepted all of these payments from Technigraphix. Xerox never claimed that any of these obligations belonged to Phoenix Color until after Technigraphix ceased active operations.

24. I informed Xerox that Technigraphix was no longer using the equipment and would no longer be making payments within a few days after Technigraphix ceased active operations on September 30, 2000. I requested that Xerox reclaim the leased equipment. Technigraphix paid its monthly lease payments to Xerox until Technigraphix ceased active operations. Xerox has refused to remove the leased equipment and this equipment has remained unused since Technigraphix stopped operating.

I swear and affirm that this Affidavit is true and correct and based upon my personal knowledge.

Date: ___April 17, 2003_____                     _____
                                                                            Edward M. Lieberman