**EXHIBIT E**

COPY

1

1        IN THE UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF MARYLAND

3

4

5    XEROX CORPORATION,              :

6          Plaintiff              :

7    Vs.                           :     CIVIL ACTION NO.

8    PHOENIX COLOR CORPORATION:     L-02-CV-1734

9    and TECHNIGRAPHIX, INC., :

10          Defendants             :

11              - - - - - - - - - - - - - - - - - - - -

12          Deposition of **DONALD C. TYLER**, taken on

13    Wednesday, March 5, 2003, at 1:28 p.m., at the

14    offices of Weinstock, Friedman & Friedman, P.A.,

15    Executive Centre, 4 Reservoir Circle, Suite 200,

16    Baltimore, Maryland, before Ilana E. Johnston,

17    R.P.R. and Notary Public.

18              - - - - - - - - - - - - - - - - - - - -

19

20    Reported by:

21    Ilana E. Johnston, R.P.R.

CRC-SALOMON
Baltimore, Maryland
Phone (410) 821-4888   Fax (410) 821-4889

88

1       A.   Repeat the question, please.

2       Q.   Would you have signed this lease if your

3  name was not printed out or written out above

4  where you signed?

5            MR. GAUMONT:  Objection to form.  Asked

6  and answered.

7       A.   No, sir.

8       Q.   No.  Would you have signed this lease

9  agreement if the customer's name was not filled

10  out?

11           MR. GAUMONT:  Objection to form.

12      A.   Yes, sir.

13      Q.   Why?

14      A.   Because in my dealings with Xerox over

15  the period of time on numerous lease agreements

16  my concentration was that I was purchasing the

17  meat of the contract, which is the components of

18  the 6180 and the current lease breakdown and my

19  name and Bruce's name.

20      Q.   So it didn't matter to you whose name

21  was in the space marked customer's legal name?

1        MR. GAUMONT:  Objection.

2   Characterization, form.  Mr. Friedman, please

3   keep your voice down.

4        MR. FRIEDMAN:  Mr. Gaumont, I'm going to

5   raise my voice so he can hear me because I don't

6   want you accusing me of speaking too softly.

7   We've already had testimony that he doesn't hear

8   well.

9        MR. GAUMONT:  You're yelling.

10        MR. FRIEDMAN:  No, I'm speaking loudly

11   so that he can hear me.

12   Q.  Am I speaking too loudly for you?

13   A.  A little bit now, yeah.  As long as I

14   can see you, sir.

15   Q.  As long as you can see me.  All right.

16   A.  Yes.  Please repeat the question,

17   please.

18   Q.  It didn't matter to you whether the

19   customer's legal name was filled out?

20        MR. GAUMONT:  Objection.  Foundation,

21   form.

90

1       Q.   Is that your testimony?

2       A.   I concentrated on the meat of the

3   contract, sir.

4       Q.   So that means you didn't care whether

5   the customer's name was filled out, correct?

6            MR. GAUMONT:   Objection.   Form,

7   characterization.

8       A.   No, sir.

9       Q.   You did care.

10           MR. GAUMONT:   Objection.   How many

11  questions you got out there?

12      Q.   You did care.

13      A.   Sir, your question was did I look to see

14  if the name was filled out.   And I stated to you

15  that I concentrated solely on the components of

16  the contract, the lease agreement and the price.

17      Q.   Was it important to you whether the name

18  of the customer was filled out when you signed

19  the lease?

20           MR. GAUMONT:   Objection to form.

21      A.   I did not look at the top of the

1    contract on every contract, sir.

2         Q.  Was it important to you whether the name

3    of the customer was filled out?  That's my

4    question.

5              MR. GAUMONT:  Objection to form.

6         A.  I can't answer that.

7         Q.  I take it then it was not important to

8    you.

9              MR. GAUMONT:  Objection.

10   Characterization, form.

11        A.  Yes, sir, it was important to me.

12        Q.  It was important to you, but you didn't

13   look to see whether it was filled out; is that

14   your testimony?

15             MR. GAUMONT:  Objection to form.

16        A.  Yes, sir.

17        Q.  Okay.  But sitting here today, you don't

18   have any recollection as to whether it was filled

19   out completely or not; is that correct?

20        A.  No, sir, I don't recall.

21        Q.  I will tell you now that the rest of the

130

1          MR. FRIEDMAN:  Okay.  Thank you.

2      Q.  The first lease in this agreement is

3  dated March the 10th, 1999.  Is that your

4  signature at the bottom?

5      A.  Yes, sir, it is.

6      Q.  In order to further identify it, there's

7  a number at the bottom we're looking at

8  959392705.  Was this filled out as it appears

9  today before you signed it?

10         MR. GAUMONT:  Objection to form.

11     A.  I don't recall.

12     Q.  Where it says customer name and has your

13  name written out, Donald Tyler, vice-president,

14  division director, was that filled out before you

15  signed it?

16     A.  That's my handwriting.  I filled that

17  out.

18     Q.  Oh, all right.  At the top where it says

19  a wholly owned subsidiary of Phoenix Color

20  Corporation, is that your writing?

21     A.  No, sir, that's not my writing.

131

1    Q.  Do you know whose writing that is?

2    A.  No, sir, I don't.

3    Q.  And there appear to be some initials

4    above it.  Do you recognize the initials above it

5    or whose writing it is?

6    A.  Those are my initials.

7    Q.  Donald A. Tyler?

8    A.  Donald C.

9    Q.  Donald C. Tyler?

10   A.  DCT.

11   Q.  Why did you initial or why did you put

12   your initials at the top of this lease agreement

13   next to the customer's legal name?

14   A.  I don't recall.

15   Q.  You also put it next to requested

16   install date, which says March 11th, '99.  Why

17   did you initial there?

18   A.  Because they was changing both the

19   install date and the lease agreement price for

20   the piece of equipment, so I wanted to initial

21   that we had the right price.

132

1      Q.   It appears that on this particular lease

2    agreement where it had customer's legal name

3    there was typed in TechniGraphix, Inc.  Do you

4    see that?

5           MR. GAUMONT:  Objection to form.

6      A.   Yes, sir, I do.

7      Q.   Okay.  But then written next to it are

8    the words a wholly owned subsidiary of Phoenix

9    Color Corporation.  Those written words were not

10   put there by you?

11          MR. GAUMONT:  Objection to form.

12     A.   No, sir, they weren't.

13     Q.   Not your handwriting.

14     A.   No, sir.

15     Q.   And you don't recognize the handwriting.

16     A.   No, sir, I don't.

17     Q.   But it is your initials above that,

18   correct?

19     A.   Yes, sir, that's my initials.

20     Q.   Would you agree with me that it's

21   possible you signed your initials or put your

133

1    initials above the words a wholly owned

2    subsidiary of Phoenix Color Corporation to

3    signify the change made on that contract or the

4    addition?

5         MR. GAUMONT:  Objection to form.

6      A.  I don't recall.

7         MR. GAUMONT:  Foundation.

8      Q.  I realize you don't recall, but would

9    you agree with me it's possible that's why you

10   put your initials there?

11        MR. GAUMONT:  Objection to form,

12   foundation.

13     A.  I can't answer that.

14     Q.  All right.  Page 2 of that same lease

15   agreement has the words again next to

16   TechniGraphix or customer name a wholly owned

17   subsidiary of Phoenix Color Corp.  Is that your

18   writing?

19     A.  No, sir it's not.

20     Q.  The date 3/11/99 where it says requested

21   install date, is that your writing?