**EXHIBIT H**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| XEROX CORPORATION, | * |
| Plaintiff, | * |
| v. | * CIVIL ACTION NO. WDQ 02 CV 1734 |
| PHOENIX COLOR CORPORATION | * |
| and | * |
| TECHNIGRAPHIX, INC., | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \*

## AFFIDAVIT OF DONALD C. TYLER

I, Donald C. Tyler, swear as follows:

1. I am over the age of 18, competent to be a witness, and swear and affirm under penalty of perjury that this Affidavit is true and correct.

2. I have personal knowledge of all of the facts averred to in this Affidavit.

3. From shortly after the stock acquisition by Phoenix Color Corp. ("Phoenix Color") of Technigraphix, Inc. ("Technigraphix") in February 1999 to the time when Technigraphix ceased active operations on September 30, 2000, I was employed by Technigraphix as its Chief Operating Officer. I was not an employee of Phoenix Color during this time period.

4. During the time when I was an employee and officer of Technigraphix, I did not tell vendors or anyone else that I was an employee of Phoenix Color.

5. During the time when I was an employee and officer of Technigraphix, no vendor ever asked me to enter into a contract on behalf of Phoenix Color. To the best of my knowledge, all vendors knew that I was an employee and officer of Technigraphix only. I never held myself out as anything other than an officer and employee of Technigraphix.

6. Phoenix Color has never given me authority to negotiate contracts on Phoenix Color's behalf. To the best of my knowledge, Phoenix Color has never represented to anyone that I have authority to enter into contracts on Phoenix Color's behalf.

7. During the time when I was an employee and officer of Technigraphix, I negotiated with Xerox for contracts and leases of printing equipment on behalf of Technigraphix. These negotiations principally involved Bruce Nussbaum who was the sales representative that Xerox assigned to Technigraphix. These negotiations concerned payment terms, duration, and components. At no time did Xerox and I discuss the customer of or the party to the contract or lease obligation as anyone other than Technigraphix.

8. No one ever informed me of the decision by Xerox's credit department in October 1999 to no longer lease or contract with Technigraphix, unless Xerox obtained a corporate guaranty from Phoenix Color. No one told me that Xerox viewed Technigraphix as being insufficiently credit worthy to permit future contracts or lease modifications. No one told me that Xerox wanted a corporate guaranty from Phoenix Color concerning any Technigraphix obligations.

9. No one informed me that Xerox would be changing the customer name on the lease modifications from "Technigraphix" or, alternatively, "Technigraphix: A Wholly Owned Subsidiary of Phoenix Color Corp." to "Phoenix Color Corp." either before or after I signed them.

2

10. I have reviewed the lease modifications and other agreements dated December 1999 that purport to designate Phoenix Color as the customer. I remember that the negotiations with Xerox concerning these modifications involved whether Xerox would lower the monthly payments on existing leases so that Technigraphix could lease an additional printer on a trial basis. We never discussed the parties to these contracts as anyone other than Xerox and Technigraphix.

11. When signing these contracts and leases, I focused on the terms and conditions of the agreements that were discussed and negotiated between me and Xerox. These terms would include the monthly payments, duration and components and were filled out by Xerox. They are located in the middle of these agreements. I did not focus on the top of the contracts which identify the customer name. I never thought that Xerox would have changed the customer legal name from Technigraphix or that Xerox might fill in a different customer legal name after I signed these agreements.

12. I never showed any of these lease agreements or contracts to anyone employed by Phoenix Color at any time. I did discuss the contractual terms proposed by Xerox, such as the duration, components and monthly payments, with Edward Lieberman. I also discussed Technigraphix's needs for printing equipment with Louis LaSorsa. I never showed the actual agreements to them or any other officer or employee of Phoenix Color.

13. The first I learned that Xerox possessed lease agreements that purported to be in the name of Phoenix Color was in October 2000 when I was told of this by Edward Lieberman. Before October 2000, I had never heard anyone claim that the contracts for the equipment that Technigraphix was using were with Phoenix Color, not Technigraphix.

14. In October 2000, Mr. Lieberman and I searched Technigraphix's records for copies of the December 1999 lease modifications and found no record of them. I do not know whether Xerox filled in the name "Phoenix Color Corp." before or after I signed these lease modifications.

I swear and affirm that this Affidavit is true and correct and based upon my personal knowledge.

Date: __4-21-03__   _____
Donald C. Tyler