IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| **XEROX CORPORATION** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | |
| | * | |
| **PHOENIX COLOR CORPORATION** | * | |
| | * | |
| **Defendant** | * | |
| | * | **Civil Action No.:** WDQ 02 CV 1734 |
| | * | |

************************************************************************

### XEROX CORPORATION'S RESPONSE IN OPPOSITION TO PHOENIX COLOR CORPORATION'S MOTION FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

Xerox Corporation ("Xerox"), Plaintiff, by and through its attorneys, Sidney S. Friedman, Rosemary E. Allulis, and Weinstock, Friedman & Friedman, P.A., pursuant to Fed. R. Civ. P. Rule 56, and Local Rule 105, hereby submits its Response in Opposition to Phoenix Color Corporation's Motion for Summary Judgment and its Reply to Phoenix Color Corporation's Opposition to Xerox's Motion for Partial Summary Judgment, and for cause states as follows:

1.     That Partial Summary Judgment is proper on the Amended Complaint as to Defendant Phoenix Color Corporation regarding the December 1999 lease modification agreements signed by Donald Tyler.

1

2.      Because there is  no genuine issue as to material fact regarding these contracts, the Plaintiff is entitled to Partial Summary Judgment to the extent requested as a matter of law.

3.      Defendant Phoenix Color Corporation is not entitled to a Summary Judgment as a matter of law, as there are genuine issues of material facts in dispute which preclude a summary judgment in its favor.

4.      In support of its Opposition and Reply are the following attachments:

A.      Memorandum of Points and Authorities in Support of Plaintiff's Response in Opposition and Reply.

B.      Plaintiff's Exhibits 1 - 12.

WHEREFORE, Xerox Corporation, Plaintiff, respectfully requests this Honorable Court to:

1.      Enter an Order denying Defendant's Motion for Summary Judgment.

2.      Enter an Order granting a Partial Summary Judgment in its favor with respect to the December 1999 contracts.

Respectfully Submitted,

_____WEINSTOCK, FRIEDMAN

& FRIEDMAN, P.A.

_____

Sidney S. Friedman

_____

Rosemary E. Allulis

Attorneys for Plaintiff

Executive Centre
4 Reservoir Circle
Baltimore, Maryland 21208-7301
(410) 559-9000

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| **XEROX CORPORATION** | * |
| | * |
| **Plaintiff** | * |
| | * |
| **v.** | * |
| | * |
| **PHOENIX COLOR CORPORATION** | * |
| | * |
| **Defendant** | * |
| | *    **Civil Action No.:** WDQ 02 CV 1734 |
| | * |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**XEROX CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF ITS RESPONSE IN OPPOSITION TO PHOENIX COLOR**
**CORPORATION'S MOTION FOR SUMMARY JUDGMENT AND**
**REPLY TO OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.  INTRODUCTION

Summary judgment is only proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(C).  The primary function of the court in reviewing a motion for summary judgment, therefore, is to determine whether or not there is an issue of fact to be tried.  The court does not resolve factual issues, or determine the credibility of the parties, but decides whether a trial is actually necessary.  *See generally, Celotex Corporation*

1

*v. Catrett,* 477 U.S. 317, 327 (1986); *See also, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). While the substantive law that is applicable to each particular case will dictate which facts are actually "material," it is those facts that might affect the outcome of the suit under the governing law that will properly preclude the entry of summary judgment. *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608, 614-15 (1985)(*citing, Lynx Inc. v. Ordnance Products, Inc.,* 273 Md. 1, 8, 327 A.2d 502, 509 (1974)). If the court determines that there are issues of material fact, then the motion for summary judgment must be denied. If there are no questions of material fact, then the law is applied in accordance with those facts as admitted through affidavits, depositions, and other material evidence. *See generally, Walker v. D'Alesandro*, 212 Md. 163, 129 A.2d 148 (1957).

The applicable standard of review for a summary judgment as set forth in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) provides that the court must review the record as a whole, and in the light most favorable to the nonmoving party. Following adequate discovery, the rule requires that the court grant a summary judgment against a party that "...fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See, Celotex Corporation v. Catrett,* 477 U.S. 317, 322-23 (1986). To warrant a summary judgment as a matter of law, however, a party must present evidence of specific facts from which the finder of fact could reasonably rule in that party's favor. *Celotex Corporation v. Catrett,* 477 U.S. 317, 327 (1986); *Deans v. CSX Transportation, Inc.,* 152 F.3d 326, 330-31 (4th Cir.1998).

To prevail, therefore, the Defendant must establish those material facts that would affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). It

2

is clear, therefore, that a summary judgment can only be imposed when all facts are admitted which are determinative of a party's right.  As such, a summary judgment cannot be granted unless the facts are clear and undisputed, with the right of the moving party to be entitled to the relief they are seeking free from any doubt.  *See generally, Id.*  The substantive law applicable to each count of the Plaintiff's case will necessarily dictate which facts are actually "material".  *Id.*  Given this, only those facts that would preclude Plaintiff from establishing an essential element on which it bears the burden of proof, would warrant a summary judgment in favor of the Defendant.  *Id.*  Because the Defendant points to specific facts that, even if proved, would not preclude Plaintiff from establishing evidence sufficient to satisfy its burden of proof, Phoenix Color's Motion for Summary Judgment must be denied as a matter of law.

## II.  DEFENDANT'S MOTION SHOULD BE DENIED AS A MATTER OF LAW

Defendant's recitation of the "statement of undisputed facts" pertaining to the present dispute, fails to demonstrate the absence of genuine issues of material fact.  These alleged facts, as set forth by the Defendant, are not sufficient to warrant a summary judgment in its favor as a matter of law.  Instead of setting forth a series of succinct, and separately numbered statements of material facts, that if proven, would affect the outcome of the case, the Defendant has created a ten page narrative that is interspersed with allegedly undisputed facts, and unsupported statements.  Most of these statements would not affect the outcome of this case, and are thus immaterial.  More significantly, the facts that Defendant contends are

undisputed, are vehemently disputed by Plaintiff.

In its first sentence under Statement of Undisputed Facts, Defendant portrays this case as being "...about the unfortunate business failure of Technigraphix...."  From Plaintiff's perspective, however, this case is really about Phoenix Color's avoidance of payment with respect to its indebtedness to Xerox, represented by contracts in the name of Phoenix Color, and executed by a Vice President of Phoenix Color.  Plaintiff calls attention to Defendant's motivation for its non-payment, which Defendant aptly summarized in the third sentence of its Memorandum, "Phoenix color had paid $6.8 million for Technigraphix, and Phoenix Color lost its entire investment."  Payment to Xerox would undoubtedly only further Defendant's losses.

Immaterial facts, and mere conclusory assertions, skewed and supported for the most part by the Defendant's own witnesses, do not present clear and undisputed facts that prove that the Defendant is entitled to a summary judgment.  Indeed, as is set forth more fully below, much of Defendant's "undisputed" facts, are, and have been, disputed by Plaintiff. Instead of a sufficient production of material facts that are not in dispute, Defendant's factual statement has done little more than to cloud the issues in an attempt to sway attention away from its liability with respect to the December 1999 contracts, and which also places any entitlement to the relief that Defendant is seeking in total doubt.

4

**1. Defendant Is Not Entitled To A Summary Judgment To The Extent Requested As A Matter Of Law**

**A.  It is Undisputed that Donald Tyler Held Himself Out as a Corporate Officer, that He Executed the December 1999 Contracts, and that Xerox Performed Under the Terms of Those Contracts**

In its Memorandum, Defendant contends that there is an "undisputed record showing that every lease or contract at issue in this case...was entered into with an *agent* of Technigraphix *only* – not an agent of Phoenix Color." *See,* Defendant's Memorandum at 2, ¶ 3.  In support, Defendant refers to the Affidavit of Edward Lieberman, who claims that Donald Tyler was not employed by Phoenix Color during this time period, and was only authorized to contract on behalf of Technigraphix.  *See,* Defendant's Memorandum at 5, ¶ 2. The fact is, however, that Xerox was led to believe that Donald Tyler was a Vice President of Phoenix Color with the authority to contract on its behalf, and in that capacity, Donald Tyler executed the contracts with Xerox.

After Phoenix Color acquired Technigraphix, it is undisputed that Donald Tyler held himself out to Xerox as a Vice President of Phoenix Color Corporation, and that Jack Tiner, the former President of Technigraphix, advised Xerox employees that Donald Tyler was now the decision-maker, and the person whom they should go to.  *See,* Plaintiff's Exhibit 2: Affidavit of Bruce Mark Nussbaum at ¶ 4, Plaintiff's Exhibit 3: Deposition of Armando Garcia, III at 31 (1-21), 32 (1-21); Plaintiff's Exhibit 4: Deposition of Patricia Elizondo at 36 (6-21), 39 (2-18), 40 (7-15).  Furthermore, it is undisputed that Donald Tyler personally

5

distributed his business card to his contact at Xerox, Bruce Nussbaum, as well as to other Xerox employees, which identified him as "Vice President of Phoenix Color Corporation". *See,* Plaintiff's Exhibit 5: Copy of Donald Tyler's business card. The record shows that there has been no evidence produced to refute the authenticity of Tyler's business card, nor has there been any other business card produced by either Defendant, and which identifies Donald Tyler as an employee of Technigraphix, or in any other capacity than Vice President of Phoenix Color. When asked, Mr. Tyler "cannot recall" ever having any business cards printed up in the name of Technigraphix. *See*, Plaintiff's Exhibit 6: Deposition of Donald C. Tyler at 84 (15-21), 85 (1-16).

When Mr. Tyler held himself out to Xerox as the Vice President of Phoenix Color, Xerox reasonably relied upon that authority as Vice President, and an officer of the corporation, when he executed contracts in the name of Phoenix Color. First, it is undisputed that Donald Tyler's signature appears on the contracts which are the subject of Plaintiff's Motion for Partial Summary Judgment. *See,* Plaintiff's Exhibit 1, filed in conjunction with Xerox's Motion for Partial Summary Judgment: December 1999, Lease Modifications at pages 38-41; 43-46; 48-50; 53-56; 90-94; 104-107; 114-117; 121-124; 127-129; 134-137; 142-145; 256-259; 261-264; 266-269; 271-274; 276-279; 281-284; 286-289; 311-314; 318-321; 332-335; 341-344; 367-370; 381-384; 392-395; 403-406; 414-417; 421-424; 435-438; 442-445; 449-452; 490-493; 511-514; 525-528; 533-536; 603-606; Plaintiff's Exhibit 5: Deposition of Donald C. Tyler at 98-114. Second, it is also undisputed that Mr. Tyler does not deny executing these contracts; during his deposition, he admitted signing each of the December 1999 lease modifications. *See,* Plaintiff's Exhibit 6: Deposition of Donald C.

Tyler at 97-114. Third, the equipment was delivered by Xerox as agreed, and there is no

contention that it did not function properly. *See,* Plaintiff's Exhibit 7: Deposition of Edward

M. Lieberman at 105 (16-19); 117 (1-5). It is noteworthy that Mr. Tyler also signed Xerox

lease agreements prior to December 1999, as "V.P. Phoenix Color", in which the customer's

legal/bill to name was "Technigraphix A Wholly Owned Subsidiary of Phoenix Color Corp.".

*See,* Plaintiff's Exhibit 12: Contracts dated 8/26/99 and 9/27/99.

Because the undisputed facts establish that Donald Tyler held himself out to be a Vice

President of Phoenix Color Corporation, that he freely executed the December 1999 lease

modifications in his capacity as the Vice President of Phoenix Color, and that Xerox

performed as required by the contracts, Plaintiff should be entitled to a Partial Summary

Judgment with respect to those contracts. It is noteworthy that Defendant claims that Donald

Tyler identified himself as "VP Division Director" for Technigraphix, in one sentence, and

then claims that he was the "Chief Operating Officer of Technigraphix" in another. *See,*

Defendant's Memorandum at 5, ¶ 1. The fact that Defendant cannot correctly and/or

consistently identify Mr. Tyler's position within its company, bolsters Plaintiff's position that

Mr. Tyler held himself out to Xerox as the Vice President of Phoenix Color.

Additionally, in addition to distributing the business card identifying himself as "Vice

President Quality/Service Management" on his Phoenix Color business card, even as late as

January 6, 2000, Mr. Tyler - presumably in his own handwriting - identified himself as "VP -

Operations", which further calls into question how Mr. Tyler held himself out to Xerox. *See,*

Plaintiff's Exhibit 5: Donald Tyler's business card; Plaintiff's Exhibit 11: Letter to Bruce

Nussbaum signed by Donald Tyler, dated 1/6/00. Furthermore, to the extent that Defendant

7

contends that Mr. Tyler was not authorized to contract on behalf of Phoenix Color, an issue of disputed fact is raised sufficient to overcome Defendant's Motion for Summary Judgment. Whether or not Mr. Tyler was an agent of Phoenix Color is a question of fact which should be resolved by the trier of fact at trial of this matter, and not through a Summary Judgment.

### B.  The Written Lease Modifications Continued for the Term of the Lease and Month-to-Month Thereafter

Defendant's contention that Xerox breached its common law duty to mitigate its damages is not supported factually or legally.  First, Xerox contends that it did, in fact, meet its obligation to mitigate damages, but that Phoenix Color rejected offers extended to it by Xerox.  In his deposition, Edward Lieberman, acknowledged discussions with Xerox related to the leased equipment in Defendant's possession, and the remainder of the obligation under the lease terms.  *See,* Plaintiff's Exhibit 7: Deposition of Edward Lieberman at 77 (11-15). Additionally, Defendant made little effort at leasing the equipment to a third party, and either rejected offers from third parties because of what it perceived as unfavorable terms, or failed to request from Xerox the authority to sell the equipment.  *See,* Plaintiff's Exhibit 7: Deposition of Edward Lieberman at 70 - 74.  Likewise, by raising the question as to whether or not Plaintiff breached its duty to mitigate damages, Defendant effectively creates an issue of material fact to be resolved at trial, and not through a summary judgment.

Second, by the written terms of the contracts, each was for a set term that would renew unless 30 days prior to the end of the term, a party provided written notice of its intent not to

renew. As such, at the time Defendant stopped paying, it was still bound at least until the end

of the contract term.  When construing the terms of a disputed contract, and where its

language is "clear and unambiguous on its face," a court will confine its examination to the

contract itself.  *See, Federal Leasing Inc. v. Amperif Corp.,* 840 F.Supp. 1068, 1073

(D.Md.1993). (*citing, General Motors Acceptance Corp. v. Daniels,* 303 Md. 254, 262, 492

A.2d 1306, 1310 (1985)).  A court "must presume that the parties meant what they

expressed."  *Id.*  As such, the terms contained within the four corners of the contract will not

succumb to "...what the parties thought that the agreement meant or intended it to mean."  *Id.*

(*citing, Board of Trustees v. Sherman,* 280 Md. 373, 380, 373 A.2d 626, 629 (1977).

 As already stated, each of the Xerox contracts is for a specified term, which is printed

on the face of the contract.  This is typically for 60 or 59 months.  The contract remains in full

force and effect until the end of the term, and unless - before the end of the lease term - either

party provides a 30-day written notice of its intent <u>not to renew the lease</u>, the lease is

automatically renewed on a month-th-month basis.  *See,* Plaintiff's Exhibit 1: December 1999,

Lease Modifications at pages 38-41; 43-46; 48-50; 53-56; 90-94; 104-107; 114-117; 121-124;

127-129; 134-137; 142-145; 256-259; 261-264; 266-269; 271-274; 276-279; 281-284; 286-

289; 311-314; 318-321; 332-335; 341-344; 367-370; 381-384; 392-395; 403-406; 414-417;

421-424; 435-438; 442-445; 449-452; 490-493; 511-514; 525-528; 533-536; 603-606: Terms

and Conditions at paragraphs 12 and 18.  Any modifications to this agreement must be in

writing, and signed by both parties.  *Id.*

 In its Memorandum, Defendant seems to be claiming that when Xerox discovered that

Technigraphix ceased its active operations, Xerox was obligated to go to Hagerstown and pick

up the leased equipment. *See,* Defendant's Memorandum at 12, ¶ 1; 22, ¶¶ 2-3. Defendant notes that "Technigraphix asked Xerox...to reclaim the equipment and told Xerox that it would be making no more lease payments." *Id.* at 22, ¶ 1. There is simply no legal basis for Defendant to attempt to avoid payment by relying on such a statement. Parties to a contract are bound by its terms. *See generally, Federal Leasing,* 840 F.Supp. 1068. Defendant's claims fail, because as noted above, the plain language of the contract is to the contrary; any modifications to the agreement must be in writing, and signed by both parties. More significantly, Phoenix Color was the contracting party, and not Technigraphix as Defendant alleges. *See,* Plaintiff's Exhibit 1, filed in conjunction with Xerox's Motion for Partial Summary Judgment: December 1999, Lease Modifications at pages 38-41; 43-46; 48-50; 53-56; 90-94; 104-107; 114-117; 121-124; 127-129; 134-137; 142-145; 256-259; 261-264; 266-269; 271-274; 276-279; 281-284; 286-289; 311-314; 318-321; 332-335; 341-344; 367-370; 381-384; 392-395; 403-406; 414-417; 421-424; 435-438; 442-445; 449-452; 490-493; 511-514; 525-528; 533-536; 603-606; Plaintiff's Exhibit 6: Deposition of Donald C. Tyler at 97-114. Likewise, it is undisputed that Mr. Tyler does not deny executing these contracts. *See,* Plaintiff's Exhibit 6: Deposition of Donald C. Tyler at 97-114. During his deposition, Mr. Tyler admitted signing each of the December 1999 lease modifications. Finally, the equipment was delivered by Xerox as agreed, and there is no contention that it did not function properly. *See,* Plaintiff's Exhibit 7: Deposition of Edward M. Lieberman at 105 (16-19); 117 (1-5). Defendant breached the contract by failing to pay for the equipment for the term of the lease, as it is legally obligated to do.

10

## C.  The December 1999 Lease Modifications Are Valid
## and Satisfy the Statute of Frauds

Defendant claims that the December 1999 Lease Modifications were not valid because these transactions do not satisfy all required elements for a novation of existing contracts. *See,* Defendant's Memorandum at 17, ¶ 2.  This argument is baseless.  The necessary elements for a novation are: "...(1) a previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the validity of such new contract, and (4) the extinguishment of the old contract, by the substitution for it of the new one."  *Leisner v. Finnerty,* 252 Md. 558, 564, 250 A.2d 641, 644 (1969)(*quoting, District National Bank of Washington v. Mordecai,* 133 Md. 419, 105 A. 586 (1919).  A novation may refer to a new contract between the same parties, or a new contract involving one or more new parties.  *Id.* at 563, 250 A.2d at 644. Additionally, there is no requirement that there be an expressed intention to substitute one agreement for another; the "...facts and circumstances surrounding the transaction and a subsequent conduct of the parties may show acceptance as clearly as an express agreement." *Id.* at 565, 250 A.2d at 645.  It is clear from the facts and circumstances involved in the instant case, that there exists a valid novation.

Each of the elements for a novation is satisfied.  Each of the December 1999 contracts modifies a prior, valid contract, with one also adding a new piece of equipment; each is signed by agents of the parties; each is valid; and, pursuant to the terms of the modifications, the new terms supersede the terms contained in the original contracts.  More specifically, pursuant to the plain language of these contracts, the December 1999 Leases are written, express

11

modifications of existing contracts, and effectively replace them.  *See,* Plaintiff's Exhibit 1:

December 1999, Lease Modifications at pages 38-41; 43-46; 48-50; 53-56; 90-94; 104-107;

114-117; 121-124; 127-129; 134-137; 142-145; 256-259; 261-264; 266-269; 271-274; 276-

279; 281-284; 286-289; 311-314; 318-321; 332-335; 341-344; 367-370; 381-384; 392-395;

403-406; 414-417; 421-424; 435-438; 442-445; 449-452; 490-493; 511-514; 525-528; 533-

536; 603-606, and Terms and Conditions at paragraph 25.  For a modification agreement,

"...the prior agreement shall remain in effect except that any new terms presented in this

modification agreement...shall take precedence over the prior terms for the balance of the

Agreement."  *Id.*  Additionally, the subsequent conduct of the parties shows an acceptance of

the modifications.  Plaintiff delivered the new equipment and lowered Defendant's monthly

payments, and Defendant accepted the equipment and made the lower payments until it

breached the contract and ceased paying.

   As Defendant points out, with the exception of adding one new piece of equipment,

the December 1999 lease modifications concerned equipment already in its possession.  *See,*

Defendant's Memorandum at 16, ¶ 3.  What Defendant fails to acknowledge, however, are the

contract terms contained within each of those agreements.  Specifically, that the December

1999 contracts <u>modified</u> the existing contracts.  *See,* Plaintiff's Exhibit 1: Terms and

Conditions at paragraph 25.  The terms that the parties agreed to, and became bound by, are

the terms contained within the contracts when they were executed by Mr. Tyler during

December 1999.  There have been no allegations that the underlying contracts were not valid.

Defendant's argument that Mr. Tyler's execution of these contracts did not constitute a valid

novation, if anything, goes back to the issue of whether Mr. Tyler acted as Phoenix Color's

agent. This issue is not sufficient to warrant a summary judgment in Defendant's favor. If anything, it creates an issue of material fact sufficient to deny Defendant's Motion.

As already discussed above, it is undisputed that Mr. Tyler held himself out as an agent of Phoenix Color; its Vice President, the decision-maker. Mr. Tyler also admits executing each of the December 1999 contracts. *See,* Plaintiff's Exhibit 2: Affidavit of Bruce Mark Nussbaum at ¶ 4; Plaintiff's Exhibit 3: Deposition of Armando Garcia, III at 31 (1-21), 32 (1-21); Plaintiff's Exhibit 4: Deposition of Patricia Elizondo at 36 (6-21), 39 (2-18), 40 (7-15); Plaintiff's Exhibit 5: Copy of Donald Tyler's business card; Plaintiff's Exhibit 6: Deposition of Donald C. Tyler at 97-114. What terms Mr. Tyler "believed" were contained in the December 1999 contracts is of little value in resolving the issues between the parties. Mr. Tyler had an obligation to read the contracts prior to executing them. Maryland law placed a duty on Mr. Tyler to read the terms of those contracts.

As pointed out in one of Plaintiff's prior Memorandums, as the person executing the lease modifications, Mr. Tyler had a duty to read the contents of the documents; the terms of the agreements - prior to signing them. *See, Holzman v. Fiola Blum, Inc.,* 125 Md.App. 602, 629-32, 726 A.2d 818, 831-32 (1999); *see also, Hart v. Vermont Inv. Ltd. Partnership,* 667 A.2d 578, 582 (D.C.1995)(acknowledging that, as a general rule, one who signs a contract has a duty to read it). There has been no allegation that Mr. Nussbaum prevented Mr. Tyler from reading the agreements prior to signing them. Mr. Tyler signed them voluntarily, and he signed them in his capacity as Vice President of Phoenix Color. *See,* Plaintiff's Exhibit 6: Deposition of Donald C. Tyler at 97-114; 88 (1-7). Mr. Tyler did not just sign one contract, in fact, he signed a series of contracts during December 1999. It is undisputed that Mr. Tyler

13

signed his name on Xerox lease modifications approximately <u>thirty-six</u> <u>separate</u> <u>times</u> during December 1999.  *See,* Plaintiff's Exhibit 1: December 1999, Lease Modifications at pages 38-41; 43-46; 48-50; 53-56; 90-94; 104-107; 114-117; 121-124; 127-129; 134-137; 142-145; 256-259; 261-264; 266-269; 271-274; 276-279; 281-284; 286-289; 311-314; 318-321; 332-335; 341-344; 367-370; 381-384; 392-395; 403-406; 414-417; 421-424; 435-438; 442-445; 449-452; 490-493; 511-514; 525-528; 533-536; 603-606.  Additionally, not all of these lease modifications had terms that were pre-printed in hand-writing.  Some had been pre-printed and generated by computer, such that items like customer name and address were obviously already printed on the document, thus completely negating Defendant's continued allegations that Mr. Nussbaum fraudulently hand-wrote the name Phoenix Color and the title Vice President Phoenix Color <u>after</u> Mr. Tyler executed the documents.  *See,* Plaintiff's Exhibit 1 at 311, 318, 332; Plaintiff's Exhibit 10: Deposition of Bruce Mark Nussbaum at 174 (12-21); 175 (1-14).

Through his own admissions, Mr. Tyler failed to thoroughly read the contents of the contracts, and admits that he cannot even recall whether the top portion of the contracts were filled in completely or not.  Plaintiff's Exhibit 6:  Deposition of Donald Tyler at 90 (1-21); 91 (1-20).  The fact that Mr. Tyler was only concerned with the "meat of the contract" cannot now be used by Defendant to avoid payment - or to allege fraud.  *Id.*  Defendant fails to cite any legal authority that would support any duty on Plaintiff to explain the terms of these contracts, executed during arm's length business transactions between two corporations, and Plaintiff is not aware of any such legal authority.

Likewise, these written contracts are sufficient to satisfy the Statute of Frauds.  In its

14

Motion for Partial Summary Judgment, Plaintiff specifically referenced, and attached as exhibits, the December 1999 lease modifications.  While Xerox concedes that in searching through its voluminous business records which correspond to this litigation it was unable to locate some contracts at issue, such as maintenance agreements, it brings to the Court's attention that any contracts it was unable to locate were not included in its Motion; each of the December 1999 lease modifications has been produced and is included in Exhibit 1 for the Court's review.  Certainly, Xerox remains within its rights to sue upon each and every executed contract that it has produced in conjunction with this litigation, and in which Defendant has failed to pay the outstanding balance.  As evidenced by its Motion for Partial Summary Judgment, Xerox has abandoned it's claims for any contracts that it is unable to produce.

For the same reasons already stated, Defendant's Statute of Frauds argument fails with respect to its contention that the contracts were not signed by a "person lawfully authorized by" Phoenix Color.  *See,* Defendant's Memorandum at 20, ¶ 2.  Once again, whether Donald Tyler, who held himself out as the Vice President of Phoenix Color when he executed the thirty-six or so separate contracts, was the agent of Phoenix Color, is an issue for the trier of fact to resolve at trial of this matter.  Mr. Lieberman's self-serving affidavit cited by Defendant cannot overcome the overwhelming sworn testimony to the contrary that is cited by Plaintiff above.  *See,* Defendant's Memorandum at 20, ¶ 2.  Given that Plaintiff raises specific issues of material fact that are in dispute, on this alone, Defendant is not entitled to a summary judgment as a matter of law.

**D.  In It's Motion for Partial Summary Judgment, Plaintiff Does Not Attempt to Impose Liability on the Basis of Phoenix Color's Status as the Parent Corporation to Technigraphix**

In it's Memorandum, Defendant argues that there is no reason for the Court to "pierce the corporate veil".  *See,* Defendant's Memorandum at 14.  Although Defendant's actions with respect to the dealings of its corporate officers certainly call into question issues of possible fraud, to date, Plaintiff has not yet raised piercing the corporate veil as an issue.  Plaintiff assumes that through its argument, Defendant is attempting to take proactive steps to try and thwart any effort at doing so.  As set forth completely elsewhere in this Memorandum, and in it's Motion for Partial Summary Judgment, Plaintiff contends that as a party to the contracts, Phoenix Color is liable for the balance due and owing with respect to the December 1999 lease modifications, which is currently $1,966,668.00.

With respect to the piercing the corporate veil argument, Defendant contends that to do so, "...there ***must*** be a showing of ***fraudulent incorporation***."  *See*, Defendant's Memorandum at 14, ¶ 2.  Defendant does not provide a citation to support this contention, and Plaintiff does not agree with this statement.

The Maryland courts will pierce the corporate veil where necessary to prevent fraud or to enforce a paramount equity.  *See, Arconti & Sons, Inc. v. Ames-Ennis,* 275 Md. 295, 310-11, 340 A.2d 225, 234-35 (1975).  These cases typically deal with commingled business equipment, funds, and officers as in *Arconti*, or with attempts at holding a subsidiary liable for the debts of a partner or parent, and vice versa.  *See, e.g., Dixon v. Process Corporation,* 38 Md.App. 644, 382 A.2d 893 (1978); *Starfish Condominium Assn. v. Yorkridge Service Corp.*

16

*Inc.,* 295 Md. 693, 458 A.2d 805 (1983). Given the law in Maryland, Plaintiff agrees with

Defendant that "[t]he fact that Technigraphix operated as a wholly-owned subsidiary does not

make Phoenix Color liable for the lease agreements...." *See*, Defendant's Memorandum at 15,

¶ 4. Plaintiff disagrees, however, that the contracting party was Technigraphix. Phoenix

Color is liable as the contracting party. Additionally, and contrary to Defendant's assertions,

Plaintiff <u>has</u> set forth specific facts above, and in each of it's prior Memorandums, particularly

it's Motion for Partial Summary Judgment, which establish Phoenix Color's liability as a

party to the December 1999 contracts. Likewise, Defendant's statement that Xerox's claims

appear to be based upon a misunderstanding of corporate law is unfounded. *See*, Defendant's

Memorandum at 16, ¶ 1. As a corporate body, and as a non-attorney corporate designee

witness, neither Xerox Corporation, nor Ms. Rosalia Gianola are competent to interpret "the

law of corporations". *Id.* Such questions are improper of a corporate witness, and were

properly objected to by counsel for Plaintiff during Ms. Gianola's deposition. *See,* Plaintiff's

Exhibit 8: Deposition of Rosalia Gianola at 35, line 11.

As discussed above, during the business transactions between the parties, it was

Donald Tyler who either negligently misrepresented, or fraudulently held himself out as the

Vice President of Phoenix Color, having the authority to sign lease modifications on behalf of

Phoenix Color, and did so in order to induce Xerox into continuing business with a failing

enterprise. Defendant cannot even come to a definitive conclusion as to what title it

considered Donald Tyler to hold. At least five titles are cited elsewhere in this document;

Vice President Phoenix Color, Vice President Operations, Vice President Quality/Service

Management, Chief Operating Officer of Technigraphix, Division Director. The relationship

17

between Technigraphix and Phoenix Color is made even more clouded when examining letterhead that Donald Tyler used in January 2000. *See,* Plaintiff's Exhibit 11. This document, presumably written in Donald Tyler's hand, and after the December 1999 lease modifications were executed, notes the address as Virginia, and the company name as "Technigraphix...A Division of Phoenix Color Corp." *Id.* Donald Tyler identifies himself as "VP-Operations". This document does not identify Technigraphix as a subsidiary; a "division" of a company is typically considered a part of a larger organization - not a separate subsidiary or entity. *See,* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th Ed.2000)(an area of government or corporate activity organized as an administrative or functional unit).

If any company was defrauded, it was Xerox, which has suffered a loss of approximately three million dollars in conjunction with these transactions. Defendant's misrepresentations, if not fraud, and adeptness at wearing different hats to its advantage depending upon the situation, should not be allowed to be used to escape financial liability to Plaintiff, and could very well rise to the level necessary to pierce the corporate veil if the trier of fact were to find that Donald Tyler was not acting as an agent of Phoenix Color. It would certainly be a paramount inequity should Defendant escape liability to the sum of three million dollars, given the facts and circumstances of this case. Additionally, Defendant has not set forth sufficient material facts to warrant a summary judgment, and the facts cited by Plaintiff throughout this Memorandum create genuine issues of material fact sufficient to overcome Defendant's Motion.

18

## 2.  The Evidence That Xerox Filed In Support Of Motion For Partial Summary Judgment Is Admissible

### A.  Each of the December 1999 Contracts Were Authenticated

Defendant contends that the "entirety" of Xerox's evidence filed in support of it's Motion for Partial Summary Judgment is inadmissible, because it consists of hearsay documents, work product, and conclusory statements by its attorneys.  *See,* Defendant's Memorandum at 12, ¶ 1; 20, ¶ 1, 4; 21.  This contention is totally unfounded.  Contrary to Defendant's contentions, the "entirety" of Xerox's evidence did not only consist of Exhibit 1, and the Affidavit of Rosalia Gianola.  Xerox filed eight exhibits, much of which consisted of deposition testimony.  *See,* Xerox's Motion for Partial Summary Judgment and attached Memorandum of Points and Authorities.  The contracts that are the subject of Xerox's Motion for Partial Summary Judgment had been previously produced in discovery.  It is significant to note that in addition to Ms. Gianola's Affidavit filed in conjunction with Xerox's Motion, as well as her sworn deposition testimony as Xerox's corporate designee, the December 1999 contracts were also authenticated by Defendant's own witness, Donald Tyler, who during his sworn deposition, identified each contract, and identified his signature at the bottom of each contract.  *See,* Plaintiff's Exhibit 6: Deposition of Donald C. Tyler at 97-114.

19

## B. Exhibit 1 to Plaintiff's Motion for Partial Summary Judgment is Admissible Pursuant to the Federal Rules of Evidence, Rule 1006

Pursuant to the Federal Rules of Evidence, Rule 1006, "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation...." Plaintiff proffers that the contents of Exhibit 1 falls within the definition of "voluminous" documents as is contemplated by Rule 1006, and as such, is admissible. The large number of original contracts, the large number of modifications which superseded the original contracts, and the large number of invoices that correspond to each are voluminous, lengthy, and are difficult to "conveniently" follow. Each was previously produced during discovery. This inconvenience became obvious during the deposition of Rosalia Gianola, Xerox's corporate designee. *See,* Plaintiff's Exhibit 8: Deposition of Rosalia Gianola at 41-53.

In response to the confusion which surfaced during her deposition, Ms. Gianola created summary spreadsheets so that the documents, already produced, and included within Exhibit 1, could be more conveniently interpreted. *See,* Plaintiff's Exhibit 9: Second Affidavit of Rosalia Gianola. Furthermore, as set forth in Ms. Gianola's Second Affidavit, there can be no question that the documents contained within Exhibit 1 are properly identified, authenticated, and satisfy the requirements for admissibility pursuant to the Federal Rules of Evidence, Rules 901 and 803. The authentication and identification requirements of Rule 901 are satisfied "...by evidence sufficient to support a finding that the matter in question is what its proponent claims." *See,* Federal Rules of Evidence, Rule 901(a). Ms. Gianola's Second

20

Affidavit is sufficient to satisfy this requirement.  *See,* Plaintiff's Exhibit 9: Second Affidavit of Rosalia Gianola.  Additionally, these documents may be fairly categorized as records of regularly conducted business activities as contemplated by Rule 803(6).  Likewise, Ms. Gianola's Second Affidavit is sufficient to satisfy the hearsay exceptions requirement of Rule 803.  *See,* Plaintiff's Exhibit 9: Second Affidavit of Rosalia Gianola.  Given this, it is clear that the documents contained within Exhibit 1, including the spreadsheet summaries of voluminous records, are admissible and are thus properly before this Court.

### C.  Bruce Nussbaum's Affidavit is Valid and Properly Before the Court

In it's Memorandum, Defendant claims that the Affidavit of Bruce Nussbaum, filed in conjunction with Plaintiff's Motion for Partial Summary Judgment, should be stricken for failing to comply with the Federal Rules.  *See,* Defendant's Memorandum at 18, ¶ 4.  In support, Defendant cites federal caselaw, the facts of which are inapposite to the instant case. *Barwick v. Celotex Corp.,* 736 F.2d 946 (4th Cir.1984).  In *Barwick,* in affirming a summary judgment, among other things, the Court disregarded an affidavit that directly contradicted a plaintiff's sworn deposition testimony, finding that this was a "vain effort" at creating an issue of fact to overcome the summary judgment.  *Id.* at 959-60.  The plaintiff in *Barwick* claimed injury from exposure to various products containing asbestos, during the years 1961-1980.  *Id.* at 949.  Extensive discovery was conducted over a 30-month period, and in a very rigid progress schedule particular to asbestos litigation.  *Id.* at 949-54.  The plaintiff was deposed twice, each taking several days, and were quite extensive.  *Id.* at 959.  In an attempt to defeat a

21

motion for summary judgment based upon the statute of limitations, the plaintiff filed a three and a half page affidavit, in which he made bald allegations in "very general language, containing no information as to dates" in an effort to bring his case within the statute. *Id.* at 952.

Mr. Nussbaum's Affidavit is valid and properly before this Court. First, unlike the *Barwick* case, Mr. Nussbaum was not extensively deposed. With absolutely no prior preparation by Plaintiff's attorneys, Mr. Nussbaum sat for one deposition that lasted approximately four hours, and covered numerous documents and topics. *See*, Plaintiff's Exhibit 10: Deposition of Bruce Nussbaum at 1; 213; 75 (3-20). It is also noteworthy that Mr. Nussbaum left Xerox's employ shortly after the contracts that are at issue were executed, and it is not surprising that every minute detail of these transactions were not immediately recalled. *See*, Plaintiff's Exhibit 10: Deposition of Bruce Nussbaum at 6 (2-18). Likewise, since leaving Xerox, Mr. Nussbaum has only recently discussed this litigation with other employees, and then only in passing. *See*, Plaintiff's Exhibit 10: Deposition of Bruce Nussbaum at 70 (1-21); 71 (1-21); 72 (1-8).

Defendant seems to be claiming that in order to create an issue of material fact to overcome a summary judgment, Mr. Nussbaum signed a sworn affidavit in order to purposely contradict his deposition testimony. Defendant specifically calls attention to the question as to whether Mr. Nussbaum engaged in conversations with Technigraphix or Phoenix Color about changing the name of the contracting party. *See,* Defendant's Memorandum at 18, citing, Nussbaum's deposition at 106. To understand the progression during his deposition, however, the record must be read several pages prior to page 106. Beginning at page 95, Mr.

22

Nussbaum was questioned concerning the customer's legal name.  Mr. Nussbaum was not even sure whether the Technigraphix name had continued after it moved from Virginia to Hagerstown.  *See*, Plaintiff's Exhibit 10: Deposition of Bruce Nussbaum at 96.  Mr. Nussbaum does not remember specific discussions with Xerox regarding changing the name from Technigraphix to Phoenix Color.  *Id.* at 97.  The questioning then moves to the December 1999 lease modifications, and finally, the question regarding whether Nussbaum remembered any discussions with Technigraphix or Phoenix Color about changing the name of the contracting party.  *Id.* at 101 (9-14); 106 (1-19).

The fact is, during his deposition, there were a number of times when Mr. Nussbaum could not remember specific facts.  Likewise, Mr. Nussbaum was specifically asked whether he had a conversation regarding 'changing' the customer name.  He answered that he did not. To clarify his testimony, however, Mr. Nussbaum signed a sworn affidavit that is based upon his personal knowledge.  Following his deposition, Mr. Nussbaum specifically recalled informing Mr. Tyler that "...in order to get the leases through the credit approval process he would have to do this as Phoenix Color."  This was meant as a clarification and does not directly contradict his sworn testimony.

Even if, for purposes of argument only, the Court were to disregard Mr. Nussbaum's Affidavit as being contradictory to his sworn deposition, this fact is not sufficient to warrant a summary judgment in Defendant's favor.  As set forth at length above, it is undisputed that Mr. Tyler held himself out as the Vice President of Phoenix Color, undisputed that Mr. Tyler executed the December 1999 lease modifications, and it is undisputed that Mr. Tyler - through his own admissions - failed to read the contracts before signing them.  Defendant cites no

23

caselaw to support the contention that Mr. Nussbaum was obligated to say one word to Mr. Tyler at the time the contracts were executed.  To the contrary, it was Mr. Tyler's duty to read the contracts, which he failed to do.

## III.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court to grant its Motion for Partial Summary Judgment with respect to the December 1999 lease modifications, and to deny Defendant's Motion for Summary Judgment to the extent requested.

## Points and Authorities

1.     Federal Rules of Civil Procedure, Rule 56.

2.     Local Rule 105.

3.     *Celotex Corporation v. Catrett,* 477 U.S. 317 (1986).

4.     *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).

5.     *King v. Bankerd,* 303 Md. 98, 492 A.2d 608 (1985).

6.     *Walker v. D'Alesandro*, 212 Md. 163, 129 A.2d 148 (1957).

7.     *Federal Leasing Inc. v. Amperif Corp.,* 840 F.Supp. 1068 (D.Md.1993).

8.     *Leisner v. Finnerty,* 252 Md. 558, 250 A.2d 641 (1969).

9.     *Holzman v. Fiola Blum, Inc.,* 125 Md.App. 602, 726 A.2d 818 (1999).

10.     *Hart v. Vermont Inv. Ltd. Partnership,* 667 A.2d 578 (D.C.1995).

24

11.    *Arconti & Sons, Inc. v. Ames-Ennis,* 275 Md. 295, 340 A.2d 225 (1975).

12.    *Dixon v. Process Corporation,* 38 Md.App. 644, 382 A.2d 893 (1978).

13.    *Starfish Condominium Assn. v. Yorkridge Service Corp. Inc.,* 295 Md. 693, 458 A.2d 805 (1983).

14.    THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th Ed.2000).

15.    Federal Rules of Evidence, Rule 1006 (2003).

16.    Federal Rules of Evidence, Rule 901 (2003).

17.    Federal Rules of Evidence, Rule 803 (2003).

18.    *Barwick v. Celotex Corp.,* 736 F.2d 946 (4[th]Cir.1984).


Respectfully Submitted,

_____  WEINSTOCK, FRIEDMAN
& FRIEDMAN, P.A.


_____
Sidney S. Friedman


_____
Rosemary E. Allulis

Attorneys for Plaintiff

Executive Centre
4 Reservoir Circle
Baltimore, Maryland 21208-7301
(410) 559-9000


25

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| **XEROX CORPORATION** | * |
| | * |
|     **Plaintiff** | * |
| | * |
| **v.** | * |
| | * |
| **PHOENIX COLOR CORPORATION** | * |
| | * |
|     **Defendant** | * |
| | *     **Civil Action No.:** L 02 CV 1734 |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### ORDER GRANTING PARTIAL SUMMARY JUDGMENT

Upon Motion by Plaintiff herein for an Order entering Partial Summary Judgment and any response thereto, pursuant to Federal Rule of Civil Procedure 56, it is this _____ day of _____, 2003, hereby

**ORDERED:**  That the Plaintiff's Motion for Partial Summary Judgment with respect to the December 1999 lease modifications is hereby **GRANTED**; and it is further

**ORDERED:**  That the Defendant's Motion for Summary Judgment is hereby **DENIED**; and it is further

**ORDERED:**  That Judgment is entered against Defendant, and in favor of Plaintiff, in the amount of $1,966,668.00.

_____           _____

Date                                      Judge,
                                                 United States District Court
                                                 for the District of Maryland

cc:

Sidney S. Friedman
Weinstock, Friedman & Friedman, P.A.
Executive Centre
4 Reservoir Circle
Baltimore, Maryland 21208-7301

Robert A. Gaumont
Piper Rudnick
6225 Smith Avenue
Baltimore, Maryland 21209

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _____ day of _____, 2003, Plaintiff's Response in Opposition to Phoenix Color Corporation's Motion for Summary Judgment and its Reply to Phoenix Color Corporation's Opposition to Xerox's Motion for Partial Summary Judgment, were filed electronically, and a copy of each was mailed postage-prepaid to Robert A. Gaumont, Esquire, Piper Rudnick, 6225 Smith Avenue, Baltimore, Maryland 21209.

WEINSTOCK, FRIEDMAN
& FRIEDMAN, P.A.


_____

Rosemary E. Allulis


Attorneys for Plaintiff


Executive Centre

4 Reservoir Circle

Baltimore, Maryland 21208-7301

(410) 559-9000

1