**EXHIBIT 7**

**ORIGINAL**                                                          1

```
 1            IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MARYLAND
 2

 3   XEROX CORPORATION,              :

 4           Plaintiff                :

 5   Vs.                              :   CASE NUMBER:

 6   PHOENIX COLOR CORPORATION        :   L-02-CV-1734

 7   and                              :

 8   TECHNIGRAPHIX, INC.,             :

 9           Defendants               :

10

11           * * * * * * * * * * * * * *

12       Deposition of EDWARD M. LIEBERMAN, taken on

13   Thursday, March 6, 2003, at 10:11 a.m., at the

14   law offices of Weinstock, Friedman & Friedman,

15   P.A., The Executive Centre, 4 Reservoir Circle,

16   Baltimore, Maryland 21208, before Emily Rose

17   Hoffman, Notary Public.

18           * * * * * * * * * * * * * *

19

20   Reported by:

21   Emily Rose Hoffman, Notary Public
```


EXHIBIT 7)

CRC-SALOMON
Baltimore, Maryland
Phone (410) 821-4888    Fax (410) 821-4889

70

1   A.  I gave them approximate prices we were
2   paying for the equipment on the lease, that we
3   were paying each month. And they were taking
4   that under advisement. And obviously they were
5   also negotiating with Xerox directly, and Xerox
6   came in and gave them prices below our pricing,
7   what we had to pay Xerox, or Technigraphix had to
8   pay Xerox.
9   Q.  Gave them pricing that was below for
10  other used equipment or new equipment, I'm not
11  sure?
12  A.  I have no idea what equipment. I don't
13  know the equipment they were negotiating. I only
14  know what the Technigraphix equipment was that we
15  were prepared to lease to them.
16  Q.  Tell me what equipment that was.
17  A.  6180's and supporting equipment that
18  goes with a 6180.
19  Q.  So you were mainly trying to unload the
20  6180's and supporting equipment?
21          MR. GAUMONT:  Objection to form.

CRC-SALOMON
Baltimore, Maryland
Phone (410) 821-4888    Fax (410) 821-4889

1   A.  Correct.

2   Q.  How many 6180's did Technigraphix have?

3   A.  Six.

4   Q.  The other company that you attempted to
5 negotiate with, you don't remember the name?

6   A.  I don't remember their name.

7   Q.  If I suggested to you that the company
8 may have been called J.J. Bender Company, does
9 that refresh your recollection?

10  A.  We did not negotiate with J.J. Bender to
11 lease equipment to them. To my knowledge, J.J.
12 Bender acquires equipment and then sells or
13 leases it themselves.

14  Q.  Did you ever enter into any
15 conversations or discussions with J.J. Bender
16 along those lines?

17  A.  Of selling them the equipment?

18  Q.  Selling, yeah.

19  A.  I didn't have the legal authority to
20 sell them equipment.

21  Q.  Why?

```
 1         A.   I didn't own it.
 2         Q.   Did you ask Xerox to give you that
 3    authority?
 4         A.   No.
 5         Q.   So let me just be clear about something.
 6    You did have any conversations whatsoever with
 7    J.J. Bender Company about either selling,
 8    assigning, or unloading, to use that word, the
 9    Xerox 6180's?
10              MR. GAUMONT:  Objection, compound, form.
11         A.   They wanted to acquire them.
12         Q.   J.J. Bender?
13         A.   J.J. Bender wanted to acquire them.  And
14    I said, I will have to talk to Xerox.
15         Q.   How did J.J. Bender and you get into
16    conversations?  Did you call them or they call
17    you?
18         A.   They called me.
19         Q.   Do you remember when that was?
20         A.   Shortly after September 30.
21         Q.   But you were unable to reach any sort of
```

73

1  agreement with J.J. Bender; is that correct?
2      MR. GAUMONT:  Objection, form.
3      A.  I told J.J. Bender that I could not sell
4  them the equipment without the consent of Xerox.
5      Q.  Did J.J Bender discuss with you any kind
6  of price regarding the equipment?
7      MR. GAUMONT:  Objection, form.
8      A.  I believe they said they would pay
9  $500,000.
10      Q.  For the entire six machines or per
11  machine?
12      A.  It was my understanding for the entire
13  six machines.
14      Q.  So you had an offer, potential offer
15  from J.J. Bender for $500,000, but never called
16  Xerox to see if they would permit you to sell it;
17  is that correct?
18      MR. GAUMONT:  Objection,
19  mischaracterization, form.
20      A.  I never called Xerox.  I told J.J.
21  Bender to call Xerox.

CRC-SALOMON
Baltimore, Maryland
Phone (410) 821-4888    Fax (410) 821-4889

74

1  Q.  You never heard because back from J.J.
2  Bender regarding that, did you?
3  A.  To my knowledge, J.J Bender never called
4  them.
5  Q.  And you never called them even though
6  you never heard back from J.J Bender, correct?
7  A.  Correct.
8  Q.  Weren't you at least interested in
9  trying to unload the equipment to reduce the
10 liability of Technigraphix?
11 MR. GAUMONT:  Objection, form.
12 A.  I was more interested in subleasing the
13 equipment at a price that was reasonably close to
14 the price that Technigraphix was required to pay.
15 Q.  Because that would have reduced the
16 ultimate liability under the leases, correct?
17 MR. GAUMONT:  Objection, form.
18 A.  Yes.
19 Q.  But you were unable to find any third
20 party to sublease the equipment to?
21 A.  Any third party that -- let me put it

CRC-SALOMON
Baltimore, Maryland
Phone (410) 821-4888    Fax (410) 821-4889

1  publications that specialize in used printing
2  equipment, indicating it had this equipment for,
3  which it would like to lease or sell?
4      A.  No.
5      Q.  What other efforts did Technigraphix or
6  Phoenix Color make to lease, sublease, or sell
7  the Xerox equipment?
8      MR. GAUMONT:  Objection, form, compound.
9      A.  We made no other efforts.
10     Q.  No, okay.
11     Were you involved in discussions with
12 Xerox about the equipment and remainder of the
13 obligation under the lease terms?
14     MR. GAUMONT:  Objection, form.
15     A.  Yes.
16     Q.  Could you relate to me what those
17 discussions were and when?
18     MR. GAUMONT:  Objection, form.
19     A.  The exact timing, I don't remember.  But
20 basically --
21     Q.  Would it have been before or after

1  State of Maryland,

2  County of Baltimore, to wit:

3      I, Emily Rose Hoffman, a Notary Public of

4  the State of Maryland, County of Baltimore, do

5  hereby certify that the within-named witness

6  personally appeared before me at the time and

7  place herein set out, and after having been duly

8  sworn by me, according to law, was examined by

9  Counsel.

10      I further certify that the examination was

11  recorded stenographically by me and this

12  transcript is a true record of the proceedings.

13      I further certify that I am not of Counsel

14  to any of the parties, nor an employee of

15  Counsel, nor related to any of the parties, nor

16  in any way interested in the outcome of this

17  action.

18      As witness my hand and Notarial Seal this

19  26th day of March, 2003.

20  *Emily Rose Hoffman*
    ——————————————————
    Emily Rose Hoffman
    Notary Public

21  My commission expires:  August 1, 2003

CRC-SALOMON
Baltimore, Maryland
Phone (410) 821-4888    Fax (410) 821-4889

    A.   Because it was always operated by Technigraphix employees.

    Q.   After Technigraphix ceased active operations, did Phoenix Color ever utilize that equipment?

    MR. GAUMONT:  Objection to form.

    A.   Xerox equipment?

    Q.   Yes.

    A.   No.

    Q.   As corporate designee, is there any contention by either defendant that the equipment which was -- the Xerox equipment which was subject matter of the lease agreements was not delivered to the defendant?

    MR. GAUMONT:  Objection, form.

    Q.   Is there any contention that you didn't receive the equipment, I will put it in easier terminology, that was leased from Xerox?

    A.   No.

    Q.   Do you have records of payments made to Xerox by both defendants for Xerox equipment

```
 1         Q.   Is there any claim by Technigraphix or
 2   Phoenix Color that the Xerox equipment did not
 3   function or work properly?
 4         MR. GAUMONT:  Objection, form.
 5         A.   There is no claim.
 6         MR. FRIEDMAN:  I think we are getting to
 7   the end, believe it or not.  I need to review
 8   some documents and go over my notes.  If you want
 9   to give me a couple of minutes, I will go through
10   and see -- he has answered some of the questions
11   from the pleadings that I had.  I think he has.
12         MR. GAUMONT:  I would be happy to take a
13   five-minute break.  The only request I would have
14   is that anything that he reviews with you be done
15   on the record.
16         MR. FRIEDMAN:  Oh, sure.  No, I didn't
17   mean with him.  I meant I'm going to review it to
18   make sure that I haven't just covered it.
19         MR. GAUMONT:  Five-minute break sounds
20   great.
21              (Recess --   12:29 p.m.)
```

Baltimore, Maryland
Phone (410) 821-4888    Fax (410) 821-4889