**EXHIBIT 8**





IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

XEROX CORPORATION :
Plaintiff :
Vs. : CIVIL ACTION NO.
PHOENIX COLOR CORPORATION : L 02CV 1734
and :
TECHNIGRAPHIX, INCORPORATED :
Defendants :

Deposition of **ROSALIA T. GIANOLA**, taken on Tuesday, March 4, 2003, at 12:40 p.m., at the law offices of Piper Rudnick, LLP, 6225 Smith Avenue, Baltimore, Maryland, before Bonnie L. Russo, Notary Public.

-------------------------

Reported by:
Bonnie L. Russo

EXHIBIT
ALL-STATE LEGAL®
81

STATE OF MARYLAND

SS:

I, BONNIE RUSSO, a Notary Public of the State of Maryland, do hereby certify that the within named, ROSALIA GIANOLA, personally appeared before me at the time and place herein set out, and after having been duly sworn by me, was interrogated by counsel. I further certify that the examination was recorded stenographically by me and this transcript is a true record of the proceedings.

I further certify that I am not of counsel to any of the parties, nor an employee or counsel, nor related to any of the parties, nor in any way interested in the outcome of this action.

As witness my hand and notarial seal this 17th day of March, 2003.

My commission expires:________________________

August 25, 2004 Notary Public

Q. But why are you suing Phoenix Color for this agreement when Technigraphix is clearly identified as the contracting party?

A. They bought the assets of Technigraphix.

Q. What makes you think they bought the assets of Technigraphix?

A. There is a stock purchase.

Q. Is that your sole basis for why you are suing Phoenix Color based upon this 1997 agreement with Technigraphix?

MR. FRIEDMAN: Objection. Sole basis will be made known once we have had a chance to review the documents which you turned over today which we asked for a month ago.

MR. GAUMONT: Fair enough. She can testify as far as she knows in terms of factual basis. I am not asking for legal conclusions. If her basis is based upon what she thinks may be in the documents that we produced I would like her to say so.

THE WITNESS: Repeat your question

Q. Looking at this folder as well as your response to 666027669 can you tell me what equipment is being pooled?

A. Eight pieces of equipment.

Q. Do you know what type of equipment it is?

A. Looks like two 6180s, some controller 2Cs.

Q. What are you looking at to get that? I want to make sure that is down.

A. On the answers to number 6 I had outlined when I mentioned a serial number what type of equipment it was further on into the answer.

Q. So sometimes when there is nothing but a product serial number the explanation of what that serial number comes later?

A. Yes.

Q. That is helpful. So then looking at the next interrogatory responses can you tell me what equipment is covered by the customer number

666027669?

A. Yes. Do you want me to go per serial number and what it is?

Q. Yes.

A. K8V100225. I don't know what a K8V is offhand. I have to look it up.

Q. When you say look it up what do you mean?

A. Look up a K8V. All serial numbers start with a product code. I have to look up what a K8V stands for. The next code is R9H and an R9H is a controller 2C. A V6T is a Digipath. An OGV is Digipath PC. And an 8VE is a product code for a 6180 PMF.

Q. So the 8VE is the product code for 6180 machines?

A. Yes.

Q. Do you have any breakdown anywhere in your discovery responses as to how much Xerox is seeking to recover based upon each product?

A. Based upon each product? No. I did the

itemization per customer number and per contract, not per product. You may have one product billing under several account numbers. The end result would be the same. The total amount outstanding.

Q. You may have one contract covering a number of different products, too?

A. Yes.

Q. I would like you to identify the contracts at issue with respect to 666027669. Could you tell me what the contracts are at issue?

A. Looks like eight term lease agreements.

Q. And what I am asking you is whether looking through the package of documents that you produced in response to these discovery requests can you pull for me where those actual agreements are?

MR. FRIEDMAN: He means physically go in the folder and show him.

THE WITNESS: It is probably in a

different folder. I have to figure out which folder it is in.

BY MR. GAUMONT:

Q. In order to find the contracts in response to customer number 666027669 one would have to actually look through a different folder?

A. That's for the pooling agreement which I state I couldn't find a pooling agreement. The underlying agreements are, for example -- first, for example, 950697 -- that's the wrong number. Scratch that.

For example, 955946066 is in folder 098663859.

Q. Well, then explain that to me. Could you repeat that contract number again.

A. 955946066 is in folder 098663859. Once the pooling agreement is cancelled the underlying term lease agreements, they bill under their separate lease agreements.

Q. Explain to me because as I understand it 955946066, right?

A. Yes.

Q. Is under customer number 666027669?

A. The pooling agreement.

Q. It's under that number but also another customer --

A. 098663859.

Q. Okay. Now, it's listed as part of 666027669 where you are seeking to cover from Phoenix Color $223,390.41?

A. Yes.

Q. And the same lease agreement is listed under customer number 098663859 where you are seeking to recover from Phoenix Color $606,383.30. Why is that?

A. Well, actually for that particular contract it's $34,674.17. It's itemized per contract.

Q. Why does that lease agreement support both customer numbers?

A. There are different time frames. The first customer number is for when it was under

the pooling agreement. When it was cancelled the invoices -- different invoices force different time periods and started generating under that contract which was configured to this customer number 098663859.

If you look at the invoice it's for different time frames.

Q. Why is there an X next to the customer number 098663859 as opposed to a response like pooling agreement or term lease which you put to the other?

A. The X signifies that it is a financed agreement. These are all financed agreements.

Q. Have you produced those financed agreements?

A. I believe so. If I didn't indicate that I found it it's in the documents produced.

Q. But you haven't been able to find the pooling agreement for customer number 666027669?

A. No, I have not.

Q. And you can't tell me who executed it or

whether it's in the name of Technigraphix or Phoenix Color?

A. The pooling agreement, no.

Q. Can you even tell me whether the pooling agreement is in some other corporate entity's name other than Technigraphix or Phoenix Color? Do you have any idea?

A. The pooling agreement?

Q. The pooling agreement?

A. It should match the underlying agreements. If the underlying agreements are for Phoenix Color the pooling agreement should be for Phoenix Color.

Q. So then in the response to the request for contracts covered by customer number 666027669 you have to refer to other customer numbers to obtain the underlying lease agreements; is that accurate?

A. For the contract copy?

Q. Yes.

A. Yes. I have signified what the lease

agreement is. For example, here is another one right here, 950698639. The underlying lease agreement would be in 941137127.

Q. And my question is based upon that and this is a good example because 94 -- customer 941137127 contains the identification of one lease agreement and that's 950869639 for 6180. It appears you are attempting to recover $249,310.33, right?

A. Yes.

Q. But it also is part of the basis of the pooling agreement that you are attempting to recover $223,390.41 under customer number 666027669?

A. Yes.

Q. Does that mean for a particular point these charges in that lease agreement were pooled or does that mean that they were charged individually at one point?

A. The pooling agreement would have the underlying term lease agreements, their monthly

base charge. Their term lease payment would be on one invoice and then the meters would be pooled. So this -- the pooling agreement might have six months worth of term lease invoices for that 6180.

The pool is dissolved or we stop billing on the pool. The underlying agreement still goes on. The pooling agreement is for billing purposes for the customer to work to the customers's benefit in regard to excess meters. The underlying agreement is always the term lease agreement. It happens to be billed on two separate account numbers. There is only one lease agreement for the 6180.

Q. There is only one lease agreement for the 6180?

A. Yes.

Q. I am asking you why you are claiming that it can be billed $249,310 as well as part of your demand for $223,390?

MR. FRIEDMAN: She just answered that

for you.

BY MR. GAUMONT:

Q. Explain it one more time because I am not getting it.

A. For that serial number under pooling agreement there are specific invoices. The pooling agreement ended and this 249,000 is probably -- it can be subsequent invoices after the pooling agreement had ended. It could be -- most likely it's the principal balance remaining under the lease agreement.

Q. Okay. Okay. So the pooling agreement covered a particular time period. The lease agreement that is not part of the pooling agreement covered a time period not -- or it covered the principal balance which is not covered?

A. Right. There is no overlap in time. It is one lease. Different time period.

Q. That's what I was looking for is whether there was an overlap in time?

A. No.

Q. Can you tell me when each of these were covered by?

A. On the pooling agreement, you can look at the pooling invoices that were provided. It would outline the time period. For one you pull out the 941137127. I can show you from the statement what time period it covers.

Q. Why don't we do that then.

Let me show you the documents which we received in folder -- this is the same as customer number 941137127.

I would like for you to identify the contracts that are involved with that.

A. 950869639.

Q. Right. I would like you to look through the documents.

A. It's a term lease contract. Term lease contract between Phoenix Color Corporation and Xerox signed by Donald Tyler on December 10, '99.

Q. Now, you just said that the lease term

of this is different than the term that was covered by the pooling agreement, right? When I was asking you why you were able to recover for the same XEEP number under two different customer numbers --

A. It would still be a 59 month agreement. Just the time period would be different. Different months would be involved. It's still -- the underlying term lease agreement is still the contract.

Q. This contract was entered into on December 10, 1999. At least that is what it says in the lower right-hand corner?

A. Yes.

Q. And the XEEP number for this contract is 950869639.

A. It's a type 950698639.

MR. FRIEDMAN: Read it again.

THE WITNESS: 950698639.

BY MR. GAUMONT:

Q. Now, under this lease agreement does

this lease agreement support Xerox's claim for $249,310.33 under customer number 941137127 or does it support Xerox's claim of the $223,390.41 under customer number 666027669?

MR. FRIEDMAN: Objection.

THE WITNESS: This contract supports in its entirety 249,310.33 under 941137127 and in part some of the charges under account number 666027669. For $223,390.41. There are other leases that total up to this. It is not just for one machine. There are eight leases.

BY MR. GAUMONT:

Q. And for what time period does it support the customer number 941137127 versus the time period when it covers 666027669?

A. For 941137127 looking at the statement of account, which was provided, the term lease charges are from looks to be December 27, 2000. That's the principal balance remaining. And the option to purchase December 27, 2000. And the invoices were provided.