```
          IN THE UNITED STATES DISTRICT COURT FOR
          THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                                  *
XEROX CORPORATION,                *

     Plaintiff,                   *

v.                                *    CIVIL ACTION NO: WDQ-02-1734

PHOENIX COLOR CORPORATION,        *

and                               *

TECHNIGRAPHIX, INCORPORATED       *

     Defendants.                  *

*    *    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

Pending are cross motions for summary judgment. Plaintiff Xerox Corporation ("Xerox") seeks partial summary judgment against Phoenix Color Corporation ("Phoenix") on contracts it allegedly entered into in December 1999. Phoenix seeks summary judgment on all claims. Also pending are Phoenix's motions to file a counterclaim alleging fraud, appoint a handwriting expert, and reopen discovery.

Background

Xerox leased business equipment to Technigraphix, a now inactive entity with a poor payment history. In February 1999, Phoenix bought Technigraphix and placed one of its vice presidents, Donald Tyler, in charge of its operations.[1] Bruce Nussbaum, the

---

[1] Phoenix contends that its employment of Tyler ended when he joined Technigraphix. Phoenix Color Corporation's Memorandum in Support of Motion for Summary Judgment and in Opposition to

Xerox representative who dealt with Technigraphix, understood that Tyler was in charge of Technigraphix.

In October 1999, Xerox's credit department determined that Technigraphix was not credit worthy and wanted all contracts with Technigraphix to be re-written in Phoenix's name or with Phoenix's corporate guarantee. In December 1999, Nussbaum and Tyler signed several contract modifications designed to decrease payments on existing equipment while adding new equipment ("the modifications"). The modifications were signed in Phoenix's name and identified Tyler as a Phoenix vice president.

Xerox asserts that Tyler had actual and apparent authority to bind Phoenix to the modifications; Phoenix disagrees. Phoenix also argues that Nussbaum tricked Tyler into signing the documents and possibly forged Tyler's initials on one of the documents. Therefore, Phoenix seeks leave to (1) file a counterclaim to allege fraud and, (2) modify the scheduling order to appoint a handwriting expert, allow for two additional months of discovery, and allow an additional 15 hours for deposing fact witnesses.

### Summary Judgment Standard

Summary judgment may be granted when the moving party shows that there is no genuine issue of material fact, and that it is legally entitled to judgment. *See Kitchen v. Upshaw,* 286 F.3d 179,

---

Xerox's Motion for Partial Summary Judgment ("Phx. S.J. Memo"), Ex. A, ¶ 18.

182 (4th Cir. 2002), *citing* Fed.R.Civ.P. 56(c). The moving party's initial burden depends on whether it would bear the burden of proof at trial. If it would not, its initial burden is met by "pointing out" that the non-moving party has not made a sufficient showing on an essential element of its case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). If the moving party would bear the burden of proof at trial, it satisfies its initial burden by producing evidence upon which a reasonable jury could return a favorable verdict. *Brinkley v. Harbour Recreation Club,* 180 F.3d 598, 614 n. 10 (4th Cir. 1999).

After the initial showing, summary judgment will be granted unless the opponent produces evidence upon which a reasonable jury could return a verdict in its favor. *Celotex,* 477 U.S. at 323-25, *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Thompson v. Potomac Elec. Power Co.,* 312 F.3d 645, 649 (4th Cir. 2002), *citing Anderson,* 477 U.S. at 255.[2]

Discussion

I. Contracts in Technigraphix's Name

With respect to the contracts preceding December 1999, Xerox

---

[2] The opponent's burden cannot be met with conclusory or speculative allegations, or a "mere scintilla" of evidence. *See Thompson,* 312 F.3d at 649, *citing Phillips v. CSX Transp., Inc.,* 190 F.3d 285, 287 (4th Cir. 1999). However, all justifiable inferences will be drawn in favor of the non-moving party. *Phillips,* 190 F.3d at 287-88, *citing Anderson,* 477 U.S. at 255.

has stated: "As evidenced by its Motion for Partial Summary Judgment, Xerox has abandoned its claims for any contract it is unable to produce." Xerox Corporation's Memorandum of Points and Authorities in Support of its Response in Opposition to Phoenix Color Corporation's Motion for Summary Judgment and Reply to Opposition to Motion for Partial Summary Judgment("Xerox's Resp./Reply") at 15. Xerox is apparently referring to those claims based on contracts in Technigraphix's name. Those claims may only be dismissed without prejudice pursuant to Fed.R.Civ.P. 15. *Id.*; *Ethridge v. Harbor House Restaurant,* 861 F.2d 1389, 1392 (9th Cir. 1988)(Fed.R.Civ.P. 15 (a) is appropriate mechanism when plaintiff desires to eliminate an issue without dismissing entire claim). Absent a Rule 15 motion, to which Phoenix could have responded, and a basis for holding Phoenix liable on Xerox's contracts with Technigraphix's name, summary judgment will be granted to Phoenix on the pre-December 1999 contract claims. Xerox's Resp./Reply at 16; *Sterback v. Robinson, et al.,* 148 Md. 24, 32 (1925)("The agreement between two parties resulting in a contract creates a personal relation between them, and that agreement cannot impose any liability upon a third person.").

    II. The December 1999 Contracts

      A.  Evidentiary Issues

Phoenix asserts that this Court cannot consider the photocopied contracts and other document's Xerox has submitted

because the copies are unauthenticated hearsay. Phx. S.J. Memo at 20-21. Federal Rule of Evidence 1002 controls this matter. *Vigano v. Wylain, Inc.,* 633 F.2d 522, 527 (8th Cir. 1980)(Secondary proof of a written agreement is governed by Rule 1002 et seq. of the Federal Rules of Evidence, not the Statute of Frauds).

Under Fed.R.Evid. 1003, a duplicate is as admissible as an original, unless the opponent raises issues regarding the original's authenticity, the copy's accuracy, or the fairness of the copy's use. *United States v. Carroll,* 860 F.2d 500, 506-07 (1st Cir. 1988)(Fed.R.Evid. 1002 and 1003, when read together, permit photocopied reproductions of original documents absent a genuine question of authenticity or unfairness under the circumstances); *United States v. Georgalis,* 631 F.2d 1199, 1205 (5th Cir. 1980)(party opposing admission of duplicate has burden of demonstrating issue as to accuracy, authenticity, or unfairness of using duplicate). Although Phoenix argues that the December 1999 contracts should not bear its name, it does not assert that the photocopies are inauthentic. *See e.g.* Phx. S.J. Memo, Ex. I. Furthermore, Phoenix does not argue that it would be prejudiced by the use of the copy.

Phoenix argues, however, that the copies have not been properly authenticated and therefore may not be relied upon. Phx. S.J. Memo at 12. Assuming this to be true, technical non-compliance with the rules of evidence and Fed.R.Civ.P. 56(e) does

not prevent the Court from considering - - on summary judgment - - evidence which is likely to be in admissible form at trial. *McMillian v. Johnson,* 88 F.3d 1573, 1584 (11th Cir. 1996), *aff'd* 510 U.S. 781 (1997)(otherwise admissible evidence may be submitted in inadmissible form in summary judgment phase).

Phoenix also argues that the Court cannot consider certain statements in the affidavit of Xerox's representative, Bruce Nussbaum, that he told Tyler the modifications were in Phoenix's name. *Compare* Xerox's Response to Counterclaim, Ex. 7, at 106 (Nussbaum's testimony that he did not tell anyone at Phoenix about changing the name on contracts from Technigraphix to Phoenix) *with* Xerox's Response/Reply, Ex. 2, ¶ 15 (Nussbaum's affidavit stating he told Tyler the contracts needed to be written in Phoenix Color's name). Because Nussbaum's affidavit contradicts his deposition testimony with respect to this matter, his deposition will control on this specific point. *Miller v. A.H. Robins Co.,* 766 F.2d 1102, 1104 (7th Cir. 1985); *see also Barwick v. Celotex Corp.,* 736 F.2d 946 (4th Cir. 1984).

B. Breach of Contract Claim

    1. Actual Authority

Xerox argues that Phoenix is liable for the modifications because Donald Tyler held himself out as Vice President of Phoenix. *See e.g.* Xerox's Resp./Reply at 5. There is undisputed direct evidence that Tyler did not have actual authority to bind Phoenix

to this contract.  Phx. S.J. Memo, Ex. A, ¶¶ 3,13 (Affidavit of CFO, Phoenix Color, indicating Xerox would have had to negotiate with him to have contract re-written in Phoenix's name).

    2.  Apparent Authority

Tyler's actions may nevertheless bind Phoenix if Xerox proves it relied upon Phoenix's manifestations that Tyler had authority to bind it.  *Parker v. Junior Press Printing Service, Inc.,* 266 Md. 721, 728-29 (1972)("apparent authority to do an act is created . . . by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him"); *see also Chevron, U.S.A., Inc. et al. v. Lesch, et al.,* 319 Md. 25, 35 (1990).  The record contains adequate indicia of apparent authority to create a genuine issue of material fact.

Phoenix bought Technigraphix and appointed Tyler, a former Phoenix vice president, to operate the subsidiary.  Tyler maintained Phoenix business cards and used Phoenix facilities to negotiate contracts on behalf of Technigraphix.  Phoenix's failure to retrieve Tyler's business cards, its knowledge that Tyler's negotiations would produce benefits for a company it owned, its provision of Phoenix facilities for negotiations with Xerox, and provision of Phoenix facilities for the receipt of Xerox equipment

for Technigraphix all raise a genuine issue of material fact whether Xerox reasonably relied on Tyler's apparent authority. *Smith v. New Castle County Vocational-Technical School,* 574 F.Supp. 813, 825 (D. Del. 1983); *see Johnson v. Nationwide Gen. Ins. Co.,* 937 F.Supp. 186, 191 (N.D.N.Y. 1996)(principal must notify individuals when agent's authority to contract on its behalf is terminated); *c.f.* Restatement, Second, Agency § 8 B (estoppel by silence based on principal's failure to speak when it knows another is purporting to operate as its agent).

A fact finder may find that there is sufficient evidence of apparent authority to hold Phoenix liable for Tyler's conduct. Therefore, summary judgment is inappropriate.

### 3. Xerox's Exercise of Diligence

Phoenix argues that Xerox cannot prevail on an apparent authority theory without proof that it exercised reasonable diligence in ascertaining the extent of Tyler's authority. Phx. Reply, at 8; *National Mortgage Warehouse, LLC v. Bankers First Mortgage Co., Inc.,* 190 F.Supp.2d 774, 781 (D. Md. 2002); *Integrated Consulting Services, Inc. v. LDDS Communications, Inc.,* 996 F.Supp. 470, 477 (D. Md. 1998); *The Johns Hopkins University v. Ritter, et al.,* 114 Md.App. 77, 96-97 (1996), *cert. denied* 346 Md. 28 (1997); *Hill v. State,* 86 Md.App. 30, 36 (1991).

Although the fact finder may ultimately conclude that Xerox should have conducted further investigation, the conclusion is not

required as a matter of law.

### 4. Novation and Modification

Both parties argue the law of novation. Phx. S.J. Memo at 17; Xerox Resp./Reply at 11; *see Dahl, et al. v. Brunswick Corp.,* 277 Md. 471, 481 (1976)(listing elements of novation). Novation may permit the substitution of one party for another without additional consideration. Restatement, Second, Contracts § 115, comment a (no difference whether new promisor promises the same performance as that formerly due from the first obligor or a different performance).

Phoenix argues that it did not agree to any novation. Phx. S.J. Memo at 17; *Dahl,* 277 Md. at 481 (valid novation requires consent of all parties). Xerox argues that Phoenix did - - through Tyler. Xerox Resp./Reply At 11-13.

Xerox argues that the modifications may be valid because they are, in effect, new contracts which replaced existing ones. *Id.* at 11-12. There is evidence that a new piece of equipment was delivered in exchange for a restructuring of payments under the contract. Phx. S.J. Memo ex A, ¶ 17; Xerox's Resp./Reply, Ex. 2, ¶ 14. Under such circumstances, the modification may have been valid. *See Allstate Ins. Co. v. Stinebaugh,* 2003 Md. LEXIS 254 (Md. May 12, 2003), *citing Linz v. Schuck,* 106 Md. 220, 232 (1907)(contract may be modified with valuable consideration); *see also Born v. Stancills, Inc.,* 214 Md. 443, 453 (1957); *People's*

*Banking Co. v. Fidelity & Deposit Co.,* 165 Md. 657, 676 (1934) (promise to do what one is not obliged by law or contract may be valuable consideration); *Swift v. Allen,* 211 Md. 588, 594 (1957)(under some circumstances difference between substituted contract and novation unimportant). Because there are disputed facts, summary judgment is inappropriate.

   III.   Mitigation

   Both parties argue Xerox's duty to mitigate damages under the Maryland doctrine of avoidable consequences. Phx. S.J. Memo at 22; Xerox's Resp./Reply at 8. However, the doctrine of avoidable consequences is triggered by a fact finder's determination that a breach occurred. *The Sergeant Company, et al. v. Ronald W. Pickett,* 285 Md. 186, 203 (1979)("[I]f the jury found that [defendant] had breached a contract with [plaintiff] . . . [defendant] would have the burden of proving, if it questioned the losses claimed, that [plaintiff] had not complied with the 'avoidable consequences' rule of damages."). Absent that finding, consideration of mitigation is premature.

   IV.   Phoenix's Motion for Leave to File Counterclaim

   Phoenix seeks to counterclaim against Xerox for fraud. Phoenix Color Corp.'s Memorandum in Support of its Motions for: (i) Leave to Designate Handwriting Expert and Extend Discovery Deadline, and (ii) Leave to File Counterclaim ("Phx. Motions") at 3.

In Maryland, one proves fraud by demonstrating that: (1) the defendant made a false statement to the plaintiff; (2) the defendant knew the statement was false or was recklessly indifferent to its truth; (3) the misrepresentation was made for purposes of defrauding the plaintiff; (4) the plaintiff was entitled to rely on the misrepresentation and did so; and (5) the reliance resulted in compensable injury. *Alleco Inc. et al. v. The Harry & Jeanette Weinberg Foundation, Inc. et al.,* 340 Md. 176, 195-96 (1995), *and cases therein*. Phoenix has asserted two factual bases for a fraud claim: 1) Nussbaum's alleged forgery of Tyler's initials; and 2) Xerox's writing the modifications in Phoenix's name instead of Technigraphix's. Phx. Motions at 6. Neither conforms to the requirements for pleading or proving fraud under Maryland law. Accordingly leave to file a counterclaim for fraud is denied.

V. Leave to Designate Handwriting Expert

The denial of leave to file a counterclaim does not bar Phoenix from asserting its ninth affirmative defense of fraud in this action: i.e., Phoenix's assertion that Nussbaum forged Tyler's initials on the modifications. *See* Phoenix Color's Answer to Amended Complaint at pg. 6; Phx. Motions at 2. Phoenix, which claims it was unaware of the possibility of forgery until March 5, 2003, seeks to designate a handwriting expert after the scheduling order's January 23, 2003 deadline. Phx. Motions at 3. Scheduling

orders are modified for good cause, which exists when a deadline was not met despite the moving party's diligence. *Dilmar Oil Company, Inc. v. Federated Mutual Insurance Company,* 986 F.Supp. 959, 980 (D.S.C. 1997), *aff'd,* 129 F.3d 116 (4th Cir. 1997), *citing Jordan E.I. Du Pont De Nemours,* 867 F.Supp. 1238, 1250 (D.S.C. 1994), *and case cited therein*.

Phoenix argues it is entitled to the extension because it learned of the contracts in Phoenix's name and of possible forgery late in the discovery period. Phx. Motions at 1, 7. Phoenix has not demonstrated that it could not have interviewed Tyler before January 23, 2003 or obtained the contracts from Technigraphix records. Phx. Motions. Accordingly, leave to amend the scheduling order to allow Phoenix to designate a handwriting expert will not be granted because it has not demonstrated diligence.

   VI.   Leave for Two Month Extension of Discovery Deadline

The October 31, 2002 scheduling order set the discovery deadline as March 10, 2003. On November 8, 2002, both parties submitted a status report to the Court indicating they had agreed to limit the deposition time for expert witnesses to 15 hours per side. Phoenix now seeks an additional two months of discovery and 15 more deposition hours.

Phoenix argues that despite the "efficient" deposition of witnesses, it was unable to complete the depositions before the close of discovery. Phx. Motions at 5, 7.

Every deposition in this case was taken between February 25, 2003 and March 6, 2003 - - mere days before the March 10, 2003 discovery deadline.  This does not indicate Phoenix's diligence.

A motion for additional deposition hours could have been made earlier in the process, vitiating the need to extend the discovery deadline.  Accordingly, good cause for granting Phoenix an additional two months of discovery has not been shown.  Because discovery will remain closed, there is no need to address whether good cause existed for granting an additional 15 deposition hours.

<u>Conclusion</u>

Xerox's motion for partial summary judgment is denied. Phoenix's motion for summary judgment is granted with respect to those contracts, predating December 1999, which were not in Phoenix's name.  Phoenix's motion for leave to file a counterclaim, designate a handwriting expert, extend discovery, and secure 15 additional deposition hours is denied.


<u>July 14, 2003</u>                              <u>      /s/            </u>
Date                                       William D. Quarles, Jr.
                                           United States District Judge