IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| XEROX CORPORATION,<br><br>  Plaintiff,<br><br>v.<br><br>PHOENIX COLOR CORPORATION<br><br>And<br><br>TECHNIGRAPHIX, INC.,<br><br>  Defendants. | CIVIL ACTION NO. WDQ 02 CV 1734 |

**PHOENIX'S MOTION FOR RECONSIDERATION OF THE SEGMENT
OF THIS COURT'S JULY 14, 2003 ORDER DENYING
SUMMARY JUDGMENT IN PART**

Pursuant to Federal Rule 54(b) and Local Rule 105.10, Phoenix Color Corporation ("Phoenix") moves for reconsideration of the segment of this Court's Order, dated July 14, 2003, denying it complete summary judgment.

## INTRODUCTION

This Court has allowed Xerox Corporation ("Xerox") to maintain an equitable action against Phoenix solely on the December 1999 contract modifications that were signed by Donald Tyler and that purport to be in Phoenix's name. In its Memorandum Opinion, this Court reasoned that it could not grant Phoenix complete summary judgment because there are genuine issues of material facts concerning an equitable claim by Xerox based on apparent authority. Memorandum Opinion at 7-8.

Phoenix moves for reconsideration of that segment of this Court's Order. Apparent authority requires, as a matter of law, proof of both (i) manifestations by the principal *and* (ii) reasonable diligence by the third party in ascertaining the scope of the agent's authority. (*See Standard Accounting Ins. Co., National Mortgage Warehouse* and *Integrated Consulting Servs.* cases discussed *infra*). This Court analyzed the first element; it did not, however, consider Xerox's actions before concluding that material facts precluded summary judgment.

Nor can Xerox survive such analysis. At least three undisputed facts make it impossible for Xerox to satisfy its burden of making a reasonable inquiry.

- Xerox had actual knowledge that Phoenix and Technigraphix operated as separate and distinct corporations. *See* Phoenix's Summary Judgment Motion at 4-7 and attached Exhibits F & G.

- Xerox failed to inform Phoenix or Technigraphix that, in October 1999, it had decided to no longer contract with Technigraphix. *See* Phoenix's Summary Judgment Motion at 7-8 and attached Exhibits A (Lieberman Affidavit ¶ 12) and H (Tyler Affidavit ¶ 8).

- Xerox never disclosed or engaged in discussions or negotiations with anyone at Technigraphix or Phoenix about changing the customer legal name from Technigraphix to Phoenix. *See* Deposition testimony of Bruce Nussbaum at 106 (cited in Memorandum Opinion at 6).

The law imposes a burden on Xerox of showing reasonableness of conduct before it can maintain this equitable action against Phoenix. Xerox will never be able to satisfy this burden and, for this reason, this Court should reconsider its ruling and grant Phoenix complete summary judgment.

## STANDARD OF REVIEW

Interlocutory Orders, which include Orders denying summary judgment, are "subject to revision any time before the entry of judgment adjudicating all the claims and rights and liabilities of all the parties." Fed. R. Civ. Pro. 54(b). A court may reconsider any interlocutory Order in its discretion. *See High Country Arts & Crafts Guild v. Hartford Fire Ins. Co.*, 126 F.3d 629, 635 (4th Cir. 1997). Motions to reconsider must be filed within 10 days after entry of the Order. Local Rule 105.10.

## ARGUMENT

A.  *A Third Party Has The Burden of Producing Evidence of Reasonable Diligence and Prudence To Hold A Principal Liable In Equity.*

In *Standard Accounting Insurance Co. v. Simpson*, 64 F.2d 583 (4th Cir. 1933), the Fourth Circuit, applying Maryland law, summarized the two inquiries that a court should make in determining whether a third party may maintain an equitable action against the principal on a contract entered into by an agent who lacked actual authority. The court first examines the principal's conduct and "the appearance of authority with which the principal has clothed the agent." *Id.* at 588. The court next reviews the third party's conduct and the type of care that it has exercised in ascertaining the scope of an agent's authority. *Id.* at 588-89. Using language frequently repeated by this Court, the Fourth Circuit held that a third party has "the duty to 'stop, look and listen'" and to use reasonable diligence to determine "the nature and extent" of any agent's authority. *Id.* at 589. The Fourth Circuit also held the third party has the burden of proving reasonable care to maintain this equitable action. *Id.*

In *National Mortgage Warehouse, LLC v. Bankers First Mortgage Co.*, 190 F. Supp. 2d 774 (D. Md. 2002) this Court applied *Standard Accounting* and granted summary judgment to a principal, in part, because the third party had "failed to use the reasonable diligence and prudence that the law

requires in ascertaining the extent of [the] apparent agent's authority." *Id.* at 781. *National Mortgage* involved a claim by a national mortgage lender against a title insurance underwriter based on actions by the underwriter's issuing agent. *Id.* at 777. The lender sought to base an equitable claim of apparent agency on a closing protection letter. *Id.* at 780-81. Judge Blake dismissed this claim on summary judgment, noting that the lender was "a sophisticated mortgage lender" and that it had a duty to "stop, look and listen," and make further inquiries as to the meaning and importance of the protection letter. *Id.* at 781.

Likewise, in *Integrated Consulting Services, Inc. v. LDDS Communications, Inc.*, 996 F. Supp. 470 (D. Md. 1998), Judge Williams dismissed on summary judgment a claim by a third party against a long distance telephone service provider based on a contract that the third party entered into with another company. *Id.* at 472. The contract between the third party and the other company affirmatively stated that the other company was the long distance provider's agent. *Id.* at 473. Notwithstanding this contractual representation, Judge Williams found that the third party had the duty and "an opportunity to 'stop, look and listen'" and, had it exercised some diligence, it could have determined that the other company was not actually an agent of the long distance provider. *Id.* at 477.

B.   *There Is No Evidence That Xerox "Stopped, Looked or Listened" In Procuring Tyler's Signature On Contracts That Purport to Be In Phoenix's Name*

The following three facts show that Xerox will never be able to persuade any reasonable finder of fact that it acted with any diligence or prudence when it procured Phoenix's name on these modifications. First, Xerox has admitted that it had actual knowledge, as early as October 1999, that Phoenix and Technigraphix were two separate and distinct corporations. Second, Xerox also failed to inform either Technigraphix or Phoenix that it had rejected future contracts in Technigraphix's name. Third, Xerox's own testimony is that in all of the discussions and negotiations concerning the December

1999 modifications, there was never any mention that Xerox would be changing the name of the contracting party. Nussbaum Deposition at 106. In deposition, Xerox's sales representative Bruce Nussbaum testified at one point that he thought the change in customer legal name occurred as "a matter of course" and that the Technigraphix name was somehow only associated with Virginia. *Id.* page 111 lines 14-18 (copied in Exhibit 7 to Xerox's Response to Counterclaim).

For its part, Phoenix and Technigraphix have always maintained that Xerox never discussed, negotiated or disclosed any change in the customer legal name, that Technigraphix always paid the bills for this equipment (even after the December 1999 modifications), and that the first time that either Phoenix or Technigraphix noticed that there were contracts purporting to be in Phoenix's name was in October 2000 when Xerox began attempts to collect money from Phoenix. *See* Lieberman Affidavit ¶¶ 12-16, 23 attached as Exhibit A to Phoenix's Motion for Summary Judgment; Tyler Affidavit ¶¶ 8-11, 13-14 attached as Exhibit H to Phoenix's Motion for Summary Judgment. This evidence is undisputed.

If this Court does not reconsider its ruling, this case will proceed to trial and Xerox's case in chief will be that it changed the customer legal name on these modifications without negotiation, disclosure or discussion. The only inference that a reasonable finder a fact could make is that Xerox did not act reasonably in ascertaining the proper party to this contract. Not granting Phoenix complete summary judgment is a waste of this Court's judicial resources and a waste of Phoenix's and Xerox's time and money.

This Court has pointed out that Phoenix can pursue its affirmative defense of fraud. Memorandum Opinion at 11. Before one even considers Phoenix's affirmative defenses, however, Xerox has the burden of putting forth facts in support of this equitable claim. Xerox will have to prove that it acted with reasonable diligence in obtaining these contracts and, for any number of reasons,

Xerox did not use any diligence at all. Perhaps Mr. Nussbaum thought that Xerox's credit department was being overly technical about which name the contracts needed to be in and that the change in customer legal name truly occurred "as a matter of course" with the move from Virginia to Maryland. Perhaps Mr. Nussbaum knew that Phoenix would never agree to be a party to these contracts and, as a result, he took affirmative steps to hide the customer legal name. For purposes of Phoenix's summary judgment motion, Nussbaum's motivation is immaterial – the undisputed fact is that Xerox did not take any steps, reasonable or otherwise, to determine whether Phoenix consented to be a party to this contract.

* * * * *

By considering Phoenix's conduct only, this Court has held Phoenix to the same standard of care that may apply in a different jurisdiction *if* the plaintiff were a member of the general public. Memorandum Opinion at 7-8 (citing *Smith v. New Castle County Vocational-Technical School*, 574 F. Supp. 813, 825 (D. Del. 1983) where court held that, under Delaware law, evidence of business card, among other things, was sufficient to survive summary judgment because "[p]laintiff could conceivably prove at trial that the District placed its instructors in positions that might have lead the general public reasonably to believe that the instructors held authority to contract for the District.").[1]

---

[1] This Court's citation to the *Johnson* case and the Restatement is also distinguishable. Memorandum Opinion at 8. There is no evidence that Xerox had some preexisting contractual relationship with Phoenix or Tyler. The undisputed fact is that Phoenix never gave Tyler authority to contract for it. Lieberman Affidavit ¶ 18. Thus, there was no authority to "revoke."

Xerox is not a member of the general public. It is a sophisticated business entity with at least a two year history of contracting with Technigraphix and the resources to determine the relationship between Phoenix and Technigraphix. Under Maryland law, if it did not make a reasonable inquiry, its equitable claim dies on summary judgment. *See National Mortgage*, 190 F. Supp. 2d at 781 ("sophisticated mortgage lender" has duty to "stop, look and listen" before it can claim apparent agency); *Integrated Consulting*. Further, Xerox used its resources to develop actual knowledge that Technigraphix and Phoenix are separate corporations. Then, possessing that actual knowledge, it failed to inform either Technigraphix or Phoenix that it would not longer contract with Technigraphix and failed to disclose that it had changed the customer legal name on the December 1999 modifications. These facts are all undisputed.

Xerox's duty of care to maintain this equitable action required it, at the very least, to disclose that these modifications were in Phoenix's name and inquire as to whether Tyler could sign the December 1999 modifications on its behalf. It is admitted that Xerox did not make even this minimal inquiry and, as a result, Xerox cannot maintain this equitable action against Phoenix.

## CONCLUSION

Xerox will never be able to meet its burden of persuading a fact finder that it acted with reasonable diligence in obtaining the December 1999 modifications that identify Phoenix as the customer legal name. For this reason, Phoenix respectfully requests that this Court reconsider the segment of this Court's July 14, 2003 Order denying it summary judgment in part and grant Phoenix complete summary judgment in its favor.

Respectfully submitted,

John R. Wellschlager (Fed. Bar No. 24752)
Robert A. Gaumont (Fed. Bar No. 26302)
Piper Rudnick LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000

*Attorneys for Phoenix Color Corporation, Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of July, 2003 a copy of Phoenix's Motion for Reconsideration of the Segment of This Court's July 14, 2003 Order Denying Summary Judgment in Part was mailed, postage pre-paid, to: Sidney S. Friedman, Esquire and Rosemary E. Allulis, Weinstock, Friedman & Friedman, P.A., Executive Centre, 4 Reservoir Circle, Baltimore, Maryland 21208-7301, attorneys for plaintiff.

_____
Robert A. Gaumont

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| XEROX CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>PHOENIX COLOR CORPORATION<br><br>And<br><br>TECHNIGRAPHIX, INC.,<br><br>    Defendants. | CIVIL ACTION NO. WDQ 02 CV 1734 |

## ORDER

Upon consideration of Phoenix's Motion for Reconsideration of the Segment of This Court's July 14, 2003 Order Denying Summary Judgment in Part, and any related opposition, it is this _____ day of _____, ORDERED:

That Phoenix Color Corporation's Motion for Summary Judgment BE, and hereby is GRANTED.

 

_____
William D. Quarles, Jr.
United States District Judge